Dennis Neil Jones, SBN 112515
James E. Perero, SBN 258124
Myers, Widders, Gibson, Jones & Feingold, LLP
5425 Everglades Street
Ventura, CA 93003

Telephone:(805) 644-7188
Facsimile: (805) 644-7390
E-mail: djones@mwgjlaw.com
jperero@mwgjlaw.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATIGEO LLC, a Washington limited liability company; and MICHAEL SANDOVAL, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>OFFSHORE LIMITED D, a California business organization, form unknown; OFFSHORE LIMITED D, a California partnership, DENNIS MONTGOMERY, individually and as a partner of Offshore Limited D; ISTVAN BURGYAN, individually and as a partner of Offshore Limited D; DEMARATECH, LLC, a California limited liability company, and DOES 1-10,<br><br>Defendants. | CASE NO. 5:13-cv-01243-CAS-DTB<br><br>NOTICE OF MOTION, MOTION TO DISMISS PLAINTIFFS' FIRST CLAIM PURSUANT TO FRCP 12(b)(6), AND SPECIAL MOTION TO STRIKE PLAINTIFFS' SECOND CLAIM PURSUANT TO CCP 425.16 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 21, 2013, at 10:00 am, or as soon thereafter as may be heard, in Courtroom 5 of the United States District Court, Central District of California, located at 312 North Spring Street, Los Angeles, CA 90012, Defendants OFFSHORE LIMITED D, DENNIS MONTGOMERY, ISTVAN BURGYAN, and DEMARATECH, LLC (collectively "Defendants") will

- 1 -

and hereby do move to dismiss the first claim alleged by Plaintiffs ATIGEO LLC and MICHAEL SANDOVAL (collectively "Plaintiffs") and move to strike the second claim alleged by Plaintiffs.

Pursuant to FRCP 12(b)(6), Defendants move to dismiss Plaintiffs' first claim for violation of 15 U.S.C. section 1125(d), also known as the Anticybersquatting Consumer Protection Act ("ACPA"), because Plaintiffs have failed to state a claim for which relief can be granted. More specifically, the conduct alleged does not violate the ACPA, and therefore Plaintiffs have no federal claim. The Court should refuse to extend jurisdiction to the one remaining state law claim, and dismiss the action.

In the event the Court grants leave to amend, Defendants, in an abundance of caution, also move to strike Plaintiffs' second claim for libel pursuant to California Code of Civil Procedure section 425.16, *et seq.* on the grounds that the alleged conduct is constitutionally protected speech which Plaintiffs attempt to chill through improper litigation.

Circumstances preceding the filing of this Notice of Motion and the following Memorandum of Points and Authorities ("Memorandum"), which are set forth in the Memorandum and attached Declaration of Dennis Neil Jones, impaired Defendants' from compliance with the five-day notice provision set forth in L.R. 7-3. This motion is made following the conference of counsel initiated in an effort to comply with the spirit of L.R. 7-3 which took place on September 17, 2013.

//
//

NOTICE OF MOTION, MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

The motions are based on this Notice, the Memorandum, the Declaration of Dennis Neil Jones, the Declaration of James E. Perero, the files and records in this action, and on such other evidence or argument as may be considered by the Court at the time hearing.

Dated: September 18, 2013

                          MYERS, WIDDERS, GIBSON,
                          JONES & FEINGOLD, L.L.P.

                          By: /s/ Dennis Neil Jones

                              Dennis Neil Jones
                              Attorneys for Defendants

- 3 -

NOTICE OF MOTION, MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 1

  A.  The Complaint .............................................................................................. 1

      a.  Allegations regarding the ACPA ........................................................ 2

      b.  Allegations regarding state law claim for libel ................................... 2

      **c.**  **There is abiding public interest in matters connected with the Blixseth fortune, divorce, and bankruptcy** ........................................................ 3

  B.  Procedural background ................................................................................ 3

LEGAL STANDARD GOVERNING MOTIONS TO DISMISS ............................ 5

PLAINTIFFS FAIL TO SET FORTH A PLAUSIBLE CLAIM FOR RELIEF UNDER THE ACPA .................................................................................................. 5

PLAINTIFFS' LIBEL CLAIM IS SUBJECT TO CALIFORNIA'S ANTI-SLAPP MOTION TO STRIKE ............................................................................................... 8

  A.  Plaintiffs' libel claim arises from protected activity .................................. 10

      a.  Plaintiffs' libel claim is subject to subdivision (e)(3) of the Anti-SLAPP statute ................................................................................................. 10

      b.  Plaintiffs' libel claim is subject to subdivision (e)(4) of the Anti-SLAPP statute ................................................................................................. 12

  B.  None of the exceptions in CCP 425.17 are applicable to Plaintiffs' libel claim. ............................................................................................................ 12

CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal (2009) 556 U.S. 662 ................................................................... 5

Aviva USA Corp. v. Vazirani (D. Ariz. 2012) 902 F.Supp.2d 1246 ........................ 6

Balistreri v. Pacifica Police Dept. (9th Cir. 1990) 901 F.2d 696 ............................. 5

Barrett v. Rosenthal (2006) 40 Cal.4th 33 ............................................................ 11

Bosley Med. Inst., Inc. v. Kremer (9th Cir. 2005) 403 F.3d 672 ............................. 6

City of Cotati v. Cashman (2002) 29 Cal. 4th 69 .................................................. 10

Competitive Technologies v. Fujitsu Ltd. (N.D.Cal.,2003) 286 F.Supp.2d 1118 .... 9

Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400 ........................................... 11

Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53 ...................... 9

Flatley v. Mauro (2006) 39 Cal.4th 299 ................................................................ 13

Harrods Ltd. v. Sixty Internet Domain Names (E.D. Va. 2000) 110 F.Supp.2d 420. 5

Hilton v. Hallmark Cards (9th Cir. 2010) 599 F.3d 894 ....................................... 11

Interstellar Starship Services, Ltd. v. Epix, Inc. (9th Cir.2002) 304 F.3d 936 ........ 5

Kronemyer v. Internet Movie Data Base, Inc. (2007) 150 Cal.App.4th 941 ......... 11

Martinez v. Metabolife Internat., Inc. (2003) 113 Cal.App.4th 181 ..................... 10

Navellier v. Sletten (2002) 29 Cal. 4th 82 ............................................................. 10

Newdow v. Lefevre (9th Cir. 2010) 598 F.3d 638 ................................................... 5

Newsham v. Lockheed Missiles & Space Co., Inc. (9th Cir. 1999) 190 F.3d 963 .... 9

Nygard, Inc. v. Uusi–Kerttula (2008) 159 Cal.App.4th 1027 ............................... 11

Simpson v. Strongtie Co. Inc. v. Gore (2010) 49 Cal.4th 12 ................................... 13

Solid Host, NL v. Namecheap, Inc. (C.D. Cal. 2009) 652 F.Supp.2d 1092 .............. 5

Thomas v. Fry's Electronics, Inc. (9th Cir. 2005) 400 F.3d 1206 ............................ 9

**Statutes**

15 U.S.C. §1125(d)(1)(B)(i) ............................................................................. 6, 7, 8

28 U.S.C. § 1404 ....................................................................................................... 9

CAL CODE CIV. PROC. §425.16(a) ............................................................................ 9

CAL CODE CIV. PROC. §425.16(b)(1) ....................................................................... 9

CAL CODE CIV. PROC. §425.16(b)(2). .................................................................... 10

CAL CODE CIV. PROC. §425.16(e) .......................................................................... 10

CAL CODE CIV. PROC. §425.16(e)(3) ..................................................................... 11

CAL CODE CIV. PROC. §425.16(e)(4) ..................................................................... 12

**Other Authorities**

H.R.Rep. No. 106–412 .............................................................................................. 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiffs' Complaint should be dismissed in its entirety. The first claim for violation of the ACPA—which is the lone federal claim—fails to allege facts which bring it within the purview of the statute. Accordingly, the Court should dismiss the claim. And pursuant to the Court's Order dated September 18, 2013 (Docket No. 20), diversity of citizenship is absent.[1] Accordingly, there is no basis for this court to exercise jurisdiction over the remaining claim for libel. The Court should dismiss the Complaint without leave to amend.

Should the Court grant Plaintiffs leave to amend, and in the unlikely event that Plaintiffs later develop plausible facts supporting supplemental jurisdiction over the libel claim, Defendants also specially move to strike Plaintiffs' libel allegation pursuant to California's anti-SLAPP statute. The allegations concern constitutionally protected speech insofar as they are written statements made in a public forum connected to matters of public interest. Moreover, Plaintiffs cannot establish the probability of success on the merits. In the event the Court determines that jurisdiction over the libel claim is appropriate, it should strike the claim for violation of California's anti-SLAPP statute.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

**A. The Complaint**

Plaintiffs allege that "this action arises under 15 U.S.C. § 1125(d)" (hereinafter the "ACPA"). (Complaint at ¶11). Plaintiffs also allege diversity jurisdiction and supplemental jurisdiction with respect to the claim for libel. (*Id.*)

---

[1] Although this case has been ordered transferred, pleadings continue to be filed in the transferor court until the file physically arrives at the transferee court. *See*, Wilson v. City of San Jose (9th Cir. 1997) 111 F3d 688, 693. Defendants presume this has yet to occur given the Order issued shortly before this motion was filed.

### a. Allegations regarding the ACPA

Plaintiffs allege that "Defendants registered, trafficked in, and used the <atigeo.co> domain name with a bad faith intention to profit from the ATIGEO trademark and the associated goodwill, by seeking to extort monetary and other consideration from Atigeo." (Complaint at ¶48). Plaintiffs further allege that "[t]he intent of Defendant Montgomery to profit from the ATIGEO trademark was in bad faith, in part, because extortion is a tort and a crime." (Complaint at ¶49). Plaintiffs fail to allege a single fact which could plausibly suggest that the <atigeo.co> domain is in any sense commercial or is designed to divert money from the <atigeo.com> domain.

### b. Allegations regarding state law claim for libel

In support of the claim for libel, Plaintiffs assert, *inter alia*, that Defendants published untrue statements on various Websites, including www.atigeo.co, www.gratonresortcasino.net, www.theuntoldstory.net, www.yellowstoneclub.net, and www.yellowstoneclubs.com. (Complaint at ¶21,62). Plaintiffs further allege that the following written statements were published on the Websites:

> "(a) That plaintiff Atigeo billed a client for 'nonexistent development work.'
>
> (b) That 'Edra BIixseth placer el] $7mil into [Atigeo] accounts as "pre-divorce" money. Michael Sandoval agreed] to escrow and 'shelter' the money for Edra Blixseth.'
>
> (c) That plaintiff Michael Sandoval took all of Edra Blixseth's 'sheltered' money,
>
> (d) That Plaintiffs own three lots on Lake Washington) 'purchased with Blixseth money without their consent 01' knowledge.'
>
> (e) That 'Michael Sandoval, with the help of his controller, took the [Blixseth] money to purchase the property on Lake Washington in 2006 without the knowledge or consent of Edra Blixseth, Michael Sandoval admitted to the wrongdoing in March 2007 after being confronted with the evidence by Edra Blixscth and her associates,'
>
> (f) That Plaintiffs 'still owe the Blixseth estate $8

[million].'"

(Complaint at ¶¶22, 63).

### c. *There is abiding public interest in matters connected with the Blixseth fortune, divorce, and bankruptcy*

Plaintiffs allege that the Websites which published the allegedly libelous statements have been visited more than 7.5 million times. (Complaint at ¶27). A brief Internet search for information regarding the fortune of former billionaire Timothy Blixseth, the divorce of Timothy and Edra Blixseth, and the bankruptcy proceedings involving Timothy Blixseth demonstrates that there is ongoing public interest in related matters. (*See*, **Exhibits "D"** through **"G"**, attached to the Declaration of James E. Perero).

## B. Procedural background

Defendants bring this Motion to Dismiss and Special Motion to Strike at this time out of an abundance of caution, to preserve their right to make these motions. On August 19, 2013, the parties stipulated to give Defendants until September 6, 2013 to answer or otherwise respond to the complaint. (Docket No. 18). In connection with discussion related to obtaining an extension of time to respond to the Complaint, Defendants informed Plaintiffs that the individual defendants resided in the state of Washington rather than California, as Plaintiffs had alleged. (Declaration of Dennis Neil Jones ["Jones Dec."] at ¶3). The parties exchanged email messages on this subject between August 30, 2013, and September 12, 2013, when the parties agreed to file a stipulation requesting transfer of the action to Washington. (*See*, **Exhibit "A"** to the Jones Dec.). Plaintiffs' emails said nothing about any concern related to Defendants not having filed an answer or responsive pleading to the Complaint. (Jones Dec. at ¶4). On September 12, 2013, the parties signed and Defendants filed a stipulation setting forth the agreement. (Docket No. 19).

At no time during discussions leading up to execution or filing of the

- 3 -

NOTICE OF MOTION, MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

September 12, 2013 stipulation did Plaintiffs ever raise any concern about Defendants not having filed an answer or responsive pleading. (Jones Dec. ¶5). Given the residency of the parties and location of witnesses, Defendants found it unlikely that the matter would be litigated in California, and anticipated counsel in Washington would be retained and handle the matter all further purposes. (Id.) Plaintiffs were informed of this. (Id.) Defendants understood that Plaintiffs implicitly agreed that Defendants could file an answer or otherwise respond to the complaint following resolution of the requested transfer to the Western District of Washington. (Id.)

On Monday, September 16, 2013, Plaintiffs contacted Defendants to confirm whether a responsive pleading had been filed. (Jones Dec. ¶6). This was the first indication Defendants received regarding a miscommunication with Plaintiffs as to the filing of a responsive pleading in this matter. (Id.) Defendants informed Plaintiffs that they had anticipated Washington counsel would determine what sort of responsive pleading to file, but that Defendants would prepare and file a pleading. (Id.) Plaintiffs informed Defendants that they had until close of business the following day to file an Answer, and that Defendants had waived their right to file a motion to dismiss. (Id.) Emails exchanged regarding this topic on Monday, September 16 and Tuesday, September 17 are attached as **Exhibit "B"** to the Jones Dec. Defendants began work immediately.

Later on Tuesday, September 17, Defendants made an effort to meet and confer with Plaintiffs pursuant to Local Rule 7-3, knowing that Plaintiffs had communicated that Defendants had until close of business on September 18, 2013 to file an answer. (Jones Dec. ¶7). Faced with a choice between violating the five-day notice provision under Local Rule 7-3, or seeking relief from default, Defendants chose the former. (Id.) The response from Plaintiffs made clear that Defendants could not wait to file the instant pleading until the case was transferred to Washington. (Id.) Email exchanged regarding Defendants efforts to meet and

-4-

NOTICE OF MOTION, MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

MYERS, WIDDERS, GIBSON, JONES & FEINGOLD, L.L.P.

**Myers, Widders, Gibson, Jones & Feingold, L.L.P.**

1 | confer are attached as **Exhibit "C"** to the Jones Dec.

**III.**

**LEGAL STANDARD GOVERNING MOTIONS TO DISMISS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal (2009) 556 U.S. 662, 677–78. The claim must be facially plausible, meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *See,* Newdow v. Lefevre (9th Cir. 2010) 598 F.3d 638, 642. A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept. (9th Cir. 1990) 901 F.2d 696, 699.

**IV.**

**PLAINTIFFS FAIL TO SET FORTH A PLAUSIBLE CLAIM FOR RELIEF UNDER THE ACPA**

Cybersquatting is "a narrow class of wrongdoing." Solid Host, NL v. Namecheap, Inc. (C.D. Cal. 2009) 652 F.Supp.2d 1092, 1102; *see also*, Harrods Ltd. v. Sixty Internet Domain Names (E.D. Va. 2000) 110 F.Supp.2d 420, 426 ("the legislative history of the ACPA . . . makes clear that the statute's scope is narrow"). The Ninth Circuit has described cybersquatting as "the Internet version of a land grab. Cybersquatters register well-known brand names as Internet domain names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name." Interstellar Starship Services, Ltd. v. Epix, Inc. (9th Cir.2002) 304 F.3d 936, 946. It occurs when someone other than the trademark holder "registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the

trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." Bosley Med. Inst., Inc. v. Kremer (9th Cir. 2005) 403 F.3d 672, 680.

A trademark owner who asserts a violation of the ACPA must establish the following:

> "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit.

Id. at 681. "[A] finding of 'bad faith' is an essential prerequisite to finding an ACPA violation." Aviva USA Corp. v. Vazirani (D. Ariz. 2012) 902 F.Supp.2d 1246, 1265-66. The term "bad faith intent to profit" is a term of art with a specific legal meaning under the ACPA. Solid Host, NL, *supra*, 652 F.Supp.2d at 1110. "Liability under the ACPA requires a bad faith intent to profit from the goodwill of another's mark; the statute was not meant to prohibit actions outside its scope simply because they were undertaken in 'bad faith,' or with a motive to profit illegitimately." Id.

The ACPA sets forth a non-exclusive list of nine factors a court may consider in evaluating whether a defendant has demonstrated the requisite bad faith. *See*, 15 U.S.C. §1125(d)(1)(B)(i). The factors "attempt to balance the property interests of trademark owners with the legitimate interests of Internet users and others who seek to make lawful uses of other's marks, including for purposes such as comparative advertising, comment, criticism, parody, news reporting, fair use, etc." Aviva USA Corp. 902 F.Supp.2d 1246 at 1266 (*citing* H.R.Rep. No. 106–412, 1999 WL 970519, at *10). On balance, and in light of the conduct the ACPA was intended to prevent, Plaintiffs fail to make a plausible claim for violation of the ACPA.

The critical factors to analyze in determining whether Plaintiffs have alleged facts supporting a plausible claim are the following. The fourth factor evaluates

"the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name[.]" 15 U.S.C. §1125(d)(1)(B)(i)(IV). The Complaint omits the glaring fact that the <atigeo.co> Website is not designed for e-commerce, but rather an investigative news site. Moreover, the <atigeo.co> Website states on its home page that "Atigeo.co is not sponsored by or affiliated with Atigeo, Atigeo.com, Azimyth Inc, Founders Group Inc, or Michael or Heather Sandoval."

The fifth factor evaluates

> "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site[.]"

15 U.S.C. §1125(d)(1)(B)(i)(V). The Complaint fails to allege that the <atigeo.co> Website was developed with an intent to divert consumers from <atigeo.com> for the purpose of deriving commercial gain from those consumers. Moreover, the distinct visual appearance of the two Websites makes confusion of the two Websites virtually impossible. This factor weighs if favor of finding an absence of the bad faith required by the ACPA.

The sixth factor evaluates

> "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct[.]"

15 U.S.C. §1125(d)(1)(B)(i)(VI). The Complaint fails to allege that Defendants have ever, at any time, offered to transfer, sell, or otherwise assign the <atigeo.co> domain name to Plaintiffs or any third party. This factor weighs if favor of finding an absence of the bad faith required by the ACPA.

The seventh factor evaluates

MYERS, WIDDERS, GIBSON, JONES & FEINGOLD, L.L.P.

> "the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct[.]"

15 U.S.C. §1125(d)(1)(B)(i)(VII). The Complaint fails to allege that Defendants ever provided material and misleading contact information when applying for the registration of the <atigeo.co> domain name. This factor weighs if favor of finding an absence of the bad faith required by the ACPA.

The eighth factor evaluates

> "the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties[.]"

15 U.S.C. §1125(d)(1)(B)(i)(VIII). The Complaint fails to allege that Defendants have registered or acquired multiple domain names without regard to the goods or services of Plaintiffs. Again, the differences between <atigeo.co> and <atigeo.com> are obvious and preclude confusion. This factor weighs if favor of finding an absence of the bad faith required by the ACPA.

Taken together, these factors demonstrate that Plaintiffs have failed to set forth facts which support a plausible claim for relief under the ACPA. Accordingly, the Court should dismiss Plaintiffs' first claim without leave to amend. Moreover, the Court's Order dated September 18, 2013 (Docket No. 20) demonstrates that there is no diversity in this action. Accordingly, in dismissing Plaintiffs' first claim without leave to amend, there is no basis for subject matter jurisdiction over Plaintiffs' claim for libel and the Court should dismiss this action in its entirety.

## V.

## PLAINTIFFS' LIBEL CLAIM IS SUBJECT TO CALIFORNIA'S ANTI-SLAPP MOTION TO STRIKE

Should the Court determine that Plaintiffs' either have or by amendment can

develop a viable claim for violation of the ACPA, the Court should strike Plaintiffs' second claim for violation of California's anti-SLAPP statute.

State claims in federal court are subject to California's anti-SLAPP law. *See, e.g.*, Newsham v. Lockheed Missiles & Space Co., Inc. (9th Cir. 1999) 190 F.3d 963, 970-73; Thomas v. Fry's Electronics, Inc. (9th Cir. 2005) 400 F.3d 1206, 1207 (reversing district court based on failure to apply anti-SLAPP statute). "In transferred cases . . . the choice of law rules that are applied depend upon the nature of the transfer. . . . [W]here a case is transferred pursuant to 28 U.S.C. § 1404(a), the choice of law rules that would have been applied by the transferor court . . . are applied." Competitive Technologies v. Fujitsu Ltd. (N.D.Cal.,2003) 286 F.Supp.2d 1118, 1156-57.

A SLAPP suit seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. CAL CODE CIV. PROC. §425.16(a). The statute is to be construed broadly. Id. Under California Code of Civil Procedure ("CCP") section 425.16, "[a claim] against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." CAL CODE CIV. PROC. §425.16(b)(1). In determining whether to grant or deny a CCP section 425.16 motion to strike, the court engages in a two-step process. First, the court must decide whether the defendant has met the threshold burden of showing that the claim arises from protected activity, *i.e.*, activity by defendants in furtherance of the constitutional right of petition or free speech. Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67. Second, if the defendant meets this burden, then the burden shifts to plaintiff to demonstrate a reasonable probability of prevailing on the merits of the claim. Id. Each of these steps is analyzed below.

CCP section 425.16 contains no requirement that a defendant show that the plaintiff brought the lawsuit with an intent to chill defendants rights, nor does the statue require an intent-to-chill pleading or proof requirement. Equilon Enterprises, LLC, *supra,* (2002) 29 Cal. 4th 53, 60; City of Cotati v. Cashman (2002) 29 Cal. 4th 69, 75; Navellier v. Sletten (2002) 29 Cal. 4th 82, 88.

**A. Plaintiffs' libel claim arises from protected activity**

Under CCP section 425.16, protected activities include: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or in a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. CAL CODE CIV. PROC. §425.16(e).

When determining whether the initial "arising from" requirement is met, the court considers the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. CAL CODE CIV. PROC. §425.16(b)(2). The court must examine the "principal thrust or gravamen of the [claim]" when determining whether the anti-SLAPP statute applies. Martinez v. Metabolife Internat., Inc. (2003) 113 Cal.App.4th 181, 188. The critical consideration is whether the claim is based on the defendant's protected free speech. Navellier v. Sletten (2002), 29 Cal.4th 82, 89.

> *a. Plaintiffs' libel claim is subject to subdivision (e)(3) of the Anti-SLAPP statute*

The written statements or writings complained of herein were "made in a place open to the public or in a public forum in connection with an issue of public

NOTICE OF MOTION, MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

interest[.]" CAL CODE CIV. PROC. §425.16(e)(3). First, the written statements and or writing at issue were presented in a place open to the public or a public forum. Websites such as those at issue herein constitute a "public forum" or a place "open to the public" within the meaning of CCP section 425.16. Barrett v. Rosenthal (2006) 40 Cal.4th 33, 41 (collecting cases); Kronemyer v. Internet Movie Data Base, Inc. (2007) 150 Cal.App.4th 941, 950 (finding Website a public forum where statements on the Website "are accessible to anyone who chooses to visit the site").

Plaintiffs' allegations concern written statements or writings found on the Websites. (*See*, Complaint at ¶¶21,22,63). Plaintiffs also allege that the Websites are readily viewable by the general public. (*See*, Complaint at ¶27). Accordingly, Plaintiffs' libel claim concerns written statements or writings made in a place open to the public or in a public forum.

Second, the written statements or writings were made in connection with an issue of public interest. "[A]n issue of public interest . . . is *any issue in which the public is interested.*" Nygard, Inc. v. Uusi–Kerttula (2008) 159 Cal.App.4th 1027, 1039 (emphasis original) (statements about plaintiff, a well-known Finnish businessman, were matter of public interest to Finnish public). The Ninth Circuit has confirmed that the courts must broadly construe the term "public interest" as used in the California Anti-SLAPP statute. Hilton v. Hallmark Cards (9th Cir. 2010) 599 F.3d 894, 906; *see, e.g.,* Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1420 (statement that someone entered tenants' locked garage and turned off water heater was protected under subd. (e)(4), despite it directly impacting only two tenants).

The written statements which are the focus of Plaintiffs' libel claim all concern the financial affairs of Timothy and Edra Blixseth. The fact that Plaintiffs allege that the Websites have been viewed over 7.5 million times indicates that Plaintiffs are well aware that the public is interested in the contents thereof, and by extension the very statements of which they complain. (Complaint at ¶27).

Moreover, ongoing coverage of the Blixseth divorce and bankruptcy, including the now infamous Yellowstone Club in Montana, further demonstrates abiding public interest the details of financial matters relating to the Blixseths. (*See*, Exhibits X through X, to the Jones Dec.). Accordingly, the written statements and/or writings of which Plaintiffs complain are precisely the type which California's anti-SLAPP statute was designed to protect.

> *b. Plaintiffs' libel claim is subject to subdivision (e)(4) of the Anti-SLAPP statute*

The written statements or writings complained of arise from "conduct in furtherance of the exercise of the . . . constitutional right free speech in connection with a public issue or issue of public interest." CAL CODE CIV. PROC. §425.16(e)(4). As discussed above, the activity at issue meets the requirement that it be in "connection with a public issue or issue of public interest."

**B. None of the exceptions in CCP 425.17 are applicable to Plaintiffs' libel claim.**

CCP section 425.17 provides for certain enumerated exceptions to the applicability of CCP section 425.16, the anti-SLAPP statute. Specifically, CCP section 425.17 exempts: any claim brought solely in the public interest or on behalf of the general public as statutorily defined; any claim brought against a person primarily engaged in the business of selling or leasing goods or services, including but not limited to insurance, securities, or financial instruments, if certain criteria are met; enforcement actions taken by the Attorney General, District Attorney, or City Attorney; actions against a person or entity based upon the creation or dissemination, exhibition, advertisement, or similar promotion of a dramatic, literary, musical, political, or artistic work; and actions against certain non-profits. Moreover, CCP section 425.16 is inapplicable where the moving party has validly waived its right to invoke the anti-SLAPP statute. *See, e.g.*, Navellier v. Sletten (2002) 29 Cal.4th 82, 94. Finally, CCP section 425.16 is inapplicable where the

moving party committed an illegal act that precludes the applicability of the anti-SLAPP statute. *See, e.g.*, Flatley v. Mauro (2006) 39 Cal.4th 299, 314-18. None of the aforementioned exemptions or exceptions are applicable. *See also*, Simpson v. Strongtie Co. Inc. v. Gore (2010) 49 Cal.4th 12, 26 (noting that the party alleging the applicability of an exception has the burden of proof). Consequently, the burden shifts to Plaintiffs to establish a probability of prevailing on the merits—a burden Plaintiffs cannot meet.

## VI.
## CONCLUSION

Plaintiffs Complaint fails to meet the substantive requirements for prosecuting their claims. The claim for violation of the ACPA is an effort to extend the reach of a statute which, by its terms and legislative history, clearly does not apply to the conduct alleged. Accordingly, the claim should be dismissed without leave to amend. Doing so will deprive the Court of the ability to exercise supplemental jurisdiction over Plaintiffs' state law based claim for libel. Moreover, as the Court's Order of September 18, 2013 (Docket No. 20) makes clear, there is no diversity in this action. The Court should dismiss this action in its entirety. In the event the Court determines that Plaintiffs' might be able to present a viable ACPA claim, to the extent that the Court exercises supplemental jurisdiction over Plaintiffs' claim for libel the Court should strike the claim for violation of California's anti-SLAPP statute and award attorneys' fees and costs pursuant to CCP section 425.16(c).

Dated: September 18, 2013

        MYERS, WIDDERS, GIBSON,
        JONES & FEINGOLD, L.L.P.

By: /s/ Dennis Neil Jones

    Dennis Neil Jones
    Attorneys for Defendants

- 13 -

NOTICE OF MOTION, MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE