1

2

3

4

5

6

7

8

THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ATIGEO LLC, a Washington limited
liability company; and MICHAEL
SANDOVAL, an individual,

            Plaintiffs,

        v.

OFFSHORE LIMITED D, a California
business organization, form unknown;
OFFSHORE LIMITED D, a California
partnership; DENNIS MONTGOMERY,
individually and as a partner of Offshore
Limited D; ISTVAN BURGYAN,
individually and as a partner of Offshore
Limited D; DEMARATECH, LLC, a
California limited liability company; and
DOES 1-10, inclusive,

            Defendants.

Case No. 2:13-cv-01694 JLR

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE**

NOTED ON MOTION CALENDAR:

November 22, 2013

**ORAL ARGUMENT REQUESTED**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR)

1

TABLE OF CONTENTS

2

Page

3  I.    INTRODUCTION ...........................................................................................1

4  II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................1

5        A.    The Parties and Their Relationships ...............................................1

        B.    Allegations Concerning Defendants' Cybersquatting ....................3
6
        C.    Allegations Concerning Defendants' Libelous Writings ...............5
7        D.    Procedural History ..........................................................................6

   III.  ARGUMENT .................................................................................................7
8
        A.    Atigeo Has Pleaded Sufficient Allegations of Defendants' Bad Faith to
9             Establish a Claim for Cybersquatting under the ACPA ...............7

        B.    Plaintiffs' Libel Claim Is Not Subject to California's Anti-SLAPP Statute ......... 13
10
              1.    Defendants' Anti-SLAPP Motion Is Untimely ....................... 13
11
              2.    Defendants' Anti-SLAPP Motion Lacks Merit ...................... 13
12
                    a.    Defendants have failed to make the required threshold
13                        showing under the first prong that Plaintiffs' libel claim
                          concerns a "public issue." ...........................................14
14
                    b.    Even if Defendants had met their burden on the first prong,
15                        their motion should be denied because Plaintiffs are likely
                          to succeed on their libel claim and Defendants' conduct is
                          illegal........................................................................... 20
16   IV.  CONCLUSION .............................................................................................23

17

18

19

20

21

22

23

24

25

26

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1

## TABLE OF AUTHORITIES

Page(s)

2

**Cases**

3

*Albanese v. Menounos*,
4     218 Cal. App. 4th 923, 160 Cal. Rptr. 3d 546 (Cal. Ct. App. 2013) ..........................14, 15, 16

5

*Ashcroft v. Iqbal*,
6     556 U.S. 662 (2009)..............................................................................................................7

7

*Coca-Cola Co. v. Purdy*,
8     382 F.3d 774 (8th Cir. 2004) ......................................................................................8, 9, 10

9

*Commonwealth Energy Corp. v. Investor Data Exch., Inc.*,
     110 Cal. App. 4th 26, 1 Cal. Rptr. 3d 390 (Cal. Ct. App. 2003) ..........................13, 16, 17, 18

10

*Competitive Techs. v. Fujitsu Ltd.*,
     286 F. Supp. 2d 1118 (N.D. Cal. 2003) ...............................................................................13

11

*Condit v. Nat'l Enquirer, Inc.*,
12     248 F. Supp. 2d 945 (E.D. Cal. 2002)..................................................................................20

13

*Connick v. Myers*,
     461 U.S. 138 (1983)............................................................................................................18

14

*D.C. v. R.R.*,
15     182 Cal. App. 4th 1190, 106 Cal. Rptr. 3d 399 (Cal. Ct. App. 2010) ....................................16

16

*Damon v. Ocean Hills Journalism Club*,
17     85 Cal. App. 4th 468, 102 Cal. Rptr. 2d 205 (Cal. Ct. App. 2000) ........................................17

18

*DuPont Merck Pharm. Co. v. Sup. Ct.*,
     78 Cal. App. 4th 562, 92 Cal. Rptr. 2d 755 (Cal. Ct. App. 2000) ..........................................21

19

*Dyer v. Childress*,
20     147 Cal. App. 4th 1273, 55 Cal. Rptr. 3d 544 (Cal. Ct. App. 2007) ......................................18

21

*Faegre & Benson, LLP v. Purdy*,
     447 F. Supp. 2d 1008 (D. Minn. 2006)...........................................................................11, 13

22

*Flatley v. Mauro*,
23     39 Cal. 4th 299, 46 Cal. Rptr. 3d 606 (Cal. 2006) ..............................................................23

24

*Hall v. Time Warner, Inc.*,
     153 Cal. App. 4th 1337, 63 Cal. Rptr. 3d 798 (Cal. Ct. App. 2007) ......................................16

25

*Hilton v. Hallmark Cards*,
26     599 F.3d 894 (9th Cir. 2010) ..............................................................................................21

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — ii

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone (206) 624-0900*

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
   304 F.3d 936 (9th Cir. 2002) .................................................................12

*Lahoti v. Vericheck, Inc.*,
   No. C06-1132JLR, 2007 WL 2570247 (W.D. Wash. Aug. 30, 2007) ...............8, 12

*Lucas Nursery & Landscaping, Inc. v. Grosse*,
   359 F.3d 806 (6th Cir. 2004) ..................................................................8

*Macias v. Hartwell*,
   55 Cal. App. 4th 669, 64 Cal. Rptr. 2d 222 (Cal. Ct. App. 1997) ...........................17

*Mann v. Quality Old Time Serv., Inc.*,
   120 Cal. App. 4th 90, 15 Cal. Rptr. 3d 215 (Cal. Ct. App. 2004) ...........................17

*Morrison & Foerster LLP v. Wick*,
   94 F. Supp. 2d 1125 (D. Colo. 2000) ...............................................10, 11, 13

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ...................................................................7

*Navellier v. Sletten*,
   29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (Cal. 2002) ......................................14, 20, 21

*Nygård, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210 (2008) .............................15, 16, 19, 20

*Rivero v. Am. Fed'n of State, Cnty. & Muni. Employees, AFL-CIO*,
   105 Cal. App. 4th 913, 130 Cal. Rptr. 2d 81 (Cal. Ct. App. 2003) ..........................16

*Selleck v. Globe Int'l, Inc.*,
   166 Cal. App. 3d 1123, 212 Cal. Rptr. 838 (Cal. Ct. App. 1985) ..........................22

*Soukup v. Law Offices of Herbert Hafif*,
   39 Cal. 4th 260, 46 Cal. Rptr. 3d 638 (Cal. 2006) ......................................21

*Time, Inc. v. Firestone*,
   424 U.S. 448 (1976) .........................................................................19

*Virtual Works, Inc. v. Volkswagen of Am., Inc.*,
   238 F.3d 264 (4th Cir. 2001) ..................................................................8

*Weinberg v. Feisel*,
   110 Cal. App. 4th 1122, 2 Cal. Rptr. 3d 385 (Cal. Ct. App. 2003) .............15, 16, 18, 19

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883, 17 Cal. Rptr. 3d 497 (2004) ..........................................14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — iii

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

*World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*,
    172 Cal. App. 4th 1561, 92 Cal. Rptr.3d 227 (2009)........................................................17, 18

*Wyler Summit P'ship v. Turner Broad. Sys.*,
    135 F.3d 658 (9th Cir. 1998) ...........................................................................................7

**Statutes**

15 U.S.C. § 1125(d) ....................................................................................................3

15 U.S.C. § 1125(d)(1)(A)(i)-(ii) ..................................................................................8

15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX) ............................................................................8

28 U.S.C. § 1404(a) ................................................................................................6, 14

Cal. Civ. Code § 45 ....................................................................................................21

Cal. Civ. Proc. Code § 425.16 ...................................................................................13

Cal. Civ. Proc. Code § 425.16(b)(1) ..........................................................................14

Cal. Civ. Proc. Code § 425.16(e)(3), (4) ...................................................................14

Cal. Civ. Proc. Code § 425.16(f) ...............................................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................3, 7, 10

Fed. R. Civ. P. 55 ......................................................................................................13

**Other Authorities**

H.R. Rep. No. 106-412 (1999).....................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — iv

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

# I.      INTRODUCTION

Defendants' motions raise three principal substantive issues[1]:

**1.      Cybersquatting Allegations of Bad Faith.**  Cybersquatting requires a showing of bad-faith intent to profit from a trademark. Vengeful use of a trademark in a website domain name to extract payment from the trademark holder constitutes bad faith.  The Complaint alleges that Defendants created the www.atigeo.co website, which contains libelous statements about Plaintiffs and improperly uses Plaintiff Atigeo LLC's trademark, *after* Defendant Dennis Montgomery threatened retaliation against Plaintiffs for refusing his demands for monetary payment.  Have Plaintiffs adequately pleaded bad faith?

**2.      Public Issue under Anti-SLAPP Statute.**   To avoid libel claims under California's anti-SLAPP statute Defendants must show their statements concern a "public issue," *i.e.*, (1) a person or entity in the public eye, (2) conduct affecting large numbers of people, or (3) topics of widespread, public interest.  Defendants have not presented evidence that Plaintiffs (a small, private company and its CEO) or their activities (business operations and private transactions) fit these categories.  Have Defendants failed to meet their burden?

**3.  Merit of Plaintiffs' Libel Claim.**  If and only if Defendants establish that their statements concern a public issue, this Court must determine whether Plaintiffs' libel claim has "minimal merit," which is met with adequately pleaded facts and prima facie evidence.  Here, Plaintiffs have specifically pleaded each element of libel (Defendants' websites falsely accuse Plaintiffs of unethical business practices and embezzlement) and substantiated these allegations with a declaration by Plaintiff Michael Sandoval. Does Plaintiffs' libel claim have minimal merit?

The answer to each of these questions is "Yes." Thus, Defendants' motions should be denied.

# II.      FACTUAL AND PROCEDURAL BACKGROUND

**A.      The Parties and Their Relationships**

The Plaintiffs in this action are Atigeo LLC, a small, privately held software development company located in Bellevue, Washington, and its CEO, Michael Sandoval (individually, "***Atigeo***" and "***Sandoval***"; together, "***Plaintiffs***").  *See* Dkt. 1 ¶¶ 1, 2 (Complaint); Declaration of Michael Sandoval ("***Sandoval Decl.***") ¶¶ 1, 2, filed herewith.  Atigeo, which has 43 full-time and part-time employees, is engaged in the development of pattern-recognition software and other applications for use in a variety of fields and industries, including healthcare and social media.  *See* Dkt. 1 ¶¶ 14, 15; Sandoval Decl. ¶ 2.  It is the sole owner of U.S. Trademark Reg. No.

---

[1] As explained below, before addressing the merits of Defendants' anti-SLAPP motion to strike, the Court can and should dismiss this motion as untimely.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   3,908,344 for the trademark ATIGEO. *See* Dkt. 1 ¶¶ 14, 15. Atigeo has exclusively done

2   business under this mark since at least 2007 and maintains an Internet domain name and website

3   using this mark: *www.atigeo.com*. *Id.* ¶¶ 39, 40.

4   In late 2006 and early 2007, Atigeo and Edra Blixseth ("***Edra***") were investors in Opspring

5   LLC ("***Opspring***"), another technology company. *See* Sandoval Decl. ¶ 10. At that time, Edra

6   was married to Tim Blixseth ("***Tim***"), who developed a private ski resort community known as the

7   Yellowstone Club. *Id.* Also during that time period, Opspring hired Defendant Dennis

8   Montgomery ("***Montgomery***") — who subsequently has been the infamous subject of several high

9   profile government investigations and media stories dealing with allegations of corruption and

10  fraud — as an employee. *Id.*; Dkt. 1 ¶ 32. When Opspring hired Montgomery, he was embroiled

11  in litigation as a defendant against his former employer, which accused Montgomery of interfering

12  with its business relationships and misappropriating its trade secrets. *See* Sandoval Decl. ¶ 10.

13  Shortly after Montgomery joined Opspring, Plaintiffs ended their business relationship

14  with Edra. *Id.* ¶ 11. Atigeo relinquished its interest in Opspring, and Edra became the sole owner

15  and operator of Opspring. *Id.* Plaintiffs and Edra arranged for the disposition of these and other

16  investments, as well as certain assets and obligations in a Letter Agreement dated March 31,

17  2007. *Id.* ¶ 12. Opspring's business eventually failed, and Montgomery and Edra each filed for

18  bankruptcy. *Id.* ¶ 11. Edra and Tim were later divorced. *Id.*

19  In December 2009, Atigeo instituted an adversary proceeding in Edra's bankruptcy case

20  concerning the validity and enforceability of the Letter Agreement. *Id.* ¶ 13. Atigeo alleged that

21  both Opspring and Edra failed to perform certain material commitments set forth in the Letter

22  Agreement and, as a result, the Letter Agreement had been repudiated. *Id.* Edra subsequently

23  signed an affidavit confirming her and Opspring's failure to perform under the Letter Agreement

24  and stipulated to entry of an order rescinding the Letter Agreement. *Id.* ¶ 14; Sandoval Decl.

25  Ex. 2 (copy of Edra Blixseth's Affidavit).

26  Over the course of the last two years, various websites containing false allegations about

    Plaintiffs' business practices and their dealings with Edra have appeared on the Internet. Dkt. 1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

¶¶ 21, 22; Sandoval Decl. ¶ 4 and Ex. 2 (screen shots of excerpts from the offending websites). The registered domain names for these websites are traceable to Defendant Offshore Limited D and Defendant Demaratech, LLC, which are two entities controlled by Montgomery and his son-in-law, Defendant Istvan Burgyan ("**Burgyan**") (collectively, "**Defendants**").  Dkt. 1 ¶¶ 3-6, 8-10, 21.  One of these domain names – <atigeo.co> (which is used for the website www.atigeo.co) – is identical to the domain name for Atigeo's legitimate company website in all respects, except for the top-level domain (*i.e.*, ".com" vs. ".co").  *Id.* ¶ 47.

To halt Defendants' harmful activities, Plaintiffs have brought claims for cybersquatting in violation of the Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d), and libel.

**B.  Allegations Concerning Defendants' Cybersquatting**

In support of its cybersquatting claim, Atigeo has alleged the following facts in its Complaint, which are taken as true for the purpose of Defendants' Rule 12(b)(6) motion.

The registered ATIGEO mark is a coined mark and inherently distinctive, unique, and fanciful.  *Id.* ¶¶ 15-17, 46.  Atigeo invested considerable time and money in advertising its services under the ATIGEO trademark throughout the United States.  *Id.* ¶¶ 14, 17, 18.  Through these efforts, Atigeo is well known and well recognized under the ATIGEO trademark and has developed extensive goodwill associated with the mark, making it a valuable asset and source indicator for Atigeo.  *Id.* ¶¶ 19, 20.  Atigeo advertises its products and services using the ATIGEO trademark through its company website, www.atigeo.com.  *Id.* ¶ 15.

In 2012, Montgomery approach Sandoval and demanded that Sandoval and/or Atigeo provide him with financial backing for a new business, making threatening statements such as "If you're not with me, you're against me," and warning Plaintiffs that he had followed through on similar threats made to others and that Plaintiffs did not want to end up like Montgomery's other targets who, according to Montgomery, "had learned the hard way."  *Id.* ¶ 29.  Despite these threats, Plaintiffs refused to yield to Montgomery's demand for financial support.  *Id.*  Thereafter, the website www.atigeo.co and other sites using third parties' marks containing libelous statements about Plaintiffs appeared on the Internet.  *See id.* ¶¶ 29, 31.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 3

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

The following statements about Plaintiffs have been made on www.atigeo.co and other linked sites, such as www.yellowstoneclub.net, www.yellowstoneclubs.com, www.gratonresortcasinso.net, and www.theuntoldstory.net:

    (a)    That Atigeo billed a client for "nonexistent development work."

    (b)    That "Edra Blixseth place[d] $7mil into [Atigeo] accounts as 'pre-divorce' money" and that "Michael Sandoval agree[d] to escrow and 'shelter' the money for Edra Blixseth."

    (c)    That Michael Sandoval took all of Edra Blixseth's "sheltered" money.

    (d)    That Plaintiffs own three lots on Lake Washington, "purchased with Blixseth money without their consent or knowledge."

    (e)    That "Michael Sandoval, with the help of his controller, took the [Blixseth] money to purchase the property on Lake Washington in 2006 without the knowledge or consent of Edra Blixseth" and that "Michael Sandoval" admitted to the wrongdoing in March 2007 after being confronted with the evidence by Edra Blixseth and her associates."

    (f)    That Plaintiffs "still owe the Blixseth estate $8 [million]."

*Id.* ¶¶ 22, 63.  All of these statements are false.  *Id.* ¶ 23.

Through an investigation into these websites' domain name registration, Plaintiffs determined that Defendants own and operate each of these websites.  *Id.* ¶¶ 21, 53.  In some instances, Defendants have used false information to register and maintain the domain names for these websites, including the alias "Clark Kent" (Superman's secret identity).  *Id.* ¶ 53.  To publicize and draw attention to these websites, Defendants have broadcast information about their sites to a wide variety of national and local media outlets and Plaintiffs' employees, prospective business partners, and litigation opponents, using email and Twitter accounts created with pseudonyms.  *Id.* ¶¶ 24-28.  They also have used the keyword "Atigeo" as a "meta-tag" (*id.* ¶ 40), which is a marker that Internet search engines use to direct users to the <atigeo.co> site.  Defendants' websites indicate that, as of July 1, 2013, they have been viewed more than 7.5 million times, with nearly 130,000 views of www.atigeo.co individually.  *Id.* ¶ 27.  These websites also reflect Defendants' pattern of using third parties' marks to publish false, misleading, and defamatory claims about Plaintiffs and others.  *Id.* ¶¶ 30, 52.

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   Defendants were aware of Atigeo's use of the ATIGEO mark when they registered and

2   began using the <atigeo.co> domain name.  *Id.* ¶ 32.  Defendants have no intellectual property

3   rights in the <atigeo.co> domain name and have never sought or received permission from

4   Atigeo to use the ATIGEO mark.  *Id.* ¶¶ 32, 33.  The ATIGEO mark is not a part of the legal

5   name of any Defendant and is not commonly used to refer to any Defendant.  *Id.* ¶ 33.

6   In the light of Plaintiffs' refusal to give in to Montgomery's demand for financial pay-

7   offs, Defendants' publication of false statements on the <atigeo.co> site and linked sites and

8   their efforts to attract viewers to these sites constitute retaliation against Plaintiffs and an attempt

9   to extort payment from Plaintiffs.  *Id.* ¶¶ 28, 30.  Defendants' use of the ATIGEO mark in the

10   <atigeo.co> domain name is likely to cause confusion among Atigeo's potential and existing

11   customers and business partners.  *Id.* ¶¶ 35, 37, 38.  The website's content is harmful to

12   Plaintiffs' reputations and the goodwill associated with the ATIGEO mark.  *Id.*  Further,

13   Defendants' conduct prevents Atigeo from using its mark to direct interested persons to its

14   website by using the commercial top-level domain ".co."  *Id.* ¶ 36.  Imposing these costs on

15   Atigeo is part of Defendants scheme to extract pay-offs from Plaintiffs.  *Id.* ¶ 48.

**C.    Allegations Concerning Defendants' Libelous Writings**

16   As explained below, courts engage in a two-step burden-shifting analysis when ruling on

17   an anti-SLAPP motion to strike.  If *and only if* a defendant establishes that the plaintiff's libel

18   claim concerns a protected activity (*i.e.*, speech about a public issue) do courts need to consider

19   whether the plaintiff's libel claim has minimal merit.  As further explained below, Defendants

20   here have not made the required threshold showing.  But — in an abundance of caution, to

21   ensure that the Court has all the information needed to engage in both steps of the burden-

22   shifting analysis — Plaintiffs point to the specific factual allegations in the Complaint collected

23   above and the declaration testimony of Sandoval, which also is cited above in the summary of

24   background facts.

25   According to Sandoval's testimony and the allegations in the Complaint:

26   • Defendants operate and maintain various linked websites that make
      allegations about Plaintiffs enumerated (a) through (f) above, and they

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 5

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

have publicly disseminated these statements and links through their websites and via email and Twitter accounts created with aliases.  Dkt. 1 ¶¶ 23, 65; Sandoval Decl. ¶ 8.

- The statements about Plaintiffs' appearing on Defendants' websites enumerated (a) through (f) above are false.  Dkt. 1 ¶ 23; Sandoval Decl. ¶¶ 4-7.

- These statements – which accused Plaintiffs of dishonesty, fraudulent conduct, breach of confidence, embezzlement, and immoral or improper conduct – are libelous on their face and inherently damaging to Plaintiffs' reputations.  Dkt. 1 ¶ 64.

Defendants do not dispute any of these points, much less offer any evidence conclusively refuting them (and, to the extent Defendants attempt to do so for the first time in their reply brief, Plaintiffs reserve the right to request a rebuttal via sur-reply).

**D.    Procedural History**

A few facts concerning the procedural history of this case are also pertinent to the timeliness of Defendants' anti-SLAPP motion.  Plaintiffs filed this action in the U.S. District Court for the Central District of California on July 13, 2013, because they understood that the organizational defendants were organized under the laws of California with their principal places of business near Los Angeles and that the individual defendants resided near Los Angeles.  *See* Dkt. 1 ¶¶ 3-6, 12, 13.  It turns out that Montgomery and Burgyan moved from Los Angeles and now live at the same residence in the Yarrow Point, Washington.  Service was effected on all Defendants at that location as of August 6, 2013.  *See* Dkts. 15, 16.  California counsel then appeared on behalf of all Defendants on August 15, and the parties stipulated to an extension of time until September 6 for Defendants to file responsive pleadings.  *See* Dkt. 18.

Before the stipulated deadline for Defendants' responsive pleadings, counsel for the parties further agreed to stipulate to a transfer of venue from the Central District of California to the Western District of Washington under 28 U.S.C. § 1404(a) for the convenience of the parties (*see* Dkt. 19), but they never agreed that the stipulated deadline for responsive pleadings would change (*see* Dkt. 31-2 at 4-14 (email correspondence between counsel attached as exhibits to the Declaration of Dennis Jones, Defendants' California counsel)).  The stipulated deadline passed

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 6

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

without any filing from Defendants.  Plaintiffs agreed as a courtesy to refrain from seeking entry of default and gave Defendants a further extension to September 18 to file an <u>answer</u> to the Complaint.  *See* Dkt. 31-2 at 12 (Email of Sept. 17 from Roland Tellis to Dennis Jones).  The order of transfer was entered on September 18.  *See* Dkt. 20.

After entry of the transfer order, Defendants attempted to file the now-pending motions in the docket for the Central District of California.  That court subsequently struck Defendants' motions from its docket.  *See* Appendix A.  Immediately after transfer was made, the Clerk of this Court notified the parties on September 19 to note any previously filed motions for hearing by this Court.  *See* Dkt. 22. Despite this notice, Defendants did not note their motions on this Court's docket.

As a further courtesy to Defendants, counsel for Plaintiffs agreed to *another* deadline extension for Defendants to file an <u>answer</u> until October 30, rather than seek entry of default. But instead of filing an answer on that date, Defendants recycled the motions that they previously attempted to file in the Central District of California.  The filing of their motion to strike comes 85 days after service was complete which, as explained below, is beyond the 60-day filing period for such motions set by California law.

## III.   ARGUMENT

### A.   Atigeo Has Pleaded Sufficient Allegations of Defendants' Bad Faith to Establish a Claim for Cybersquatting under the ACPA.

Dismissal of a claim under Rule 12(b)(6) is proper only if "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted).  When considering a motion to dismiss for failure to state a claim, this Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

658, 661 (9th Cir. 1998).  Applying these principles here, Atigeo has plainly stated a claim under the ACPA.

Congress passed the ACPA in 1999 to combat the "deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners."  *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 267 (4th Cir. 2001) (internal quotation marks and citation omitted).  To state a claim for cybersquatting under the ACPA, a plaintiff must allege (1) that it had a distinctive or famous mark at the time the domain name at issue was registered; (2) that the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to the plaintiff's mark; and (3) that the defendant had a bad-faith intent to profit from the plaintiff's mark.  *See* 15 U.S.C. § 1125(d)(1)(A)(i)-(ii).  Defendants do not contest the sufficiency of Atigeo's allegations of the first two elements.  They assert only that Atigeo has failed to adequately plead allegations of bad faith.  They are incorrect.

In determining whether bad faith exists, courts consider nine non-exclusive factors enumerated in the ACPA.  15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX); *Lahoti v. Vericheck, Inc.*, No. C06-1132JLR, 2007 WL 2570247, at *6 (W.D. Wash. Aug. 30, 2007) (granting summary judgment on the issue of bad faith), *aff'd*, 586 F.3d 1190, 1202-04 (9th Cir. 2009).  In the following paragraphs, which are numbered with headings corresponding to each bad-faith factor enumerated in the ACPA, Plaintiffs explain how they have pleaded allegations that, taken as true, establish each of these factors.  To the extent they are present, the first four factors weigh against a finding of bad faith, while the latter five are seen as "indicia of bad faith intent."  *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 786 (8th Cir. 2004) (citing *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809-10 (6th Cir. 2004)).

### 1.     The trademark or other intellectual property rights of the person, if any, in the domain name.

With respect to this first factor, Defendants make no claim of trademark or other intellectual property rights in the domain name <atigeo.co>.  As alleged in the Complaint, Atigeo is the sole owner of the registered trademark ATIGEO, which Atigeo has exclusively used since at least 2007, and Defendants have no intellectual property rights in this mark or the <atigeo.co>

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 8

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    domain name.  *See* Dkt. 1 ¶¶ 14, 15, 33.  Defendants, therefore, have no claim of intellectual

2    property rights in the <atigeo.co> domain name.

3         **2.    The extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that**
4         **person.**

5         As to the second factor, Defendants make no claim that <atigeo.co> consists of any of

6    their legal names or names commonly used to identify them.  As alleged in the Complaint,

7    ATIGEO is a unique, fanciful, and coined trademark that is inherently distinctive and does not

8    consist of Defendants' legal or common names or derivatives thereof.  *See id.* ¶¶ 16, 17, 33.

9    Thus, Defendants cannot claim a right of fair use to be identified by their own names.

10        **3.    The person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services.**

11        For the third factor, Defendants do not claim ever to have used the ATIGEO mark in

12   connection with a bona fide offering of any goods or services.  Again, Atigeo alleged that it "has

13   engaged in substantially exclusive and continuous interstate commerce under the ATIGEO

14   trademark since at least 2007 and well before Defendants' adoption of the identical trademark for

15   use in the domain name <atigeo.co>."  *Id.* ¶ 14.  Defendants cannot claim a legitimate use.

16        **4.    The person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name.**

17        Regarding the fourth factor, Defendants argue that "the <atigeo.co> Website is not

18   designed for e-commerce but, rather, is an investigative news site" and is therefore a bona fide

19   noncommercial or fair use.  Dkt. 33-1 at 6-7.  Defendants' characterization of the <atigeo.co>

20   website is irrelevant at this stage.  And merely because Defendants "might assert an expressive

21   purpose in creating a website … the First Amendment would not grant [them] the right to use a

22   domain name confusingly similar" to a protected mark.  *Coca-Cola*, 382 F.3d at 787.

23        Further, Atigeo alleged that the website appeared only after Sandoval declined to make

24   an investment in Montgomery's business venture under threats of retribution.  *See* Dkt. 1 at 8.

25   The facts pleaded at this stage show that <atigeo.co> is not a bona fide noncommercial or fair

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 9

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1    use of the mark but, rather, retaliation after Montgomery's unsuccessful attempt to solicit

2    funding from Plaintiffs.

3         **5.    The person's intent to divert consumers from the mark owner's online
               location to a site accessible under the domain name that could harm
4              the goodwill represented by the mark, either for commercial gain or
               with the intent to tarnish or disparage the mark, by creating a
5              likelihood of confusion as to the source, sponsorship, affiliation, or
               endorsement of the site.**

6         Defendants argue with respect to the fifth factor that Atigeo failed to allege that they

7    registered and used <atigeo.co> with intent to divert consumers from www.atigeo.com for the

8    purpose of deriving commercial gain, and that the appearance of their website makes confusion

9    "virtually impossible."  *See* Dkt. 33-1 at 7.  But Defendants' spin on the website is irrelevant

10   under Rule 12(b)(6).  And regardless, the use of a registered trademark in an offending domain

11   name (as is the case here) is recognized as evidence of intent to divert customers.  *Morrison &*

12   *Foerster LLP v. Wick*, 94 F. Supp. 2d 1125, 1131-32 (D. Colo. 2000).

13        In addition, Atigeo specifically alleged that Defendants have publicized the <atigeo.co>

14   site containing defamatory content damaging to Atigeo's prospective business and sought to lure

15   viewers by tweeting and emailing links to their sites and attaching search engine keywords and

16   meta-tags for the word "Atigeo" to the <atigeo.co> website.  *See* Dkt. 1 ¶¶ 26-28, 39, 40.

17   Considering that <atigeo.co> is nearly identical to <atigeo.com>, the negative content of

18   Defendants' websites, their marketing efforts, and their threats, the facts as pleaded show that

19   Defendants intended to tarnish the ATIGEO mark and extort money from Atigeo to get

20   Defendants to stop using the site.

21        **6.    The person's offer to transfer, sell, or otherwise assign the domain
               name to the mark owner or any third party for financial gain without
22             having used, or having an intent to use, the domain name in the bona
               fide offering of any goods or services, or the person's prior conduct
23             indicating a pattern of such conduct.**

24        On the sixth factor, Defendants also argue that dismissal is warranted because Atigeo did

25   not allege that Defendants offered to sell the <atigeo.com> domain name.  *See* Dkt. 33-1 at 7.  A

26   direct offer to sell the offending domain name to a trademark holder is unnecessary to find a bad-

     faith financial motive.  *See Coca-Cola*, 382 F.3d at 786 (request for editorial page space).  Courts

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 10

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   recognize that extortion and revenge (the proverbial "shakedown") satisfy the bad-faith intent to

2   profit consideration of the ACPA. *See, e.g.*, *Faegre & Benson, LLP v. Purdy*, 447 F. Supp. 2d

3   1008, 1014-15 (D. Minn. 2006); *Morrison & Foerster*, 94 F. Supp. 2d at 1131-32. Based on

4   Atigeo's allegations that Defendants registered and began using <atigeo.co> to disparage Atigeo

5   after refusal of Montgomery's attempt to gain financially through investment solicitations (*see*

6   Dkt. 1 ¶ 29), the facts as pleaded show that Montgomery had a bad-faith intent to use the

7   offending website to induce payment from Plaintiffs.

         **7.**    **The person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct.**

11       Regarding the seventh factor, Defendants contend that there is no allegation that they

12   used false or misleading contact information to register the <atigeo.co> domain name. *See* Dkt.

13   33-1 at 8. But Plaintiffs' Complaint specifically alleges that Defendants provided the fictitious

14   alias "Clark Kent" (the secret identify of the comic book hero Superman), rather than their own

15   names, in maintaining the domain name registration. *See* Dkt. 1 ¶ 53. The facts, as pleaded,

16   show that Defendants sought to avoid identification by the domain name registrar (Network

17   Solutions) and Atigeo.

         **8.**    **The person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties.**

21       Turning to the eight factor, Defendants assert that Atigeo "fail[ed] to allege that

22   Defendants have acquired multiple domain names without regard to the goods or services of

23   Plaintiffs." Dkt. 33-1 at 8. Atigeo alleged that Defendants have a pattern of registering domain

24   names containing third-party marks and listed examples of some of those websites. *See* Dkt. 1 at

25   27, 30, 52. Plaintiffs also alleged that the purpose of those domain name registrations was not

26   related to goods or services, but rather to falsely disparage members of the federal judiciary, U.S.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 11

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Bankruptcy personnel, and private parties (including with the bad-faith intent to profit, as in

2    Plaintiffs' case). These facts, as pleaded, support the allegation of bad faith.

3    **9.    The extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section. Defendants do not argue that the ATIGEO mark is not distinctive or famous.**

4

5    And with respect to the ninth factor, Defendants do not contest that the ATIGEO mark is

6    distinctive or famous. As the House Report on the ACPA stated, "The more distinctive or

7    famous a mark has become, the more likely the owner of that mark is deserving of the relief

8    available under this act." H.R. Rep. No. 106-412, at 13 (1999). Atigeo specifically pleaded that

9    the registered ATIGEO trademark is distinctive, fanciful, and unique. *See* Dkt. 1 ¶¶ 16, 36, 46.

10   Thus, Atigeo has adequately pleaded yet another factor weighing in favor of relief.

11   <u>In sum</u>, if there is any doubt as to the adequacy of Atigeo's pleadings on any factor (and

12   there should be no doubt), such doubt does not warrant dismissal. As this Court previously

13   observed in another cybersquatting case, these statutory factors "are not exhaustive. Instead, 'the

14   most important grounds for finding bad faith are the unique circumstances of the case, which do

15   not fit neatly into the specific factors' that Congress enumerated." *Lahoti*, 2007 WL 2570247, at

16   *6 (quoting *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946-47 (9th Cir. 2002)).

17   As pleaded in the Complaint, the unique circumstances here confirm Defendants' bad-

18   faith intent. Montgomery attempted to induce Plaintiffs to invest in his enterprise by threatening

19   retaliation against Plaintiffs as he had against others if Plaintiffs declined to pay him money. *See*

20   Dkt. 1 ¶ 29. When Plaintiffs declined, Montgomery, through the entities he controls (and with

21   the help of his son-in-law), used fictitious names to register the domain name <atigeo.co>, which

22   is nearly identical to the legitimate domain name for Atigeo's website, <atigeo.com>, and began

23   posting false and libelous content about Plaintiffs online to the detriment of the goodwill

24   associated with the ATIGEO trademark. *See id.* ¶¶ 3-6, 8-10, 21, 22, 28-30, 35-38. Taking these

25   well-pleaded allegations as true and drawing all reasonable inferences in Plaintiffs' favor as the

26   Court must, it is reasonable to conclude that Defendants are engaged in a scheme to tarnish the

     ATIGEO mark as retaliation for Plaintiffs' earlier refusal to provide funding and in the hope of

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 12

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

1   extorting ransom.  The website www.atigeo.com is a revenge site, plain and simple, intended to

2   strong-arm Plaintiffs into paying a ransom.   This extortionist and vengeful conduct is

3   synonymous with bad-faith intent to profit from the ATIGEO mark, in violation of the ACPA.

4   *See, e.g.*, *Faegre & Benson*, 447 F. Supp. 2d at 1014-15; *Morrison & Foerster*, 94 F. Supp. 2d at

5   1131-32.  Accordingly, Atigeo should be permitted to proceed with its ACPA claim.

6   **B.      Plaintiffs' Libel Claim Is Not Subject to California's Anti-SLAPP Statute.**

7          In addition to seeking dismissal of Atigeo's cybersquatting claim, Defendants assert that

8   Plaintiffs' libel claim constitutes a "Strategic Lawsuit Against Public Participation" (or "SLAPP

9   suit") and have moved to strike this claim pursuant to California's anti-SLAPP statute, Cal. Civ.

10  Proc. Code § 425.16.[2]  *See* Dkt. 33-1 at 9-13.  Defendants' libel is not the type of conduct the

11  anti-SLAPP statute was intended to protect.

12         **1.      Defendants' Anti-SLAPP Motion Is Untimely.**

13         Before considering the merits of Defendants' anti-SLAPP motion this Court can and

14  should dismiss Defendants' motion as untimely.  Anti-SLAPP motions are to be filed "within 60

15  days of the service of the complaint or, in the court's discretion, at any later time upon terms it

16  deems proper."  Cal. Civ. Proc. Code § 425.16(f).  Defendants were served as of August 6, 2013.

17         Yet, without explanation (and despite numerous reminders and professional

18  accommodations by Plaintiffs), Defendants waited to file their anti-SLAPP motion in this Court

19  on October 30, 2013, which was the deadline for Defendants to file an <u>Answer</u> (not a motion to

20  dismiss) that Plaintiffs had agreed to as a courtesy – rather than seeking default under Fed. R.

21  Civ. P. 55.

22         **2.      Defendants' Anti-SLAPP Motion Lacks Merit.**

23         If the Court reaches the merits of Defendants' anti-SLAPP motion to strike (which it need

24  not), it must engage in a two-step burden shifting analysis.  *See Commonwealth Energy Corp. v.*

25  *Investor Data Exch., Inc.*, 110 Cal. App. 4th 26, 31, 1 Cal. Rptr. 3d 390 (Cal. Ct. App. 2003)

---

[2] Plaintiffs agree that California's anti-SLAPP statute applies pursuant to the choice of law rules for venue transfers of convenience under 28 U.S.C. § 1404(a).  *See Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1156-57 (N.D. Cal. 2003).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 13

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1  (citing *Navellier v. Sletten*, 29 Cal. 4th 82, 88, 124 Cal. Rptr. 2d 530 (Cal. 2002)).  **_First_**, the

2  defendant must make a threshold showing that the challenged conduct is a protected activity, *i.e.*

3  activity "in furtherance of [the defendant's] . . . right of petition or free speech under the United

4  States Constitution or the California Constitution in connection with a public issue."  Cal. Civ.

5  Proc. Code § 425.16(b)(1); *see also Navellier*, 29 Cal. 4th at 88.

6       **_Second_**, if and only if the defendant makes the required showing in step one, the burden

7  shifts to the plaintiff to "establish[] that there is a probability that the plaintiff will prevail on the

8  claim."  Cal. Civ. Proc. Code § 425.16(b)(1); *see also Navellier*, 29 Cal. 4th at 88.  Dismissal is

9  proper only if the defendant prevails on both steps of this analysis.  *Albanese v. Menounos*, 218

10  Cal. App. 4th 923, 928, 160 Cal. Rptr. 3d 546 (Cal. Ct. App. 2013).

11       As explained below, Defendants have failed to carry their burden on step one because

12  their statements about Plaintiffs do not concern "public issues" or "issues of public interest,"

13  which are terms of art under the anti-SLAPP statute.  In addition, Plaintiffs are sufficiently likely

14  to succeed on their libel claim.  Thus, Defendants' anti-SLAPP motion should be denied.

15            **a.**    **Defendants have failed to make the required threshold showing under the first prong that Plaintiffs' libel claim concerns a "public issue."**

16       Defendants argue that their statements about Plaintiffs on www.atigeo.co and related

17  websites concern public issues or issues of public interest and therefore qualify as protected

18  activity under subsections (e)(3) and (e)(4) of California's anti-SLAPP statute.[3]  *See* Dkt. 31-1 at

19  [3] The pertinent provisions of California's anti-SLAPP statute provide:

20      As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: … (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

24  Cal. Civ. Proc. Code § 425.16(e)(3), (4).

25  With respect to subsection (e)(3), Plaintiffs acknowledge, for the purpose of this motion, that California courts have recognized that statements made on publicly accessible websites such as those administered

26  by Defendants are made in a public forum for the purpose an anti-SLAPP analysis.  *See Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 895-97, 17 Cal. Rptr. 3d 497 (2004).  With respect to subsection (e)(4),

                                                             (continued . . .)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 14

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* (206) 624-0900

1    10-12.  In the statements at issue, Defendants make claims about Atigeo's business operations

2    and billing practices (*e.g.*, Defendants assert that Atigeo billed a client for "nonexistent

3    development work" (Dkt. 1 ¶¶ 22, 63)), and they make allegations about Plaintiffs' business

4    dealings with Edra Blixseth (*e.g.*, Defendants charge that Plaintiffs agreed to "shelter" Edra's

5    "pre-divorce" money and that Sandoval later put such funds to improper use (*see id.*)).

6    Defendants do not assert that either Atigeo's business operations or Plaintiffs' business dealings

7    with Edra are, by themselves, public issues.  Rather, Defendants suggest that they are entitled to

8    the protection of the anti-SLAPP statute because their statements "concern the financial affairs of

9    Timothy and Edra Blixseth."  Dkt. 31-1 at 11-12.  This analysis is incorrect.

10           Before explaining why Defendants are wrong, it first is necessary to identify the

11   standards that California courts apply when evaluating whether a statement concerns a public

12   issue or issue of public interest.  Relying on the California Court of Appeal's 2008 decision in

13   *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210, Defendants assert

14   that "'[a]n issue of public interest … is *any issue in which the public is interested*.'"  Dkt. 31-1 at

15   11 (emphasis in original) (quoting 159 Cal. App. 4th at 1039).[4]  But *Nygård* does not control

16   here.  Just this year, in *Albanese v. Menounos* – a decision that Defendants have overlooked – the

17   California Court of Appeal expressly rejected a suggested broad application of *Nygård*, similar to

18   the view advanced by Defendants here, and limited *Nygård* to its unique facts.  *See* 218 Cal.

19   App. 4th at 935 ("We disagree with Menounos's reading of *Nygård*. …*Nygård* must be read in

20   the context of the evidence" presented in that case.).  After analyzing in depth those cases in

21   which courts considered multiple factors (instead of applying a single sweeping proposition as

22   ────────────

23   (. . . continued)

     Defendants' conduct does not implicate the right to petition the government for redress of grievances,
     with which the referenced "right of petition" is concerned (*see Weinberg v. Feisel*, 110 Cal. App. 4th

24   1122, 1131, 2 Cal. Rptr. 3d 385 (Cal. Ct. App. 2003)), and Defendants do not advance any argument
     separate from that related to subsection (e)(3).  Thus, the only question before the Court in the first-step

25   analysis is whether Defendants have shown that their statements about Plaintiffs concern a public issue or
     issue of public interest.

26   [4] Defendants cite page 1039 of *Nygård*, but this statement appears on page 1042.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 15

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1    Defendants urge), the court clarified that its decision in "*Nygård* **did not redefine** what

2    constitutes a matter of public interest." *Id.* (emphasis added).

3          As the discussion in *Albanese* shows, there are three general categories of cases that

4    constitute a matter of public interest: (1) the subject of the statement was a person or entity in the

5    public eye, (2) the statement involved conduct that could affect large numbers of people beyond

6    the direct participants, and (3) the statement involved a topic of widespread, public interest. *Id.*

7    (quoting *D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1226, 106 Cal. Rptr. 3d 399 (Cal. Ct. App.

8    2010)); *see also Commonwealth Energy Corp.*, 110 Cal. App. 4th at 33; *Weinberg*, 110 Cal. App.

9    4th at 1132-33; *Rivero v. Am. Fed'n of State, Cnty. & Muni. Employees, AFL-CIO*, 105 Cal.

10   App. 4th 913, 924, 130 Cal. Rptr. 2d 81 (Cal. Ct. App. 2003).  None of Defendants' statements

11   about Plaintiffs Atigeo and Sandoval falls within any of these categories.

12         Starting with the first category, neither Atigeo nor Sandoval is in the "public eye."

13   Among the entities or individuals that courts have recognized as being in the public eye are

14   "nationally known [political] figures," religious organizations receiving "extensive media

15   coverage," and contestants on "television show[s] of significant interest to the public and media"

16   (*Rivero*, 105 Cal. App. 4th at 924 (internal quotation marks and citations omitted) (citing cases)),

17   and celebrities (*see, e.g.*, *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 63 Cal. Rptr. 3d 798

18   (Cal. Ct. App. 2007) (involving the estate of the iconic actor Marlon Brando)).  Atigeo, in

19   contrast, is a small, privately held technology company located in Bellevue, Washington. *See*

20   Dkt. 1 ¶ 1; Sandoval Decl. ¶ 2.  Sandoval is Atigeo's CEO and founder (*see* Sandoval Decl. ¶ 2),

21   but he is not a celebrity.  To be sure, Atigeo maintains a website (www.atigeo.com) and

22   Plaintiffs understandably strive for success in business, but such activities do not generally put

23   Plaintiffs in the public eye. *See Albanese*, 218 Cal. App. 4th at 936 (rejecting the argument that

24   plaintiff put herself in the public eye for all purposes by promoting herself through different

25   media outlets and maintaining a website).  Defendants have not offered any argument or

26   evidence showing otherwise.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 16

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    Turning to the second category – statements concerning conduct that could affect large

2    numbers of people beyond the direct participants – nothing suggests that the alleged private

3    conduct of Plaintiffs could have wide-reaching effects.  Courts have recognized that issues of

4    public interest "include not only governmental matters, but also private conduct that impacts a

5    broad segment of society and/or that affects a *community* in a manner *similar* to that of a

6    governmental entity."  *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479, 102

7    Cal. Rptr. 2d 205 (Cal. Ct. App. 2000) (emphases added).  Examples include activities of

8    homeowners associations (*see id.*) and statements made in union elections (*see Macias v.*

9    *Hartwell*, 55 Cal. App. 4th 669, 673-74, 64 Cal. Rptr. 2d 222 (Cal. Ct. App. 1997)).  Defendants'

10   statements include allegations about the operations of a small, closely held company and a

11   private business transaction between a handful of parties.  Nothing suggests – and Defendants

     have not shown – that these matters have the potential for a wide ripple effect.

12   As to the third category – statements concerning topics of widespread public interest –

13   Defendants likewise have failed to make the required showing.  Courts routinely reject

14   arguments that the anti-SLAPP statute covers activities and statements concerning private

15   business affairs.  *See, e.g., World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App.

16   4th 1561, 1568-70, 92 Cal. Rptr.3d 227 (2009) (denying motion where statements solely about

17   plaintiff's business capacity); *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 111,

18   15 Cal. Rptr. 3d 215 (Cal. Ct. App. 2004) (denying anti-SLAPP motion where statements were

19   "not about pollution or potential public health and safety issues in general, but about the

20   [plaintiff's] specific business practices"); *Commonwealth Energy*, 110 Cal. App. 4th at 34

21   (denying motion to strike under first prong when statements concerned company's particular

22   services, not about investment scams in general).  As noted above, Defendants' statements at

23   issue here concern the operations of Atigeo, a small private company, and private business

24   transactions between Plaintiffs and Edra Blixseth.  Essentially, Defendants accuse Plaintiffs of

25   "sheltering" and then "stealing" Edra's money.  California courts have recognized that similar

26   statements about alleged theft in the context of private transactions are <u>not</u> public issues.  *See*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 17

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1   *Weinberg*, 110 Cal. App. 4th at 1132 (involving charge of theft by one token collector against

2   another communicated to association of 700 token collectors).  Defendants' accusations are not

3   materially different.

4        To the extent the affairs of third parties like Tim and Edra Blixseth are issues of public

5   interest, neither the law nor the facts supports application of the anti-SLAPP statute to

6   Defendants' statements concerning *Plaintiffs*.  For a statement to concern an issue of public

7   interest, "there should be some degree of closeness between the challenged statements and the

8   asserted public interest." *Weinberg*, 110 Cal. App. 4th at 1132 (citing *Connick v. Myers*, 461

9   U.S. 138, 148-49 (1983)).  "'The fact that a broad and amorphous interest can be connected to a

10  specific dispute is not sufficient to meet the statutory requirements of the anti-SLAPP statute.'"

11  *World Fin. Grp.*, 172 Cal. App. 4th at 1570 (internal quotation marks omitted) (quoting *Dyer v.

12  Childress*, 147 Cal. App. 4th 1273, 1280, 55 Cal. Rptr. 3d 544 (Cal. Ct. App. 2007)).  A theory

13  that focuses "on society's general interest in the subject matter of the dispute instead of the

14  specific speech or conduct" or where "'the part is considered synonymous with the greater

15  whole'" is unavailing. *Id.* (brackets omitted) (quoting *Commonwealth Energy*, 110 Cal. App. 4th

16  at 34).  Courts are required to focus on the "'specific nature of the speech rather than the

17  generalities that might be abstracted from it.'"  *Id.* (emphasis omitted) (quoting *Commonwealth

18  Energy*, 110 Cal. App. 4th at 34).

19       Here, the asserted issue of public interest is different from the specific speech at issue.  If

20  there are any issues of public interest, they are, according to Defendants' motion, the financial

21  affairs of third parties Tim and Edra.  *See* Dkt. 31-1 at 11-12.  But the statements that are the

22  subject of Plaintiffs' libel claim concern the business activities of Atigeo and Sandoval.

23  Defendants do not contend there is public interest in the transactions between Plaintiffs and Edra,

24  nor have they pointed to anything establishing such an interest.  Further, the only evidence

25  submitted in support of Defendants' motion belies any contention that the alleged conduct of

26  Plaintiffs is closely connected to the affairs of Tim and Edra.  The news articles submitted by

27  Defendants in support of their motion (*see* Dkt. 31-3) discuss Tim's rags-to-riches personal

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 18

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

1    history and the ups and downs of his various real estate ventures, ***but they do not mention***

2    ***Plaintiffs***.  Any supposed connection is tenuous at best.  Thus, the subject matter of the statements

3    at issue (the business of Atigeo and Sandoval) is distinct from the purported topic of public

4    concern (the financial affairs of Tim and Edra) and cannot qualify as an issue of public interest.

5    Equally without merit is Defendants' circular argument that traffic on their own websites

6    establishes a genuine public interest.  *See* Dkt. 31-1 at 11:25-28.  As the court observed in

7    *Weinberg*, "those charged with defamation cannot, by their own conduct, create their own defense

8    by making the claimant a public figure…. A person cannot turn otherwise private information into

9    a matter of public interest simply by communicating it to a large number of people."  110 Cal.

10   App. 4th at 1133.  Defendants are not entitled to drum up curiosity in public affairs and then claim

11   immunity under the anti-SLAPP statute.  *See id.* at 1132 ("'[P]ublic interest' does not equate with

12   public curiosity." (quoting *Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976))).

13   And although Defendants make no attempt to analogize the situation here to the facts in

14   *Nygård*, to assist the Court, Plaintiffs take this opportunity to distinguish *Nygård* in light of

15   Defendants' reliance on it.  The claims at issue in *Nygård* concerned a former employee's

16   allegations about working conditions at an international company with more than 12,000

17   employees worldwide and revelations that certain celebrities had visited the home of the

18   company's founder for Christmas.  *See* 159 Cal. App. 4th at 1034.  The evidence presented

19   showed that the "company and its founder, [Peter] Nygård 'are internationally known public

20   figures who spend a great deal of money and effort to promote their business, success, wealth

21   and lifestyle.'"  *Id.*  The evidence further showed that there was "'extensive interest' in Nygård –

22   'a prominent businessman and celebrity of Finnish extraction' – among the Finnish public," and

23   "a particular interest among the magazine's readership in 'information having to do with Mr.

24   Nygård's famous Bahamas residence which has been the subject of much publicity in Finland.'"

25   *Id.* at 1042.  Accordingly, as the trial court held and the court of appeal affirmed, the statements

26   "involved highly visible public figures and issues of public interest."  *Id.* at 1034.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 19

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    The same cannot be said about Plaintiffs here.  Atigeo, as noted above, is a relatively

2    small, closely held company with only 43 full-time and part-time employees; it hardly qualifies

3    as a large corporation that necessarily impacts the lives and interests of many.  Like many

4    businesses, Atigeo markets its services and technology, but, unlike the situation in *Nygård*, it has

5    not sought attention about the subject matter of Defendants' statements.  Moreover, there is no

6    evidence of extensive interest in Plaintiffs' affairs.  Defendants' only argument that there is such

7    interest is the self-made traffic on its own websites.  But, again, Defendants' own publication

8    does not create a legitimate issue of public interest.  *Condit v. Nat'l Enquirer, Inc.*, 248 F. Supp.

9    2d 945, 954 (E.D. Cal. 2002) ("California's anti-SLAPP statute applies to [statements alleging

10   the spouse of former Congressman Gary Condit had harassed Chandra Levy] only if they can be

11   characterized as statements made in connection with an issue of public interest for reasons other

12   than that they were made in a widely distributed publication.").

13       In sum, Defendants' statements concern the discrete business operations and dealings of a

14   private company and its CEO.  Defendants point to nothing showing that Plaintiffs are in the

15   public eye, that their activities could affect substantial numbers of people, or that there is

16   widespread public interest in *their activities*.  <u>At most, Defendants have asserted that Plaintiffs'</u>

17   <u>activities are tangentially related to the financial affairs of two individuals that have piqued the</u>

18   <u>curiosity of some</u>.  This is insufficient under the anti-SLAPP statute to establish that Plaintiffs'

19   libel claim concerns a public issue or issue of public importance.  Defendants have failed to meet

20   their burden, and their motion to strike should be denied for this reason alone.

      **b.**    **Even if Defendants had met their burden on the first prong, their motion should be denied because Plaintiffs are likely to succeed on their libel claim and Defendants' conduct is illegal.**

22       Even if the Court finds that Defendants have met their burden on the first prong (which it

23   should not), it should nonetheless dismiss Defendants' anti-SLAPP motion because, as set forth

24   below, there is a sufficient probability that Plaintiffs will prevail on their libel claim.  *See*

25   *Navellier*, 29 Cal. 4th at 89 ("Only a cause of action that satisfies *both* prongs of the anti-SLAPP

26   statute – *i.e.*, that arises from protected speech or petitioning *and* lacks even minimal merit – is a

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 20

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1   SLAPP, subject to being stricken under the statute."). The required showing of probability "need

2   not be high." *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010). "[T]he plaintiff

3   must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima

4   facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff

5   is credited." *Navellier*, 29 Cal. 4th at 88-89 (internal quotation marks and citations omitted); *see*

6   *also DuPont Merck Pharm. Co. v. Sup. Ct.*, 78 Cal. App. 4th 562, 568, 92 Cal. Rptr. 2d 755 (Cal.

7   Ct. App. 2000). For purposes of this inquiry, the trial court is to consider

8   'the pleadings and evidentiary submission of both the plaintiff and the defendant;
9   though the court does not *weigh* the credibility or comparative probative strength
    of competing evidence, it should grant the motion, if, as a matter of law, the
10  defendant's evidence supporting the motion defeats the plaintiff's attempt to
    establish evidentiary support for the claim.' In making this assessment it is 'the
    court's responsibility … to accept as true the evidence favorable to the
11  plaintiff….' The plaintiff need only establish that his or her claim has 'minimal
    merit' to avoid being stricken as a SLAPP.
12
    *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 291, 46 Cal. Rptr. 3d 638 (Cal. 2006)
13
    (emphasis in original) (internal citations omitted). Plaintiffs easily satisfy this standard.
14
15      The elements of a claim for libel under California law are (1) a false and unprivileged

16  publication (2) by writing or other fixed representation that (3) exposes a person to hatred,

17  contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a

    tendency to injure him in his occupation. *See* Cal. Civ. Code § 45.

18      Plaintiffs have pleaded specific factual allegations in support of each of these elements in

19  the Complaint, including the particular websites maintained by Defendants where false writings

20  about Plaintiffs are located, along with quoted examples of false statements. *See* Dkt. 1 ¶¶ 21,

21  22, 63. As explained above, Defendants have asserted, *inter alia*, that Atigeo has billed a client

22  "for nonexistent development work" and that Sandoval "took" monies belonging to Edra

23  Blixseth without her knowledge or consent and improperly used such funds for his own personal

24  gain. Defendants also have charged that Plaintiffs owe a debt to Edra's bankruptcy estate of $8

25  million. The very nature of these baseless accusations – unethical billing practices, grift, theft,

26  and large debts owing – is harmful.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 21

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

1    Plaintiffs also have made a substantiated prima facie showing of each element of libel.

2    The declaration of Sandoval, Atigeo's CEO, filed herewith, makes clear that neither Atigeo nor

3    Sandoval has stolen or sheltered any of Edra's money.  *See* Sandoval Decl. ¶¶ 5, 6, 14.

4    Moreover, Atigeo has never billed a client for "nonexistent development work," and neither

5    Atigeo nor Sandoval "still owe[s] the Blixseth estate $8 million."  *Id*. ¶¶ 4, 7, 14.

6    Buttressing Sandoval's testimony is the <u>Affidavit of Edra Blixseth</u> herself, which was

7    filed in the adversary litigation between Sandoval and Edra.  A copy is filed herewith as Exhibit

8    1 to Sandoval's Declaration.  In her sworn statement, Edra summarizes the terms of the Letter

9    Agreement governing Plaintiffs' severance of business dealings with her (¶¶ 6-10) and avers that

10   certain obligations owed to Atigeo and Sandoval under the Letter Agreement were not performed

11   *by Edra and her company Opspring* (¶ 11).  There is no mention of wrongdoing or deceit by

12   Plaintiffs.  It is inconceivable that Edra would have entered into the Letter Agreement or testified

     as she did in her affidavit if Defendants' accusations of theft and embezzlement had any merit.

13

14   Tellingly, Defendants do not attempt to challenge Plaintiffs' legal ability to prevail on

15   their claim for libel.  Where a speaker makes "a false statement of fact," the defamatory

16   statements are actionable.  *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1133, 212 Cal.

17   Rptr. 838 (Cal. Ct. App. 1985) (holding a newspaper's statements were actionable where article

18   directly implied – falsely – that Tom Selleck's father had made certain statements).  It is

19   uncontested that Defendants published the statements at issue.  A plain reading of Defendants'

20   websites demonstrates that each statement at issue is characterized as one of fact, not opinion.

21   *See Screen Shots of Defendants' Websites*, Sandoval Decl. Ex. 2.  Indeed, Defendants

22   characterize their websites as investigative news sites.  *See* Dkt. 31-1 at 6-7.  The statements

23   directly and falsely accuse Plaintiffs of stealing money and bilking Edra out of millions.  Thus,

     Defendants' statements are actionable.

24   Defendants' statements are also actionable because, as explained above, they are part of

25   an illegal attempt to extort monetary payment from Plaintiffs.  As Defendants recognize (*see*

26   Dkt. 31-1 at 11-12) the anti-SLAPP statute does not protect illegal conduct.  Extortion is

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 22

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone* (206) 624-0900

1  recognized as such illegal conduct in the very authority on which Defendants rely.  *See Flatley v.*

2  *Mauro*, 39 Cal. 4th 299, 326, 333, 46 Cal. Rptr. 3d 606 (Cal. 2006).  As explained in *Flatley*,

3  extortion involves "the obtaining of property from another, with his consent … induced by a

4  wrongful use of force or fear" that may be induced by a threat to "accuse the individual

5  threatened … of any crime" or to "expose or impute to him … any deformity, disgrace or crime."

6  39 Cal. 4th at 326.  That is precisely what Defendants have attempted to do here.  *See* Dkt. 1 ¶¶

7  29, 31; Sandoval Decl. ¶ 15.

8       The evidence filed in support of Plaintiffs' libel claim substantially <u>exceeds</u> the "minimal

9  merit" necessary to defeat Defendants' anti-SLAPP motion, and it demonstrates the illegality of

10  Defendants' conduct.  For these independent reasons, Defendants' motion should be denied.

11                    **IV.    CONCLUSION**

12       Facing extortionist and retaliatory threats from a former subsidiary's disgruntled former

13  employee in the form of libelous online statements that tarnish the ATIGEO trademark and their

14  business and personal reputations, Plaintiffs made the difficult choice to bring suit against

15  Defendants to vindicate their rights.  The factual allegations in the Complaint, when taken as

16  true, more than adequately state a claim for cybersquatting under the ACPA.

17       Plaintiffs likewise have demonstrated sufficient probability of success of their libel claim

18  and the illegality of Defendants' actions, while Defendants have failed to establish that the

19  statements at issue concern public issues or issues of public importance under California's anti-

20  SLAPP statute.  Accordingly, this Court should deny both Defendants' motion to dismiss and

21  Defendants' motion to strike, and allow Plaintiffs to prosecute their claims on the merits.

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 23

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

1    DATED:  November 18, 2013.

2                                          STOEL RIVES LLP

3                                          s/ Hunter Ferguson

4                                          Brian C. Park, WSBA No.
                                           Maren R. Norton, WSBA No.
5                                          Hunter Ferguson, WSBA No.
6                                          600 University Street, Suite 3600
                                           Seattle, WA  98101
7                                          Telephone:  (206) 624-0900
                                           Facsimile:  (206) 386-7500
8                                          bcpark@stoel.com
                                           mrnorton@stoel.com
9                                          hoferguson@stoel.com

10                                         Attorneys for Atigeo LLC

11

12

13                                         BARON & BUDD, P.C.

14                                         s/ Roland K. Tellis

15                                         Roland K. Tellis, *Admitted Pro Hac Vice*
16                                         15910 Ventura Boulevard, Suite 1600
                                           Encino, CA  91436
17                                         Telephone:  (818) 839-2333
                                           Facsimile:  (818) 986-9698
18                                         rtellis@baronbudd.com

19                                         Attorney for Atigeo LLC and
20                                         Michael Sandoval

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 24

1

## CERTIFICATE OF SERVICE

2    I hereby certify that I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following participants:

3

4

Paul Edward Brain      pbrain@paulbrainlaw.com, jdavenport@paulbrainlaw.com

5

Shellie McGaughey      shellie@mcbdlaw.com, katie@mcbdlaw.com

6

7                           Stoel Rives LLP

8                           *s/Leslie Lomax*_____
                            *Leslie Lomax, Legal Secretary*
9                           *Dated at Seattle, WA on November 18, 2013*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AND SPECIAL MOTION TO STRIKE (No. 2:13-cv-01694 JLR) — 25

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone (206) 624-0900

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 13-1243-CAS (OPx) | Date | September 23, 2013 |
|----------|------------------------|------|--------------------|
| Title | Atigeo, LLC, et al. v. Offshore Limited D, et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE |
|------------------------|------------------------------------------|

| Monica Salcido | N/A |
|----------------|-----|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**       (IN CHAMBERS)

    The Court is in receipt of Defendants' Motion to Dismiss Plaintiffs' First Claim Pursuant to FRCP 12(b)(6), and Special Motion to Strike Plaintiffs' Second Claim Pursuant to CCP 425.16 (filed 09/19/13)[22]. On September 17, 2013, this case was transferred to the United States District Court for the Western District of Washington [20]. Therefore, defendants' motion [22] is moot and the hearing date of October 21, 2013 is vacated.

|  | 00 | : | 00 |
|--|----|----|----|
| Initials of Preparer | MS | | |

APPENDIX A