THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATIGEO LLC, a Washington limited liability company; and MICHAEL SANDOVAL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>OFFSHORE LIMITED D, a California business organization, form unknown; OFFSHORE LIMITED D, a California partnership; DENNIS MONTGOMERY, individually and as a partner of Offshore Limited D; ISTVAN BURGYAN, individually and as a partner of Offshore Limited D; DEMARATECH, LLC, a California limited liability company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:13-cv-01694 JLR<br><br>**DECLARATION OF MICHAEL SANDOVAL IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE** |

I, Michael Sandoval, declare and state:

1. I am the CEO and Chairman of Plaintiff Atigeo LLC ("Atigeo"), and an individual party in this action. I am competent to testify, and I have personal knowledge of all facts set forth herein.

2. Atigeo is a small, privately held technology company located in Bellevue, Washington that develops software to improve the applicability, knowledge and enjoyment of software applications. Atigeo currently has 43 full-time and part-time employees.

DECLARATION OF MICHAEL SANDOVAL
(No. 2:13-cv-01694 JLR) - 1

75014488.1 0009074-00012

3.      As the CEO of Atigeo, I am personally familiar with the company's business, clients, employees, and finances.

4.      False statements about Atigeo's business practices and Atigeo's and my past business relationship with Edra Blixseth appear on various websites. It is my understanding that these websites are controlled and operated by the Defendants in this case. Attached hereto as *Exhibit 1* are true and correct copies of screen shots of excerpts of these websites containing false allegations about Atigeo and me.

5.      Atigeo has never billed a client for "nonexistent development work," as Defendants represented on their websites.

6.      Additionally, Edra Blixseth did not place $7 million into Atigeo's account as "pre-divorce money," and I never agreed to "shelter" any money for Edra Blixseth, as Defendants represented on their websites.

7.      I have also never stolen or otherwise misappropriated any money or property belonging to Edra Blixseth, as Defendants represented on their websites. Indeed, neither I nor Atigeo "took" or otherwise misappropriated any money or anything of value from Edra Blixseth to purchase property on Lake Washington "without her knowledge and consent," and I never "admitted" to any purported "wrongdoing in March 2007 after being confronted with evidence by Edra Blixseth and her associates," as Defendants represented on their website. All transactions were conducted with Edra Blixseth's full knowledge and consent.

8.      Finally, neither I nor Atigeo "still owe the Blixseth estate $8 million," as Defendants represented on their website.

9.      I understand that in addition to publishing the above-described false statements on their various websites, the Defendants, through a pseudonym email account called "David Webb," also sent website links to above-referenced false statements to Atigeo's employees.

10.     On April 5, 2006, Dennis Montgomery was hired by a company called Opspring LLC ("Opspring") to develop and implement certain marketable software products. At that time,

DECLARATION OF MICHAEL SANDOVAL
(No. 2:13-cv-01694 JLR) - 2

75014488.1 0009074-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*

Edra Blixseth and Atigeo were investors in Opspring. Also at that time, Ms. Blixseth was married to Tim Blixseth, who was engaged in the development of a private ski resort community known as the Yellowstone Club. Prior to joining Opspring, Mr. Montgomery had been employed by a company known as eTreppid Technologies LLC ("eTreppid"). eTreppid filed an action in the United States District Court for the District of Nevada alleging that Mr. Montgomery had converted eTreppid property, interfered with and misappropriated eTreppid's business relationships, and misappropriated eTreppid's trade secrets.

11. In 2007, while the eTreppid litigation was pending, Edra Blixseth took over sole operations of Opspring and we severed our business relationship. Thereafter, Opspring's business failed and Edra Blixseth and Dennis Montgomery filed for bankruptcy. Tim and Edra Blixseth were also later divorced.

12. In 2007, in connection with the severance of my business relationship with Edra Blixseth, Atigeo and Ms. Blixseth entered into a Letter Agreement dated March 31, 2007 governing the disposition of certain investments, assets and obligations.

13. Atigeo and Ms. Blixseth's Bankruptcy Trustee have been involved in litigation over the validity and enforceability of Letter Agreement. Specifically, on December 7, 2009, Atigeo filed a complaint against Ms. Blixseth in the United States Bankruptcy Court for the District of Montana to obtain an order repudiating the Letter Agreement (the "Montana litigation") based on the failure of, among others, Ms. Blixseth and Opspring to perform their contract obligations under the Letter Agreement.

14. Based on statements made on the Defendants' websites concerning the Montana litigation, it is apparent that the Defendants are well aware of the pendency of the case the pleadings that have been filed therein. In that case, Atigeo alleged that both Opspring and Ms. Blixseth failed to perform certain material commitments set forth in the Letter Agreement and, as a result, the Letter Agreement has been repudiated. To that end, Ms. Blixseth signed a sworn declaration under oath confirming and detailing her and Opspring's many failures to perform

75014488.1 0009074-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

under the Letter Agreement and stipulated to entry of an order repudiating the Letter Agreement. Attached hereto as **Exhibit 2** is a true and correct copy Ms. Blixseth's affidavit that was filed in the Montana litigation.

15. In addition, Defendants created, and are maintaining, websites containing false statements about Atigeo and me because I refused to make monetary payment to Dennis Montgomery in 2012. That year, Mr. Montgomery approached me and demanded that Atigeo or I make a financial investment in a new business of his. Mr. Montgomery made threats toward Atigeo and me if I refused to make payment, including "If you're not with me, you're against me" and warnings that he had previously followed through on similar threats made against others and that Atigeo and I did not want to end up like others who, according to Mr. Montgomery, had "learned the hard way." Based on these statements, Mr. Montgomery made clear that he would do something to harm Atigeo's and my reputation and business ventures. Even so, I did not give in to his demands to pay him off with money.

16. In sum, there is no credible basis for Defendants' false representations concerning my and Atigeo's purported misappropriation of money from Ms. Blixseth or any purported debt owed to Ms. Blixseth. Defendants' statements about Atigeo and me are outright lies.

I declare under penalty of perjury of the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed this 18th day of November, at Bellevue, Washington.

_____
Michael Sandoval

DECLARATION OF MICHAEL SANDOVAL
(No. 2:13-cv-01694 JLR) - 4

75014488.1 0009074-00012

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following participants:

Paul Edward Brain    pbrain@paulbrainlaw.com, jdavenport@paulbrainlaw.com

Shellie McGaughey    shellie@mcbdlaw.com, katie@mcbdlaw.com

                                   Stoel Rives LLP

                                   *s/Leslie Lomax*
                                   *Leslie Lomax, Legal Secretary*
                                   *Dated at Seattle, WA on November 18, 2013*

DECLARATION OF MICHAEL SANDOVAL
(No. 2:13-cv-01694 JLR) - 5

75014488.1 0009074-00012

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone (206) 624-0900*





# The Untold Story Is About To Be Told: Yellowstone Club

14 Days, 21 Hours, 48 Minutes, 59 Seconds.

Home | Top Downloads | Players | Actions | Sightings | Jack | Bullet | Editorial | MSA | Conflicts | Edra's Journal | FTP | usLeaks | Billion $ Web | Contact Us

**MAJOR DOCUMENT DUMP: 11/30/13 15:00 PST**

*Latest News:* Marc S. Kirschner Resigns as Board Member of Spectrum Brands (stock: SPB) After Allegations Surface Of His Role In Document Theft Ring... Credit-Cushman Effect

## 2013.05.08 -- ATIGEO AND MICHAEL SANDOVAL

Bellevue, WA - Michael Sandoval of Atigeo is listed as a debtor owing $10 million in bankruptcy documents filed in Denver, Colorado. Michael Sandoval is attempting to "shelter the property" from the bankruptcy court by selling the property now. Michael Sandoval, with the help of his controller, took the money to purchase the property on Lake Washington in 2006 without the knowledge or consent of Edra Blixseth. Michael Sandoval admitted to the wrongdoing in March 2007 after being confronted with the evidence by Edra Blixseth and her associates.

**Sandoval Decl. Ex. 1, 3 of 4**

# The Untold Story

- Home
- Billion $ Web
- Edra's Journal
- FTP
- News
- Players
- Sightings
- usLeaks
- Contact Us

**Breaking News:** *Yellowstone Club Continues To Use California Pension Fund in YELLOWSTONEGATE Coverup...*

**01/25/13**  Minor leaguer Michael Sandoval and family including their kids manny, were spotted at a lavish dinner at a Bellevue restaurant, El Gaucho.  As usual, dinner was paid for by Michael Sandoval using OPM (other peoples money).  Sources confirm Atigeo has raised approximately $45mil since 2006.  To date, Atigeo has produced very little in the way of products or results, and surely no ROI for the investors. Sources have confirmed Michael, Heather, and Atigeo still owe the Blixseth's estate $8mil, for the (3) lots on Lake Washington, purchased with Blixseth money without their consent or knowledge.  Litigation on this matter continues...

Sandoval Decl. Ex. 1, 4 of 4

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| In re:<br><br>EDRA D. BLIXSETH,<br>　　　　　　　　　Debtor. | Case No. 09-60452<br>Chapter 7 |
| ATIGEO LLC (f/k/a AZIMYTH LLC) and xPatterns LLC,<br>　　　　　　　　　Plaintiffs,<br>　　v.<br><br>RICHARD J. SAMSON, as Chapter 7 Trustee to the Estate of Edra Blixseth; DEBTOR EDRA BLIXSETH; OPSPRING LLC; BLXWARE, LLC; JULIE BARVE; MATTHEW CROCKER; and ERIK BERGSAGEL,<br>　　　　　　　　　Defendants. | Adv. Pro. No. 09-00105<br>(The Honorable Ralph B. Kirscher) |
| WESTERN CAPITAL PARTNERS LLC, a Colorado limited liability company,<br>　　　　　　　Third Party Plaintiff,<br>　　v.<br><br>MICHAEL SANDOVAL AND xPATTERNS LLC<br>　　　　　　　Third Party Defendants. | |

Sandoval Decl. Ex. 2, 1 of 5

# AFFIDAVIT OF EDRA D. BLIXSETH

I, Edra D. Blixseth, declare and state:

1. I am the Bankruptcy Debtor in this action. I am competent to testify, and I have personal knowledge of all facts set forth herein.

2. Prior to March 31, 2007, I invested $10 million in xPatterns and $8 million in a company called Opspring LLC ("Opspring"). As part of my investment in xPatterns, I became one of two directors for xPatterns. Michael Sandoval was the CEO of xPatterns and the other director for xPatterns.

3. Prior to March 31, 2007, Opspring had hired Dennis Montgomery to develop and implement certain marketable software products. Prior to joining Opspring, Mr. Montgomery had been employed by a company known as eTreppid Technologies LLC ("eTreppid").

4. Prior to March 31, 2007, eTreppid had filed an action in the United States District Court for the District of Nevada asserting claims against Opspring and others, alleging that Mr. Montgomery had converted eTreppid property, interfered with and misappropriated eTreppid's business relationships, and misappropriated eTreppid's trade secrets (the "Nevada Litigation").

5. In early 2007, the decision was made to sever my business relationship with xPatterns, Atigeo, and Mr. Sandoval, to address my investment in xPatterns, to take sole ownership of Opspring, and to settle and transfer certain assets and liabilities between the parties.

6. A letter agreement dated March 31, 2007, attached hereto as Exhibit A (the "Letter Agreement"), was prepared and executed. It was intended to memorialize the rights and responsibilities associated with the separation of the companies and the transfer of the assets and liabilities between the parties. The intent of the parties was to enter into an accord and satisfaction pursuant to the terms of the Letter Agreement.

Sandoval Decl. Ex. 2, 2 of 5

7. The parties to the Letter Agreement executed it on or about March 31, 2007. The material rights and obligations of the parties to the Letter Agreement include the following:

    a. My $10 million investment in xPatterns was converted into a $10 million installment loan. Sandoval guaranteed the first $5 million portion of the "xPatterns obligations";

    b. Mr. Sandoval agreed to grant a security interest in Kirkland property owned by him and his wife to xPatterns. xPatterns agreed not to release that interest until certain conditions were satisfied;

    c. I and certain of my family members, Julie Barve, Matthew Crocker, Beau Blixseth and Morgan Blixseth (collectively the "Blixseth Family"), would assume full ownership of Opspring;

    d. I, on behalf of the Blixseth Family, would cause Opspring to pay AziMyth a quarterly performance fee equal to 5 percent of the annual revenue generated by Opspring, and its affiliates, successors and assigns, up to a maximum performance fee of $15 million. The first $5 million of such performance fee was to be used to reduce the Note owed by xPatterns;

    e. Opspring agreed to indemnify and hold harmless Atigeo, xPatterns, and Mr. Sandoval from any and all claims, liabilities and damages arising out of or related in any way to the Nevada Litigation or Opspring's relationship with Mr. Montgomery or the Montgomery Family Trust;

    f. The parties agreed to: (1) not disclose any terms of the Letter Agreement without prior written consent; (2) keep confidential, and to not disclose or use, trade

3

secret and confidential information with respect to the other party; (3) not to disparage the other party in any way;

      g.    Opspring agreed to return all property belonging to Atigeo and xPatterns including business records and technical media; and

      h.    The parties exchanged release and discharge commitments.

8.    On November 20, 2009, Beau Blixseth and Morgan Blixseth released all claims and interest in the Letter Agreement.

9.    It is my understanding that no party to the Letter Agreement would have executed it without the exchange of promises and obligations set forth in such Letter Agreement.

10.    My loan to xPatterns was to be repaid by xPatterns in installment payments. xPatterns satisfied the first $2 million owed under the terms of the Letter Agreement and the promissory note through agreed upon set-offs and a payment of $382,568 on March 10, 2008.

11.    Opspring (and its successors in interest, including Blxware LLC), the Blixseth Family, and I did not perform certain commitments set forth in the Letter Agreement, as follows:

      a.    After March 31, 2007, Opspring, and its affiliates, successors and assigns, earned revenue from business operations, including via a government contract. xPatterns was not paid any performance fees owed under the Letter Agreement;

      b.    On or about January 2008, Opspring received a request to defend and indemnify Atigeo, xPatterns and Mr. Sandoval in connection with the claims asserted against them in the Nevada Litigation. Opspring did not defend and indemnify Atigeo, xPatterns, and Mr. Sandoval in connection with the claims asserted against them in the Nevada Litigation; and

4

c.  The Letter Agreement was filed and disclosed on the public Court docket of the Superior Court for the State of Washington for King County.

I declare under penalty of perjury of the laws of the State of Montana and the United States that the foregoing is true and correct.

Executed this 19 day of July, 2011, at Beverly Hills, CA.

_____
Edra D. Blixseth

STATE OF CALIFORNIA )
                     :ss
County of Los Angeles )

SUBSCRIBED AND SWORN TO before me this 19 day of July, 2011, by Edra D. Blixseth.

_____
Printed Name: AFSHIN KHODDAM
Notary Public for the State of California
Residing at: Beverly Hills
My commission expires: 4/21/12

[SEAL]

AFSHIN KHODDAM
Commission # 1795068
Notary Public - California
Los Angeles County
My Comm. Expires Apr 21, 2012

5