1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   ATIGEO LLC, et al.,

11              Plaintiffs,

12       v.

13   OFFSHORE LIMITED, D et al.,

14              Defendants.

CASE NO. C13-1694JLR

ORDER DENYING MOTION TO
DISMISS AND MOTION TO
STRIKE

15              **I.   INTRODUCTION**

16       This matter comes before the court on Defendants' motion to dismiss under

17   Federal Rule of Civil Procedure 12(b)(6) and special motion to strike under California's

18   anti-SLAPP statute (where "SLAPP" stands for "strategic lawsuits against public

19   participation").  (*See* Mot. (Dkt. # 31-1); Joinder (Dkt.  # 32).)  Plaintiffs Atigeo, LLC

20   ("Atigeo") and Michael Sandoval bring claims against Defendants under 15 U.S.C.

21   § 1125(d) for cybersquatting and under California law for libel.  (*See generally* Compl.

22   (Dkt. # 1).)  Having considered the submissions of the parties, the balance of the record,

ORDER- 1

1    and the relevant law, and deeming itself fully advised,[1] the court DENIES Defendants'

2    motions.

3                              **II.   FACTS**

4         Plaintiffs' complaint makes the following allegations.  Atigeo is a software

5    company that markets products and services in fields such as healthcare and social media.

6    (Compl. ¶ 14.)  Atigeo is the sole owner of the trademark "ATIGEO."  (*Id.* ¶ 15.)  This

7    mark, U.S. Trademark Reg. No. 3,908,344, was issued in January, 2011, for identifying,

8    among other things, pattern-recognition software and internet search engine advertising.

9    (*Id.*)  Atigeo also owns the domain name "atigeo.com," which Atigeo uses to advertise its

10   products under the Atigeo trademark.  (*Id.* ¶ 16.)  Mr. Sandoval is the CEO and Chairman

11   of Atigeo.  (*See* Sandoval Dec. (Dkt. # 35) ¶ 1.)

12        Defendant Dennis Montgomery is a former employee of one of Atigeo's former

13   subsidiaries, Opspring LLC ("Opspring").  (*Id.* ¶ 32.)  Mr. Montgomery and his son-in-

14   law Defendant Istvan Burgyan own and control Defendant companies Offshore Limited

15   D ("Offshore") and Demaratech LLC.  (Compl. ¶¶ 5, 6, 9.)

16        In 2012, Mr. Montgomery approached Mr. Sandoval to request that Mr. Sandoval

17   and/or Atigeo invest in Mr. Montgomery's "new business venture."  (*Id.* ¶ 29.)  Mr.

18   Sandoval declined to provide investment capital to Mr. Montgomery.  (*Id*)  As a result,

19   Mr. Montgomery threatened, "if you're not with me, you're against me" and left Mr.

20   _____

21   [1]The court denies Plaintiffs' request for oral argument because the issues have been adequately
     briefed by both parties.  Oral argument is not necessary where the non-moving party would suffer no
22   prejudice.  *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984).  Here, Plaintiffs will not be
     prejudiced because the court denies Defendants' motion to dismiss and motion to strike.

1  Sandoval with the warning that others who had crossed him had "learned the hard way."

2  (*Id.*)

3       After this encounter, Defendants registered the domain name "atigeo.co," and

4  began operating websites under this and other domain names.  (*Id.* ¶¶ 21, 31, 32.)  On

5  each of these websites, Defendants posted the following statements:

6      (a) Atigeo billed a client for "nonexistent development work."

7      (b) "Edra Blixseth placed $7 mil into [Atigeo] accounts as 'pre-divorce'
               money.  Michael Sandoval agree[d] to escrow and 'shelter' the money for
8          Edra Blixseth."

9      (c) Michael Sandoval took all of Edra Blixseth's "sheltered" money.

10     (d) Plaintiffs own three lots on Lake Washington "purchased with Blixseth
               money without their consent or knowledge."

11

12     (e) "Michael Sandoval, with the help of his controller, took the [Blixseth]
               money to purchase the property on Lake Washington in 2006 without the
13         knowledge or consent of Edra Blixseth.  Michael Sandoval admitted to the
               wrongdoing in March 2007 after being confronted with the evidence by
14         Edra Blixseth and her associates."

15     (f) Plaintiffs "still owe the Blixseth estate $8 [million]."

16 (*Id.* ¶ 22.)

17      Plaintiffs allege that these statements are false, and that Defendants registered the

18 "atigeo.co" domain name and posted these statements in retaliation for Mr. Sandoval's

19 refusal to invest in Mr. Montgomery's business venture.  (*Id.* ¶¶ 23, 31.)  Plaintiffs also

20 allege that Defendants' misuse of the "atigeo.co" domain name confuses Atigeo's

21 customers and business partners searching for Atigeo's website, tarnishes the goodwill

22 associated with Atigeo's trademark, and harms Atigeo's business. (*Id.* ¶¶ 38-42, 49-50.)

1    Mr. Sandoval's testimony, which is relevant to Defendants' motion to strike,

2  provides additional backstory.  Mr. Montgomery was hired by Opspring in April, 2006.

3  (Sandoval Dec. ¶ 10.)  At that time Atigeo and Edra Blixseth were both investors in

4  Opspring.  (*Id.* ¶ 10.)  In 2007, Atigeo and Ms. Blixseth ended their business relationship

5  and Ms. Blixseth assumed sole operation of Opspring.  (*Id.* ¶ 11.)  Opspring's business

6  later failed.  (*Id.*)  In the aftermath of the failure, Ms. Blixseth and Mr. Montgomery filed

7  for bankruptcy.  (*Id.*)  At some point, Ms. Blixseth and her husband, Timothy Blixseth,

8  filed for divorce.  (*Id.*)  Mr. Sandoval further testifies that Mr. Montgomery threatened

9  him with retaliation if he did not invest with Mr. Montgomery and that each of

10  Defendants' statements about him and Atigeo identified in the complaint are false.

11  (*Id.* ¶¶ 7, 8, 15, 16.)

12    Mr. Montgomery, for his part, testifies that he "created the subject websites to

13  alert the public as to the fraudulent and misleading business practices of Michael

14  Sandoval and his company, Atigeo" and that it was his "hope to prevent further

15  individuals from being victimized or injured from these deceptive business practices."[2]

16  (Montgomery Dec. (Dkt. # 37) ¶ 9.)

17    Plaintiffs originally filed this action in the United States District Court in the

18  Central District of California on July 15, 2013.  (*See generally* Compl.)  The parties later

19  stipulated to transfer the case to this court "for the convenience of parties and witnesses"

20  as prescribed in 28 U.S.C § 1404(a),(b).  (Stip. Transfer (Dkt. # 19.)  The case was

21  _____

22  [2] The remainder of Mr. Montgomery's declaration is stricken for the reasons discussed *infra* in Section III(B)(3).

ORDER- 4

1  transferred to the Western District of Washington on September 17, 2013.  (Transfer

2  Order (Dkt. # 20).)

3                          **III.   ANALYSIS**

4        Defendants now bring (1) a motion to dismiss Plaintiffs' anti-cybersquatting claim

5  for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and (2) a

6  special motion to strike Plaintiffs' libel claim under California's anti-SLAPP statute.

7  Each motion is discussed in turn below.

8  **A.   Motion to Dismiss**

9      **1. Timeliness**

10       To begin, Plaintiffs argue that Defendants' motion is untimely because Defendants

11  have not yet filed an answer and this motion was filed after the deadline for responsive

12  pleadings had past.  (Resp. (Dkt. # 34) at 1); *see generally* Fed. R. Civ. P. 12.

13  Apparently, after Defendants missed the parties' stipulated deadline for responsive

14  pleadings, Plaintiffs agreed not to file for default as long as Defendants filed an answer

15  by September 18, 2013.  (*See* Stip. Extend (Dkt. # 18); Jones Dec. (Dkt. # 31-2) at ¶¶ 2-6,

16  Ex. A, B, C.)  Defendants attempted to file a motion to dismiss in the Central District of

17  California on September 19, 2013, but that court struck the motion as moot in light of the

18  pending transfer. (*See* Re-Filing (Dkt. # 31) at 2; Resp. at 32.)  Defendants re-filed the

19  same motion in this court on October 30, 2013.  (*See* Re-Filing; Mot.)

20       Plaintiffs maintain that Defendants' motion to dismiss is untimely because the

21  parties' out-of-court agreement only extended the time to file an answer, not the time to

22  file a motion to dismiss.  (Resp. at 12, 18.)  However, the Ninth Circuit "allows a motion

1   under Rule 12(b) any time before the responsive pleading is filed"—not just within the

2   21-day window for responsive pleadings.  *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,

3   855 F.2d 1470, 1474 (9th Cir. 1988); *see also Bechtel v. Liberty Nat. Bank*, 534 F.2d

4   1335, 1341 (9th Cir. 1976) ("[I]f an extension of time has been allowed for filing a

5   responsive pleading, logic and reason would appear to dictate that the extension should

6   apply to a motion as well.").  Accordingly, as long as a party is not in default, courts have

7   considered late motions to dismiss even when no responsive pleading has been filed and

8   no extension for filing granted by the court.  *See, e.g.*, *Buzayan v. City of Davis*, 2:06-

9   CV-1576-MCE-DAD, 2009 WL 514201 (E.D. Cal. Feb. 26, 2009); *Smith v. Wrigley*,

10  1:06-CV-0886-AWI-WMW-HC, 2008 WL 2225627, at *1 (E.D. Cal. May 28, 2008)

11  ("Although the court's deadline for filing a timely answer had passed by November 19,

12  2007, no default had been entered against Respondent.  Under these circumstances, the

13  court cannot find an adequate basis to strike Respondent's motion to dismiss.")

14       Here, Plaintiffs did not move for default when Defendants failed to timely file an

15  answer.  And default will not lie now that defendants have otherwise indicated an intent

16  to defend the action.  *See Reiffin v. Microsoft Corp.*, 158 F. Supp. 2d 1016, 1031-32

17  (N.D. Cal. 2001); Fed. R. Civ. P. 55.  Because Defendants' motion precedes its

18  responsive pleading as required by Rule 12 and *Aetna Life*, the court will consider the

19  motion.

20       **2.  Motion to Dismiss Standard**

21       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

22  sufficiency of a claim.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir.

2011).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal for failure to state a claim "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force*, 646 F.3d at 1242.

In considering a motion to dismiss, a court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  A court, however, need not accept as true a legal conclusion presented as a factual allegation. *Iqbal*, 556 U.S. at 678.  A court may consider only the pleadings, documents attached to or incorporated by reference in the pleadings, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### 3.  Anti-Cybersquatting Consumer Protection Act

The Anti–Cybersquatting Consumer Protection Act ("ACPA") establishes civil liability for "cyberpiracy" where a plaintiff proves that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) (quoting 15 U.S.C. § 1125(d)(1)(A)).

1      Here, Defendants challenge only the third element:  bad faith intent to profit from

2 the mark.  (*See* Mot. at 6-9.)   The ACPA enumerates nine factors that a court "may"

3 consider when determining whether a person has a bad faith intent to profit.  15 U.S.C. §

4 1125(d)(1)(B)(i).  These factors, however, are not exclusive; instead, "the most important

5 grounds for finding bad faith are the unique circumstances of the case, which do not fit

6 neatly into the specific factors enumerated by Congress." *Interstellar Starship Servs., Ltd.*

7 *v. Epix, Inc.*, 304 F.3d 936, 946-47 (9th Cir. 2002) (citations omitted).

8     **4.  Application to Atigeo's Complaint**

9      Accepting, for the purposes of this motion, all allegations in Plaintiffs' complaint

10 as true, the court finds that Plaintiffs have sufficiently alleged a claim under the ACPA.

11 To begin, Plaintiffs have pleaded facts establishing almost all of the nine factors that

12 courts may consider in determining bad faith.  The first factor is "the trademark or other

13 intellectual property rights of the person, if any, in the domain name."  15 U.S.C. §

14 1125(d)(1)(B)(i)(I).  As to this factor, Plaintiffs allege that "Defendants have no

15 trademark or other intellectual property rights in the <atigeo.co> domain name."  (Compl.

16 ¶ 33.)

17      The second factor is "the extent to which the domain name consists of the legal

18 name of the person or a name that is otherwise commonly used to identify that person."

19 15 U.S.C. § 1125(d)(1)(B)(i)(II).  As to this factor, it is clear that the domain name at

20 issue does not consist of the legal names of any of the Defendants.  (*See generally*

21 Compl.)

22

1    The third factor courts is "the person's prior use, if any, of the domain name in

2    connection with the bona fide offering of any goods or services."  15 U.S.C.

3    § 1125(d)(1)(B)(i)(III).  Here, Defendants have not engaged in prior use of the domain

4    name in connection with the bona fide offering of any goods or services:  Plaintiffs allege

5    that Defendants began using the atigeo.co website in June, 2013, "in response to Plaintiff

6    Sandoval's refusal to comply with Defendant Montgomery's extortion scheme."  (Compl.

7    ¶ 31.)

8        The fourth factor is "the person's bona fide noncommercial or fair use of the mark

9    in a site accessible under the domain name."  15 U.S.C. § 1125(d)(1)(B)(i)(IV).  The

10   court cannot, at this stage, credit Defendants' assertion that atigeo.co is an "investigative

11   news site" entitled to fair use of the trademark over Plaintiffs' well-pleaded allegations to

12   the contrary.  *See Wyler Summit*, 135 F.3d at 661 ("On a motion to dismiss, all well-

13   pleaded allegations of material fact are taken as true and construed in a light most

14   favorable to the non-moving party."); (*see also* Compl. ¶ 31).  Defendants also attempt to

15   supplement the pleadings with a declaration by Mr. Montgomery averring that the

16   purpose of the statements is to warn the public rather than tarnish Atigeo's trademark.

17   (*See* Reply at 4; Montgomery Dec. ¶ 9.)  This attempt is not well-taken:  on a motion to

18   dismiss, a court may consider only the pleadings and matters of judicial notice.  *See*

19   *Ritchie*, 342 F.3d at 908; *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925

20   (9th Cir. 2001) ("[E]xtraneous evidence should not be considered in ruling on a motion to

21   dismiss.")

22       The fifth factor is:

> the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site[.]

15 U.S.C. § 1125(d)(1)(B)(i)(V). As to this factor, Plaintiffs allege that "Defendants' use of the domain name <atigeo.co> to direct Internet users to an Internet website containing false and defamatory statements concerning Atigeo exploits the goodwill built up by Atigeo in the ATIGEO trademark in order to injury Atigeo." (Compl. ¶ 35.)

The sixth factor is:

> the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct[.]

15 U.S.C. § 1125(d)(1)(B)(i)(VI). Contrary to Defendants' assertion, the fact that Plaintiffs do not allege that Defendants offered to sell the domain name to them does not doom Plaintiffs' claim. *See Interstellar Starship*, 304 F.3d at 946-47 (stating that the factors are not exhaustive).

The seventh factor is:

> the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct[.]

15 U.S.C. § 1125(d)(1)(B)(i)(VII). As to this factor, Plaintiffs allege that "Defendants have provided false and misleading contact information as part of the

ORDER- 10

1  WHOIS information for the <atigeo.co> domain name by listing the fictitious alias

2  'Clark Kent.'" (Compl. ¶ 53.)

3       The eighth factor is:

4       the person's registration or acquisition of multiple domain names which the
        person knows are identical or confusingly similar to marks of others that
5       are distinctive at the time of registration of such domain names, or dilutive
        of famous marks of others that are famous at the time of registration of such
6       domain names, without regard to the goods or services of the parties[.]

7  15 U.S.C. § 1125(d)(1)(B)(i)(VIII).  As to this factor, Plaintiffs allege that "Defendants

8  have a pattern of registering domain names containing the names or entities who have

9  refused [Mr.] Montgomery's demands, then using those domain names to host websites

10 that falsely disparage and discredit those entities" and that "Defendants have a pattern of

11 registering domain names containing third party marks in order to publish false,

12 misleading, and defamatory statements . . . ."  (Compl. ¶¶ 30, 52.)

13      The ninth factor is "the extent to which the mark incorporated in the person's

14 domain name registration is or is not distinctive and famous."  15 U.S.C.

15 § 1125(d)(1)(B)(i)(IX).  Plaintiffs allege that the Atigeo mark is distinctive and fanciful,

16 and Defendants do not dispute this characterization.  (*Id.* ¶¶ 16, 36, 46; *see generally*

17 Mot.)

18      Turning aside from these nine factors, Defendants' primary argument is that

19 Plaintiffs cannot show a bad faith intent to profit absent evidence that that Defendants

20 intended to profit either by (1) selling Plaintiffs the website or (2) diverting consumers

21 from plaintiff's website in order to derive commercial gain from those consumers.  (Mot.

22 at 7; Reply (Dkt. # 36) at 3-4.)  Defendants misstate the law.  The element of bad faith

1    intent to profit is not limited to these two scenarios. *See DSPT Int'l*, 624 F.3d at 1219

2    ("[T]he statute, like so many, is written more broadly than what may have been the

3    political catalyst that got it passed. . . . [W]e conclude that the words of the statute are

4    broader than this political stimulus that led to its enactment.")  To the contrary, the Ninth

5    Circuit has specifically held:  "As for whether use to get leverage in a business dispute

6    can establish a violation, the statutory factors for 'bad faith intent' establish that it can."

7    *Id.*  Accordingly, the court in *DSPT International* found that a defendant had a "bad faith

8    intent to profit" when he used a domain name as leverage against the plaintiff, his former

9    employer, to force payment of commissions allegedly withheld by the employer.  *Id.*

10            This case is analogous to *DSPT International* in that Defendants are allegedly

11   using the atigeo.co website in order to obtain business leverage over Plaintiffs.  (*See*

12   Compl. 23, 29, 31, 38-42.)  Specifically, Plaintiffs allege that (1) Defendants threatened

13   Plaintiffs with retaliation, (2) Defendants created a website containing false and

14   defamatory statements about Atigeo, (3) Defendants used certain meta-tags to lure

15   members of the public searching for the legitimate Atigeo website to atigeo.co, (4)

16   Plaintiffs' customers and business associates are confused and deceived by Defendants'

17   website operated under the atigeo.co domain name, (6) Defendants' false statements

18   diminish the goodwill associated with the Atigeo trademark and therefore damage

19   Atigeo's business and reputation, and (7) Defendants' intent in taking these actions is to

20   extort money and other consideration from Atigeo.  (Compl. ¶¶ 35, 37, 38, 39-41, 48, 49,

21   50.)

22

ORDER- 12

1    These allegations match the plain wording of factor five, which considers a

2    defendant's intent to divert consumers from the mark owner's website to a site that harms

3    the mark's goodwill, either for commercial gain or with the intent to tarnish or disparage

4    the mark.  *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V).  Even if they did not, under *DSPT*

5    *International*, the unique circumstances of this case—Defendants' alleged intent to gain

6    business leverage over Plaintiffs—establish a bad faith intent to profit on the part of

7    Defendants.

8        In sum, not only have Plaintiffs alleged facts addressing almost all of the nine

9    factors that a court may consider when determining bad faith intent, but the unique

10   circumstances of the case indicate that Plaintiffs' situation is covered by the ACPA.  As

11   such, the court denies Defendants' motion to dismiss.

12   **B.    Anti-SLAPP Motion**

13       After a change of venue under 28 U.S.C. § 1404(a), a transferee court applies the

14   state law of the transferor court.  *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see*

15   *also Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568,

16   582 (2013).  Therefore, California state libel law and California's anti-SLAPP statute[3]

17   apply to Plaintiffs' libel claim.

18

19   _____

20   [3] The Ninth Circuit has held that California's anti-SLAPP statute applies to California state law
     claims in federal court.  *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963,
     973 (9th Cir. 1999).  Although *Newsham*'s holding has recently been called into question, it has not been
21   overruled.  *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 273-76 (9th Cir. 2013) (two concurrences
     stating that anti-SLAPP statutes should be considered procedural and therefore inapplicable in federal
22   courts).  Accordingly, following *Newsham*, the court will apply California's anti-SLAPP statute.

**1. Timeliness**

First, Plaintiffs argue that Defendants' motion to strike is untimely.  (Resp. at 18.)  Under California law, a special motion to strike "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper."[4]  CCP § 425.16(f).  Because Defendants were served on July 27 and August 6, 2013, Defendants' motion, filed in this court on October 30, 2013, falls outside this 60-day window.  (Service 1 (Dkt. # 15); Service 2 (Dkt. # 16).)

Courts, however, "enjoy considerable discretion" to review late anti-SLAPP motions.  *Platypus Wear, Inc. v. Goldberg*, 166 Cal. App. 4th 772, 787 (Cal. Ct. App. 2008).  The pertinent considerations are whether accepting a late filing advances the anti-SLAPP statute's purpose of addressing improper lawsuits in the early stages of the proceedings and the extent to which plaintiffs are prejudiced.  *Id.* at 776.

Here, Plaintiffs allege no prejudice.  (*See generally* Mot.)  Moreover, this case is still in the early stages:  the progress of the case was temporarily stalled during a transfer of venue and the parties have only just begun the discovery process (if at all).  (*See* Reply at 7); *see also S. Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal. App. 4th 634, 656 (Cal. Ct. App. 2011) (upholding trial court's decision to restart the 60-day time limit after a transfer of venue).  Because consideration of Defendants' motion to strike will facilitate

---

[4] The parties do not address whether, under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938) and its progeny, California's time limit on filing anti-SLAPP motions is a substantive rule of law that should be applied to state law claims in federal court.  The court notes that other courts in the Ninth Circuit have applied this time limit.  *See Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 942 (9th Cir. 2013); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1100 (C.D. Cal. 2004).  Even if the state time limit was not applicable, the court would consider the motion to strike for the same reasons that it considered Defendants' motion to dismiss.  *See supra* Section III(A)(1).

the anti-SLAPP statute's primary purpose of promptly resolving lawsuits that may impinge on defendants' free speech, the court will consider the motion.

### 2. Standard

California's anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

CCP § 425.16(b).  The statute prescribes a two step inquiry.  *Equilon Enterprises v. Consumer Cause, Inc.*, 52 P.3d 685, 694 (Cal. 2002).

At prong one, the defendant bears the burden to show that the plaintiff's action arises from the defendant's constitutionally protected free speech activities in connection with a public issue.  *Id.*   The anti-SLAPP statute lists four categories of activity that meet this prong, two of which are implicated in this case:

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

> (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

CCP § 425.16(e).

If defendant makes a prima facie showing of protected activity, the burden at prong two shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claim.  *Equilon Enterprises*, 52 P.3d at 694.  To establish a probability of prevailing, a plaintiff "must demonstrate that the complaint is both legally sufficient and

1  supported by a sufficient prima facie showing of facts to sustain a favorable judgment if

2  the evidence submitted by the plaintiff is credited."  *Oasis W. Realty, LLC v. Goldman*,

3  250 P.3d 1115, 1120 (Cal. 2011) (citations omitted).  In evaluating prong two, a court

4  must consider "the pleadings, and supporting and opposing affidavits stating the facts

5  upon which the liability or defense is based."  *Id.* (quoting CCP § 425.16(b)(2)).

6      **3.  New Arguments and Evidence Raised in Reply Brief**

7          In their original motion to strike, Defendants did not address the second prong of

8  the anti-SLAPP inquiry.  (*See generally* Mot.)  Nonetheless, in their reply brief,

9  Defendants introduce two new theories as to why Plaintiffs' cannot meet their burden

10  under the second prong,[5] as well as a declaration by Mr. Montgomery stating facts

11  supporting these theories, and accompanying exhibits.  (*See* Reply at 10-14; Montgomery

12  Dec.)  It is clear that in the Ninth Circuit new issues and evidence may not be raised in

13  reply briefs.  *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for

14  the first time in the reply brief are waived.").  When new material is raised, courts have

15  discretion to strike that material.  *See, e.g, Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273

16  (9th Cir. 1993) (striking portions of a reply brief that presented new information);

17  *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 308 F. Supp. 2d 1208, 1214 (W.D.

18  Wash. 2003) (striking a declaration with new evidence submitted in reply).

19          Here, Defendants' introduction of new theories and evidence leaves Plaintiffs

20  without an adequate opportunity to respond.  Defendants provide no reason why they

21

22      [5] Specifically, Defendants argue that (1) the statements posted on atigeo.co and the other websites
are true, and (2) Mr. Montgomery reasonably believed these statements to be true.  (Reply at 10-14).)

ORDER- 16

1    could not have raised this material earlier, especially given that they re-filed their motion

2    significantly after the deadline for responsive pleading expired.  Accordingly, the court

3    strikes Mr. Montgomery's declaration (with the exception of paragraph nine)[6] and the

4    attached exhibits.  The court will not consider Defendants' arguments raised in reply

5    regarding prong two of the anti-SLAPP standard.

6        **4. Application to Atigeo's Claim**

7        Assuming without deciding that prong one is met, Defendants' anti-SLAPP

8    motion fails at prong two because Plaintiffs have shown a probability of success

9    on their libel claim.  Plaintiffs' burden to prove a probability of success "is similar

10   to the standard used in determining motions for nonsuit, directed verdict, or

11   summary judgment."  *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 26, 53 (Cal. Ct. App.

12   2007).  A court may "neither weigh the credibility, nor compare the weight of the

13   evidence; rather, the court must accept as true the evidence favorable to the

14   plaintiff and evaluate the defendant's evidence only to determine if it has defeated

15   that submitted by the plaintiff as a matter of law."  *Id.* (quoting *Soukup v. Law*

16   *Offices of Herbert Hafif*, 139 P.3d 30, 51 (Cal. 2006) (alterations and quotation

17   marks omitted).

18   ――――――――――――――

19       [6] The court does not strike paragraph nine of Mr. Montgomery's declaration to the extent that the
     facts averred therein support a topic raised in Defendants' opening motion and discussed in Plaintiffs'
20   response and Defendants' reply, namely:  Defendants' reason for posting the challenged statements.  (*See*
     Montgomery Dec. ¶ 9; Mot. at 7, Resp. at 23); *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1202 (9th
21   Cir. 2001) (district courts have discretion to consider issues raised in reply).  Because the court ultimately
     finds in favor of Plaintiffs, the court denies as unnecessary Plaintiffs' request for an opportunity to
     respond to Mr. Montgomery's declaration (Surreply (Dkt. # 39)).

22

Concerning libel, the California Civil Code provides:

Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

The elements of a libel claim are therefore (1) a written publication that is (2) false, (3) unprivileged, and (4) has a natural tendency to injure or which causes special damage. *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (Cal. Ct. App. 1999).

To begin, the court finds that Plaintiffs' cause of action as alleged is legally sufficient. *See Oasis*, 250 P.3d at 1120. Specifically, Plaintiffs' complaint alleges that Defendants have posted factual statements to websites stating that Plaintiffs have cheated and stolen large sums of money from Ms. Blixseth, that these statements are false, and that these statements harm Plaintiffs' business and reputation. (*See* Compl. ¶¶ 22, 23, 37). Therefore, Plaintiffs' have properly alleged all elements of a libel claim.

Next, the court finds that Plaintiffs' libel claim is supported by a sufficient prima facie showing of fact. *See Oasis*, 250 P.3d at 1120. Mr. Sandoval's declaration attaches screenshots of websites controlled by Defendants, including the websites hosted under domain names atigeo.co, the untoldstory.net, and yellowstoneclub.co. (*See* Sandoval Dec. Ex. 1.) These screenshots, which appear to have been last updated on August 16, 2013, corroborate the defamatory statements that Plaintiffs alleged in their complaint; these websites include statements, among others, that Mr. Sandoval "sheltered" $7 million of Ms. Blixseth's money and then used that money to purchase property on Lake Washington for his own benefit. (*Id.*)

ORDER- 18

1    Mr. Sandoval denies each statement found on those websites. (Sandoval Dec.

2    ¶¶ 7-8.) Specifically, he avers that he has "never stolen or otherwise misappropriated any

3    money or property belonging to Edra Blixseth," that neither he nor Atigeo ever "took or

4    otherwise misappropriated any money or anything of value from Edra Blixseth to

5    purchase property on Lake Washington without her knowledge and consent," that he

6    "never admitted to any purported wrongdoing in March 2007 after being confronted with

7    evidence by Edra Blixseth" and that neither he nor Atigeo "still owe the Blixseth estate

8    $8 million." (*Id.*) Mr. Sandoval's declaration establishes a prima facie case of libel.

9    Because the court has struck Mr. Montgomery's declaration, Defendants are left with

10   little affirmative evidence in their favor. Therefore, Plaintiffs have met their burden to

11   show a probability of prevailing on their libel claim.   The court denies Defendants'

12   motion to strike.

13    Even if the court considered Mr. Montgomery's declaration and the arguments that

14   Defendants' raise for the first time in reply, the court's disposition of this motion would

15   not change. Defendants first argue that the statements on their websites are true and that

16   truth is a complete defense to a claim for libel. (Reply at 10-14.) Mr. Montgomery's

17   declaration that the statements are true contradicts Mr. Sandoval's declaration that the

18   statements are false. (*Compare* Montgomery Dec. ¶ 9 *with* Sandoval Dec. ¶¶ 7-8.) But

19   when considering an anti-SLAPP motion, the court cannot weigh the credibility of

20   competing evidence and must accept as true the evidence favorable to the plaintiff.

21   *Oasis*, 250 P.3d at 1120. Therefore, even if Defendants' evidence were timely, it would

22

ORDER- 19

1  accomplish nothing more than raising a question of fact that the court cannot determine at

2  this stage.

3        Defendants also argue that Mr. Montgomery's good faith belief in the truth of the

4  statements is a defense.  (Reply at 10-14.)  This argument misstates the law.  The court is

5  unaware of any California authority stating that malice is an element of a libel claim by a

6  private party.  The cases Defendants cite as purportedly supporting their proposition are

7  inapposite.  *Cuenca v. Safeway San Francisco Employees Federal Credit Union* merely

8  states that a showing of malice can vitiate a qualified privilege established under

9  California Civil Code § 47 regarding privileged publications.  180 Cal. App. 3d 985, 996-

10  97 (Cal. Ct. App. 1986).  And *Masson v. New Yorker Magazine, Inc.* merely requires a

11  public official or public figure to show that a publisher of an allegedly defamatory

12  statement "in fact entertained serious doubts as to the truth of his publication."  960 F.2d

13  896, 899 (9th Cir. 1992).  There is no evidence that Mr. Sandoval and Atigeo, the parties

14  that Defendants' statements allegedly defame, are public officials or figures.  As such,

15  Defendants' second theory is meritless.

16        In conclusion, even if the court considered Defendants' untimely arguments and

17  evidence, the court would still deny Defendants' anti-SLAPP motion.

18  //

19  //

20  //

21  //

22  //

ORDER- 20

# IV.    CONCLUSION

For the foregoing reasons, the court DENIES Defendants' motion to dismiss and motion to strike (Dkt. # 31).

Dated this 22nd day of January, 2014.

JAMES L. ROBART
United States District Judge