THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATIGEO LLC, a Washington limited liability company, and MICHAEL SANDOVAL, an individual; and<br><br>　　　　　　　　　　Plaintiffs,<br><br>vs.<br><br>OFFSHORE LIMITED D, a California partnership; DENNIS MONTGOMERY, individually and as a partner of Offshore Limited D; ISTVAN BURGYAN, individually and as a partner of Offshore Limited D; DEMARATECH, LLC, a California limited liability company; and DOES 1-25, inclusive;<br><br>　　　　　　　　　　Defendants. | Civil Action No. 2:13-CV-1694-JLR<br><br>**PLAINTIFFS' MOTION FOR MUTUAL PROTECTIVE ORDER GOVERNING DISCOVERY**<br><br>NOTE ON MOTION CALENDAR:<br>March 28, 2014 |

Plaintiffs Atigeo LLC and Michael Sandoval, pursuant to Fed. R. Civ. P. 26(c)(7) and LCR 7(d)(2)(B) and 26(c), move for a protective order governing the discovery and use of confidential information in this action. The proposed protective order would allow the parties and third parties to protect confidential information produced in discovery in this litigation.

## I. INTRODUCTION

Plaintiffs disagree with Dennis Montgomery and Istvan Burgyan ("the Individual Defendants") about the appropriate type of protective order to govern discovery in this action.

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 1
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

Plaintiffs believe a typical two-tiered protective order is appropriate, but the Individual Defendants refuse to allow Attorneys' Eyes Only ("AEO") designations. The parties have met-and-conferred pursuant to Rule 26(c) in an effort to reach resolution or compromise. Even though an earlier version of the two-tiered protective order proposed by Plaintiffs has been consented to by counsel for the *corporate* defendants (Offshore Ltd D and Demaratech, LLC), the Individual Defendants still object.

Given the nature of this case, the parties involved, and the sensitive, proprietary nature of the information sought through discovery, the protective order Plaintiffs propose is appropriate. Not only is there precedent in this judicial district for that type of protective order, but there is also significant cause for concern given the pattern of one of the Individual Defendant's (Mr. Montgomery) of mishandling others' confidential information.

The proposed protective order will ensure that the discovery proceeds efficiently, without undue risk of prejudice to the parties that produce or own confidential information.. A protective order will also put the parties and the public on notice that, because of the public interest in court filings and court proceedings being open to the public, parties will need to make a clear showing as the litigation proceeds to justify protection of and access to materials used in the litigation. Plaintiffs' proposed protective order contains standard provisions for making and challenging confidentiality designations.

For the reasons set forth herein, Plaintiffs move this Court to enter the proposed protective order submitted with this motion.

## II. BACKGROUND

The basic facts surrounding this action are detailed in the Court's January 22, 2014 order denying Defendants' motion to dismiss and will not be repeated here, other than to highlight important context for this motion.

### A. The Genesis of the Action

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 2
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

Atigeo is a technology start-up whose business is built around innovative software solutions. The United States Patent and Trademark Office ("PTO") has recognized Atigeo's inventions by awarding multiple issued United States patents covering technology that improves the applicability, knowledge, and enjoyment of software applications. Atigeo currently has four issued United States patents, one issued foreign patent, numerous pending patent applications, and diverse technical and competitive research and development (R&D) that the company guards as trade secrets. In addition, Atigeo has highly confidential business, strategic, and private information that it protects diligently. *Declaration of Michael Sandoval* ¶ 4 (filed herewith).

The registered "ATIGEO" trademark is a coined mark and inherently distinctive, unique, and fanciful. *Complaint* (Dkt # 1) ¶¶ 15-17, 46. Atigeo invested considerable time and money in advertising its services under the ATIGEO trademark throughout the United States. *Id.* ¶¶ 14, 17, 18. Through these efforts, Atigeo is well known and well recognized under the ATIGEO trademark and has developed extensive goodwill associated with the mark, making it a valuable asset and source indicator for Atigeo. *Id.* ¶¶ 19, 20. Atigeo advertises its products and services using the ATIGEO trademark through its company website, www.atigeo.com. *Id.* ¶ 15.

In 2012, Montgomery approached Sandoval and demanded that Sandoval and/or Atigeo provide him with financial backing for a new business, making threatening statements such as "If you're not with me, you're against me," and warning Plaintiffs that he had followed through on similar threats made to others and that Plaintiffs did not want to end up like Montgomery's other targets who, according to Montgomery, "had learned the hard way." *Id.* ¶ 29. Despite these threats, Plaintiffs refused to yield to Montgomery's demand for financial support. *Id.* Thereafter, the website www.atigeo.co and other sites using third parties' marks containing libelous statements about Plaintiffs appeared on the Internet. *See id.* ¶¶ 29, 31.

The following statements about Plaintiffs have been made on www.atigeo.co and other linked sites, such as www.yellowstoneclub.net, www.yellowstoneclubs.com, www.gratonresortcasino.net, and www.theuntoldstory.net:

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 3
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

     (a)     That Atigeo billed a client for "nonexistent development work."

     (b)     That "Edra Blixseth place[d] $7mil into [Atigeo] accounts as 'pre-divorce' money" and that "Michael Sandoval agree[d] to escrow and 'shelter' the money for Edra Blixseth."

     (c)     That Michael Sandoval took all of Edra Blixseth's "sheltered" money.

     (d)     That Plaintiffs own three lots on Lake Washington, "purchased with Blixseth money without their consent or knowledge."

     (e)     That "Michael Sandoval, with the help of his controller, took the [Blixseth] money to purchase the property on Lake Washington in 2006 without the knowledge or consent of Edra Blixseth" and that "Michael Sandoval" admitted to the wrongdoing in March 2007 after being confronted with the evidence by Edra Blixseth and her associates."

     (f)     That Plaintiffs "still owe the Blixseth estate $8 [million]."

*Id.* ¶¶ 22, 63. All of these statements are false. *Id.* ¶ 23; *Declaration of Michael Sandoval in Opposition to Motion to Dismiss* (Dkt # 35) ¶¶ 4-9 and 15-16.

Through an investigation into these websites' domain name registrations, Plaintiffs determined that Defendants own and operate each of these websites. *Id.* ¶¶ 21, 53. In some instances, Defendants have used false information to register and maintain the domain names for these websites, including the alias "Clark Kent" (Superman's secret identity). *Id.* ¶ 53. To publicize and draw attention to these websites, Defendants have broadcast information about their sites to a wide variety of national and local media outlets and Plaintiffs' employees, prospective business partners, and litigation opponents, using email and Twitter accounts created with pseudonyms. *Id.* ¶¶ 24-28. They also have used the keyword "Atigeo" as a "meta-tag" (*id.* ¶ 40), which is a marker that Internet search engines use to direct users to the <atigeo.co> site. Defendants' websites indicate that, as of July 1, 2013, they have been viewed more than 7.5 million times, with nearly 130,000 views of www.atigeo.co individually. *Id.* ¶ 27. These websites also reflect Defendants' pattern of using third parties' marks to publish false, misleading, and defamatory claims about Plaintiffs and others. *Id.* ¶¶ 30, 52.

Defendants were aware of Atigeo's use of the ATIGEO mark when they registered and began using the <atigeo.co> domain name. *Id.* ¶ 32. Defendants have no intellectual property rights in the <atigeo.co> domain name and have never sought or received permission from Atigeo to use the ATIGEO mark. *Id.* ¶¶ 32, 33. The ATIGEO mark is not a part of the legal name of any

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 4
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

Defendant and is not commonly used to refer to any Defendant. *Id.* ¶ 33.

In the light of Plaintiffs' refusal to give in to Montgomery's demand for financial pay-offs, Defendants' publication of false statements on the <atigeo.co> site and linked sites and their efforts to attract viewers to these sites constitute retaliation against Plaintiffs and an attempt to extort payment from Plaintiffs. *Id.* ¶¶ 28, 30. Defendants' use of the ATIGEO mark in the <atigeo.co> domain name is likely to cause confusion among Atigeo's potential and existing customers and business partners. *Id.* ¶¶ 35, 37, 38. The website's content is harmful to Plaintiffs' reputations and the goodwill associated with the ATIGEO mark. *Id.* Further, Defendants' conduct prevents Atigeo from using its mark to direct interested persons to its website by using the commercial top-level domain ".co." *Id.* ¶ 36. Imposing these costs on Atigeo is part of Defendants' scheme to extract pay-offs from Plaintiffs. *Id.* ¶ 48.

**B.     Defendant Montgomery's Broad Requests for Information and Documents**

On March 4, 2014, Defendant Montgomery served comprehensive sets of interrogatories and requests for production on both Plaintiffs. *Declaration of Brian C. Park in Support of Motion for Protective Order* ¶ 2, Ex. 1 (RFPs to Atigeo) and 2 (RFPs to Sandoval). These discovery requests seek detailed information about virtually every aspect of Plaintiffs' business and personal financial interests, including matters that have little, if any, relevance to the subject matter of this dispute including without limitation: documents regarding Atigeo's and Mr. Sandoval's financials, investments, business plans, taxes, capital raising, competitive strategies, litigations, and bankers; communications with Atigeo's customers, investors, business partners, employees, officers, and directors; and documents identifying private information of Atigeo's owners, clients, partners, and employees. *Park Decl.*, Ex. 1 (at 9, 13-14, 16-17) and Ex. 2 (at 7, 9-12).

On January 28, 2014, Plaintiffs sent Defendants a proposed stipulated protective order. *Id.* ¶ 3, Ex. 3 (1/28/2014 e-mail). For two months, Plaintiffs attempted unsuccessfully to learn the Individual Defendants' position on the proposed protective order with no response from counsel for the Individual Defendants. After the Individual Defendants failed to respond to a number of

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 5
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

e-mails and missed a Rule 26(c) meet-and-confer discussion, the Individual Defendants, through counsel, finally engaged Plaintiffs in e-mail correspondence on March 6, 2014, explaining that the Individual Defendants did not consent to the protective order on the hypothetical basis that what might be discovered during discovery could justify the absence of *any* protective order. *Park Decl.* ¶ 4, Ex. 4 (SMC's 3/6/2014 e-mail). Plaintiffs objected to this circular reasoning. *Id.* ¶ 5, Ex. 5 (BCP's 3/10/2014 e-mail).

On March 11, 2014, the Individual Defendants served *subpoenas duces tecum* on Plaintiff Sandoval's personal real estate agent (Amy Dedoyard) and her firm (Windermere Real Estate), seeking disclosure of *all* files regarding *all* real estate transactions of Mr. Sandoval and his wife. *Park Decl.* ¶ 6, Ex. 6A and 6B (subpoenas). That same day, counsel for Plaintiffs and the Individual Defendants met-and-conferred under LCR 26(c) in an attempt to resolve the disagreement over the standard protective order terms proposed by Plaintiffs. (Subsequently, Defendants served another *subpoena* on a business strategy and marketing firm known as 206, Inc. that Plaintiffs have engaged. *Id.*, Ex. 6C.)

During the LCR 26(c) conference, the Individual Defendants refused any sort of AEO designation, despite Plaintiffs' concerns *inter alia* that sensitive information divulged during discovery would find its way onto the libelous web sites accused in this action. Despite attempts to compromise and even though a prior version of the proposed protective order with AEO protections had been consented to by counsel for the *corporate* defendants, Offshore Ltd D and Demaratech, LLC (prior to Offshore Ltd D's counsel's withdrawal), *Park Decl.* ¶ 7, Ex. 7 (P. Brain's e-mail), Plaintiffs and the Individual Defendants have reached an impasse. *Park Decl.* ¶ 8, Ex. 8 (3/17/2014 e-mail). This motion follows.

### C. Defendant Montgomery's History of Mishandling and Misusing Others' Confidential Information

Without belaboring the point, some background regarding the civil and criminal litigation history of Defendant Montgomery is relevant to the issue of how confidential information should be protected under an appropriate protective order.
MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 6
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

Defendant Montgomery was sued by his former employer for, *inter alia*, trade secret misappropriation and breach of fiduciary duty in the action styled, *eTreppid Technologies, LLC v. Montgomery*, Nos. 3:06-cv-00145-PMP-VPC and 3:06-cv-00056-PMP-VPC (D. Nev. 2006). That action was based on Montgomery's misappropriation and mishandling of confidential information and trade secrets. The case resulted in multiple judgments being entered against Montgomery. *Id.*, No. 3:06-cv-00056-PMP-VPC, at Dkt # 897 and 898.

In connection with that civil action, Defendant Montgomery was also the subject of a criminal investigation by the Federal Bureau of Investigation ("FBI"), also related to the mishandling of confidential information claims against Montgomery. *In re: Search Warrant of the Residence Located at 12720 Buckthorne Lane, Reno, Nevada, and Storage Units 136, 140, 141, 142, 143, Double R Storage, 888 Maestro Drive, Reno, Nevada*, No. 3:06-cv-00263-PMP-VPC (D. Nev. 2006). In the instant case, the Individual Defendants' counsel has revealed that Defendant Montgomery is the subject of *another* ongoing criminal investigation by "an unnamed government law enforcement agency." *Park Decl.* ¶ 8, Ex. 8 (¶ 3.G).

In a separate action related to the 2006 FBI investigation, Montgomery filed a lawsuit against various defendants including, *inter alia*, his former employer (eTreppid *Technologies*) and United States Congressman James Gibbons, accusing the defendants and others (including the United States Attorney for the U.S. District of Nevada) of fraud, conspiracy, corruption, and False Claims Act violations. In that lawsuit, Montgomery also sought to vindicate his right to use the defendants' confidential information. Dkt # 2 ¶¶ 1-5, 106-112. That case was dismissed and judgment was entered in favor of the defendants. *Id.*, Dkt # 28.[1]

---

[1] Media articles reporting on certain of these matters, including the mishandling of confidential information, are compiled in the Wikipedia article on Defendant Montgomery (http://en.wikipedia.org/wiki/Dennis_L._Montgomery). *Park Decl.* ¶ 9, Ex. 9.

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 7
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

## III. ARGUMENT

### A. There is Good Cause for a Protective Order.

The Court may issue an order protecting trade secrets and other confidential research, development, and commercial information ("confidential business information") upon a showing of "good cause." Fed. R. Civ. P. 26(c)(7). This protection can prevent disclosure or allow it only under certain terms designated by the Court. The Court may enter "any order which justice requires." *Id.* Good cause "generally signifies a sound basis or legitimate need to take judicial action." *Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004) (finding good cause to enter a protective order). Good cause may be established by showing "that specific prejudice or harm will result." *DeFreitas v. Tillinghast*, No. 2:12-cv-235-JLR, at *5 (W.D. Wash. Jan. 17, 2013) (granting motion for two-tiered AEO/Confidential protective order in employment discrimination case).

In determining whether there is good cause for a protective order, courts must balance the interests involved. *Id.*; *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013). A court should "weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Whether to issue a protective order lies within the sound discretion of the trial court, and "[t]he Court in which the action is pending has the authority to issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Cabell*, 294 F.R.D. at 607 (W.D. Wash. 2013) (granting motion for two-tiered AEO/Confidential protective order in trademark and copyright case).

   *1.   Plaintiffs Should Not Have to Choose Between Protecting Their Rights in Litigation and Suffering Improper Disclosure of Confidential Information.*

Documents disclosing confidential information about "finances, strategy, competitive market research, and confidential agreements" are appropriate for Attorneys' Eyes Only (AEO) protection. *DeFreitas*, No. 2:12-cv-235-JLR, at *13. Good cause exists for entering a two-tiered protective order with an AEO designation in order to "protect the party from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at *12. This Court has defined

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 8
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

AEO information to include highly sensitive financial information, customer information, pricing, profit margins, marketing strategies, design and development, and technical information. *Avocent Redmond Corp. v. Rose Electronics, Inc.*, 242 F.R.D. 574, 576 (W.D. Wash. 2007) (granting motion for two-tiered AEO/Confidential protective order).

The facts here establish the existence of confidential business information and the "good cause" necessary for a protective order. Among the documents and information the Individual Defendants seek are the internal strategic and marketing plans and business records of Plaintiff Atigeo, an innovative start-up company, whose business is built around technology that is protected by patents, patent applications, and trade secrets.

Specifically, the Individual Defendants have requested, *inter alia*: documents regarding Atigeo's and Mr. Sandoval's financials, investments, business plans, taxes, capital raising, competitive strategies, litigations, and bankers; documents regarding communications with Atigeo's customers, investors, business partners, employees, officers, and directors; and documents identifying private information of Atigeo's owners, clients, partners, and employees. *Park Decl.*, Ex. 1 (at 9, 13-14, 16-17) and Ex. 2 (at 7, 9-12).[2] If this information were disclosed to the public or unauthorized parties, Atigeo would lose not only its competitive advantages, but also the trust and confidence of its employees, investors, customers, and partners. The harm to Plaintiffs would be irreparable on many levels. If Atigeo's highly sensitive business plans, competitive strategies, and financial positions were revealed to competitors, Atigeo would be at a significant disadvantage in terms of its ability to compete for and win business. *Sandoval Declaration* ¶ 5 (filed herewith). If Plaintiffs' marketing plans and relationships were revealed, Plaintiffs' relationships and good will with those non-parties who entrusted private information with Atigeo and Mr. Sandoval on the express understanding that such information would be kept private, would be significantly harmed. Once lost, such trust would be difficult, if not impossible,

---

[2] Separate and apart from the discoverability and relevance of this information under the Fed. R. Civ. P. and Fed. R. Evid. (Plaintiffs intend to assert the proper objections when the discovery responses are due), an appropriate protective order is necessary to the extent such discovery is produced.

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 9
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

to regain. *Sandoval Declaration* ¶ 6. If Plaintiffs' personal information — ranging from account numbers to personal contacts — were revealed without adequate safeguards, the harm from privacy and security breaches involving the mishandling and dissemination of such information would be difficult to identify, quantify, and address in a timely manner (if ever). *Sandoval Declaration* ¶ 7.

Absent a protective order, confidential information obtained by the Individual Defendants through discovery could be shared with competitors of the producing entity. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Absent a protective order, parties ... may disseminate materials ... as they see fit."). This disclosure could injure both the company whose information is disclosed and the competitive process. *Hospital Corp. of Am. v. FTC*, 807 F.2d 1381, 1388 (7th Cir. 1986) (Posner, J.); *see also Safe Flight Instr. Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 21 (D. Del. 1988) (precluding party's president from accessing confidential documents as he "might (whether consciously or subconsciously) abuse the confidential ... information revealed to [the producing entity's] competitive disadvantage. The potential for abuse [and] competitive loss is real."); *Fieldturf Intern., Inc. v. Triexe Mgmt. Group, Inc.*, No. 03-C3512, 2004 WL 866494, at *3 (N.D. Ill. Apr. 16, 2004) (recognizing that "disclosure of confidential financial information to competitor[s] may cause a party great harm" and limiting disclosure to outside counsel).

A recent litigation, *Apple, Inc. v. Samsung Electronics, Co. Ltd.*, No. 5:11-cv-1846, 2014 U.S. Dist. LEXIS 11778, *24-28 and *52-53 (Jan. 29, 2014) (imposing sanctions on counsel for violations of two-tiered protective order), serves as a cautionary tale about the harm that can be caused if the proper protective order safeguards are not in place. In *Apple*, the protective order had the appropriate two-tiered mechanisms but they were not followed precisely. The court pointed out that having the right provisions in place is not enough — they have to be vigilantly policed and verified also. *Id.* In that case, a seemingly innocuous mistake in the handling of confidential information led to a ripple effect of harm to (1) the party whose confidential

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 10
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

information had been compromised, (2) the party that misused the confidential information, and (3) the law firm that made the mistake in handling the other side's confidential information. *Id.* Entry of an appropriate two-tiered protective order (though not enough by itself) is a key first step in the proper handling of sensitive, proprietary discovery.

        2.    *The proposed protective order will ensure efficient discovery.*

Failing to provide adequate protection for third parties' confidential information at the discovery stage would discourage third parties from cooperating with discovery in this litigation. This is because "parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited and the court will entertain arguments focused on vital knowledge that a party wants to use later." *In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992) (discussing justifications for protective orders in civil cases). A protective order with the proper safeguards instills confidence in the court system and discovery rules.

**B. The Proposed Two-Tiered System to Protect Confidential Information is Proper.**

This action is about Defendants' publishing false, misleading, and damaging information about Plaintiffs under the pretext of "public news reporting." The accused acts are intended to attract and confuse members of the public that do and may do business with Plaintiffs, while painting Plaintiffs in a false and disparaging light. Starting with the *atigeo.co* domain name, Defendants purport to provide websites that provide factual information about Plaintiffs, but the information provided is neither true, nor accurate.

If Defendants' were to gain access to Plaintiffs' confidential information, there is virtually no limit to the harm that could be caused, in many ways — not just by disclosing the information directly (whether published *en masse* or to select recipients), but also by blending falsehoods with legitimate private information that only Plaintiffs would know about themselves. This mixing of accurate and false information would cause further confusion about the legitimacy and reliability of Defendants' web sites, by creating the impression that the information on the websites is provided or sponsored by Plaintiffs. Given the causes of action in the complaint, the litigation

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 11
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

history of Defendant Montgomery, and the procedural posture of the instant motion, there is good cause for concern.

The protective order proposed by Plaintiffs addresses these confidentiality and security concerns through its adoption of a commonly used two-tier designation system for confidential materials. The most sensitive documents can be disclosed to outside counsel (Attorneys' Eyes Only), while less sensitive but still private information can be disclosed only to the parties in this action (Confidential). This is the typical protective order structure in cases where discovery about sensitive information is sought from technology companies, and there is no reason to depart from that common approach here.

DATED this 19th day of March, 2014.

        Respectfully Submitted,

        STOEL RIVES LLP

        /s/ Brian C. Park
        Brian C. Park, WSBA No. 25,584
        Maren R. Norton, WSBA No. 35,435
        Hunter Ferguson, WSBA No. 41,485
        600 University Street, Suite 3600
        Seattle, WA  98101
        Telephone: (206) 386-7542
        Facsimile:  (206) 386-7500
        BCPark@stoel.com
        MRNorton@stoel.com
        HOFerguson@stoel.com

        Counsel for Plaintiff Atigeo LLC


        BARON & BUDD, P.C.

        /s/ Roland K. Tellis
        Roland K. Tellis (*Pro Hac Vice*)
        15910 Ventura Boulevard, Suite 1600
        Encino, CA  91436
        Telephone: (818) 839-2333
        Facsimile:  (818) 986-9698
        RTellis@baronbudd.com

        Counsel for Plaintiffs
        Atigeo LLC and Michael Sandoval

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 12
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in the above case.

STOEL RIVES LLP

*Melissa Wood*
Melissa Wood, Practice Assistant
Dated at Seattle, WA on March 19, 2014

MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 13
75827372.1 0009074-00012

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542