THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATIGEO LLC, a Washington limited liability company, and MICHAEL SANDOVAL, an individual; and<br><br>Plaintiffs,<br><br>vs.<br><br>OFFSHORE LIMITED D, a California partnership; DENNIS MONTGOMERY, individually and as a partner of Offshore Limited D; ISTVAN BURGYAN, individually and as a partner of Offshore Limited D; DEMARATECH, LLC, a California limited liability company; and DOES 1-25, inclusive;<br><br>Defendants. | Civil Action No. 2:13-cv-1694-JLR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR MUTUAL PROTECTIVE ORDER GOVERNING DISCOVERY**<br><br>NOTED ON MOTION CALENDAR:<br>March 28, 2014 |

REPLY RE MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR)

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

Plaintiffs Atigeo LLC and Michael Sandoval respectfully submit this reply in support of their motion for a mutual protective order governing the discovery and use of confidential information in this action. The proposed protective order was previously submitted at Dkt # 53-1.

1. <u>Introduction:</u>[1] The only issue before the Court on this motion is whether there is "good cause" for a protective order to guard against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). An Attorneys' Eyes Only (AEO) designation protects information of a highly sensitive nature. The information sought by Defendants through broad discovery is highly sensitive (*e.g.*, trade secrets, competitive strategy, business/marketing plans, and private financial information). Like the disclosure of privileged information, the improper disclosure of highly sensitive information is a harm that cannot be completely remedied.

2. <u>Competitor Access to AEO Information:</u> While an employee of *Opspring LLC/ Blxware LLC*, Mr. Montgomery (a highly skilled software developer in, *inter alia*, the same specialized pattern recognition and analytical software field as Atigeo) was an actual competitor of Atigeo's. Mr. Montgomery has the sophistication and skill to again compete against Atigeo, especially if provided with a "roadmap" about how to do so via discovery. Beyond just Mr. Montgomery, if others in competition with Atigeo gained access to Plaintiffs' highly sensitive information, the irreparable harm discussed in the *Sandoval Declaration* (Dkt # 51 ¶¶ 4-6) would be compounded. Mr. Montgomery has a track record of publicizing information about Plaintiffs. Irrespective of Mr. Montgomery himself, if Plaintiffs highly sensitive information were disclosed publicly (whether intentionally or inadvertently) the harm to Plaintiffs from competitors accessing the information would be impossible to fully quantify or address. The proverbial genie could never be placed back in the bottle. The proposed order (¶ 13) and the applicable law address the Individual Defendants' stated concerns, by allowing parties to challenge AEO designations believed to be overly broad and unwarranted.

---

[1] Since the filing of the opening brief and opposition, the parties' counsel have met-and-conferred to reconfirm their mutual desire to focus on the merits and avoid undue rhetoric. Accordingly, this reply addresses those issues central to the relief sought.

REPLY RE MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 1

3. <u>Balancing</u>: The fundamental question Plaintiffs have asked since this issue first arose is: Why must the Individual Defendants themselves have direct access to Plaintiffs' highly sensitive competitive and private information? Defendants' opposition provides no answer other than (1) a general need for Mr. Montgomery to defend the action, and (2) Mr. Montgomery's role as "an investigative reporter." Neither of these points overrides Plaintiffs' reasons for seeking a protective order with an AEO tier of protection. Mr. Montgomery's counsel will be able to analyze all materials and provide a full and vigorous defense. Mr. Montgomery's claim to be an investigative reporter and his previous Internet publications only reinforce Plaintiffs' good cause for concern about improper disclosure. Moreover, the actual classes of highly sensitive information that would be designated as AEO are narrow and specific, and they would not cover the vast majority of information exchanged in discovery, to which Mr. Montgomery would have full access. In such situations, the balancing of harm tips strongly in Plaintiffs' favor as held in the *Cabell* and *Tully's* cases discussed below in Section 5.

4. <u>Challenges to AEO Designations</u>: The AEO protective order proposed by Plaintiffs addresses Defendants' concerns about over-designation of information by providing a standard mechanism for challenging and resolving designations "at any stage of these proceedings." *See* Dkt # 53-1 ¶ 13. The parties would meet-and-confer and, if necessary, seek the Court's guidance.

5. <u>Legal Authority</u>: This action concerns Defendants' bad faith intent to profit in violation of the federal Anti-Cybersquatting Protection Act (ACPA). In determining whether bad faith exists, courts consider nine non-exclusive factors enumerated in the ACPA. 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX). The statutory factors "are not exhaustive. Instead, 'the most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors' that Congress enumerated." *Lahoti v. Vericheck, Inc.*, 2007 WL 2570247, at *6 (W.D. Wash. Aug. 30, 2007), *aff'd*, 586 F.3d 1190 (9th Cir. 2009) (quoting *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946-47 (9th Cir. 2002)).

Given the broad reach of websites, the harm these ACPA factors were designed to address is greater (both quantitatively and qualitatively) than one-to-one competition. That concern is

REPLY RE MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 2

compounded when the cybersquatting is part of an extortion scheme, complete with fictitious *aliases*, as pleaded in the *Complaint* ¶¶ 31, 48-49, and 53 — additional elements of good cause that none of the cases relied on by Defendants addresses.

The opposition acknowledges that AEO protective orders are common in trademark cases. Dkt # 53, at 3:3 and 9:23. This is a trademark case, brought under the Lanham Act, 15 U.S.C. § 1125(d)(1)(A) ("A person shall be liable in a civil action by the owner of a mark, … "). Further, insofar as the opposition seeks to distinguish Plaintiffs' legal authority on the grounds that many of those case involved competitors, the purpose of the protective order is to prevent disclosure of highly sensitive information to *all* unauthorized parties — whether current competitors, past competitors (Mr. Montgomery), or potential future competitors (Mr. Montgomery).

If Mr. Montgomery (or anyone else) is granted access to Plaintiffs' highly sensitive competitive and business information, he will have a blueprint on how to compete against Atigeo, as he did previously on behalf of Opspring/Blxware LLC. He will also be in a position to help others compete against Atigeo. Thus, Plaintiffs are concerned not only about the access of current competitors to this highly sensitive information, but also that highly sensitive information may be published to everyone (competitors and non-competitors alike) for any purpose. That is the harm Rule 26(c) AEO protective orders prevent.

The opposition attempts to distinguish the cases cited in the opening brief based on a narrow competitor-to-competitor relationship. Those cases deal with the harm that would occur if highly sensitive information got out to the *wrong parties*. As discussed above, Mr. Montgomery's status as a former and potential future competitor of Plaintiffs and status as a self-designated "investigative reporter" creates good cause for concern about the handling of highly sensitive "AEO" information, as defined by *Avocent v. Rose Electronics, Inc.*, 242 F.R.D. 574, 576 (W.D. Wash. 2007).

In another trademark case, *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013), the party opposing an AEO tier of protection in a protective order (like Mr. Montgomery), "allege[d] that he will suffer 'extreme prejudice' if he is unable to personally view the designated material." *Id.* at 610. The Court rejected the same type of conclusory statements as those asserted

REPLY RE MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 3

by Mr. Montgomery and held that the concerned party's interests would be protected because his attorneys would have full access to the AEO information. *Id.* (entering two-tiered AEO/Confidential protective order).

Defendants rely on a <u>breach of contract case</u>, *UCC Ueshima Coffee Co. v. Tully's Coffee Corp.*, 2007 U.S. Dist. LEXIS 98157, at *2 (W.D. Wash. 2007), in which the defendant made the same argument as Mr. Montgomery regarding "extreme prejudice" if the defendant were not allowed access to an AEO customer list. The plaintiff, however, claimed that the customer list could serve as a "roadmap" about how to expand one's sales territories. *Id.* The Court held:

> defendant contends it will suffer extreme prejudice if the list is not disclosed, because its attorneys are not experts in the foreign specialty coffee industry. <u>Defendant believes that it will be denied the opportunity to prepare its defense if it is unable to discuss the contact list with its attorneys</u>. The Court finds defendant has not established that restricting the list's disclosure to defendant's attorneys and experts will prejudice its case. Even if its lawyers are not experts in the foreign coffee industry, defendant may hire outside experts to analyze the information. <u>For these reasons, the Court concludes that the risk of harm and prejudice to plaintiff outweighs defendant's need to use the information in preparing its case</u>.

*Id.* at *5-6 (entering two-tiered AEO/Confidential protective order) (emphasis added); *Nutratech, Inc. v. Syntech Int'l Inc.*, 242 F.R.D. 552, 555-56 (C. D. Cal. 2007) (same). The same analysis applies with greater force here, where the discovery sought by Mr. Montgomery — and the risk of irreversible competitive harm to Plaintiffs — is substantially broader. This reasoning is consistent with the holdings of the cases[2] relied on in Defendants' opposition brief.

6. <u>Inconsistent Denials of Involvement and Accountability</u>. Each party's individual accountability (on both sides) is essential to the proper handling of documents containing highly sensitive information in compliance with a court's protective order, whether there is one tier or two tiers of protection. In this action, each Defendant has denied involvement and accountability as to the basic facts underlying the subject matter of this action, despite the compelling evidence from Defendants' own documents to the contrary. For example:

---

[2] The *Nixon, Kamp, Tully's, Nutratech, Avocent, DeFreitas,* and *DeFazio* cases all restricted disclosure of highly sensitive information to address the disclosing party's concerns about improper access. The *DeFazio v. Hollister*, 2007 WL 2580633, at *1 n.1 (E.D. Cal. 2007) case also rejected the same RPC 1.4 informed client argument Defendants make in the opposition brief (p. 10:12-23).

REPLY RE MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 4

| Defendant | Contention re Lack of Involvement and Accountability | Rebuttal Evidence |
|---|---|---|
| Dennis Montgomery | No knowledge of Offshore Ltd D | Network Solutions records listing Offshore Ltd D as the registrant of <atigeo.co> and providing, *inter alia*, Dennis Montgomery's name, User ID, and e-mail as contact information (Dkt # 56-2, at 8; 56-3 at 2-4); State Farm's defense coverage letter (Dkt # 47, at 40) |
| Istvan Burgyan | No involvement whatsoever | Pls.' *SJ Opp'n* (Dkt # 55, at 3-8) |
| Offshore Ltd D | Never existed | Notice of appearance (Dkt # 27), insurance claim (Dkt # 47, at 40), and Pls.' *SJ Opp'n* (Dkt # 55, at 3-8) |
| Demaratech | No involvement | Pls.' *SJ Opp'n* (Dkt # 55, at 3-8) |

The contradiction between Defendants' representations and the facts established by the Network Solutions records regarding their account and other materials amplifies Plaintiffs' concerns about accountability. The need for accountability is heightened where access is granted to highly sensitive information pursuant to the terms of a protective order, when even inadvertent lapses can cause irreparable (and sometimes undiscovered) competitive harm. This highlights the balancing of harms discussed in the cases cited in Section 5 above and further supports good cause under Rule 26(c) for the two-tiered protective order plaintiffs propose.

    7.    <u>Concerns Raised by Mr. Montgomery's Prior Litigation</u>. Mr. Montgomery appears to have misinterpreted Plaintiffs' discussion of his prior litigation history as an attempted character assassination, which Plaintiffs regret. That was not Plaintiffs' purpose or intent. <u>The issue is whether there is good cause for concern that Plaintiffs may be subjected to "annoyance, embarrassment, oppression, or undue burden or expense" in light of Mr. Montgomery's prior litigation history and the sensitive nature of the broad discovery sought by Defendants, such that the requested protective order should be entered under Rule 26(c).</u>[3]

Mr. Montgomery's declaration (¶ 5) appears to confuse two different cases. Respectfully,

---

[3] The opposition suggests that Plaintiffs' own prior litigation history against some of Mr. Montgomery's associates (including the former competitors of Atigeo known as Opspring LLC and Blxware LLC, for whom Mr. Montgomery worked) justifies denial of the motion for protective order. The allegations in the opposition and declaration are not sufficiently specific for Plaintiffs to respond. Plaintiffs will rely on the dockets from those actions and the Court rulings in Plaintiffs' favor to speak for themselves.

REPLY RE MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 5

600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542

Plaintiffs submit that the Court dockets speak for themselves. *See* 3/16/2010 judgment in *Montgomery v. eTreppid*, No. 3:06-cv-691 (D. Nev. 2006), at Dkt # 28 ("Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered. IT IS ORDERED AND ADJUDGED that judgment is hereby entered in favor of the Defendants. This case is DISMISSED without prejudice.") (original emphasis omitted). This case and judgment are different than those referenced in the opposition.

On the issue of the judgments entered pursuant to confessions of judgment (as well as the FBI search warrant), the point is <u>not</u> how the monetary judgments were entered (or how a warrant was handled), but whether Plaintiffs in this case have good cause for a two-tiered protective order in light of the specific concerns raised by that procedural history.[4]

8.  <u>Types of Proposed AEO Information</u>. The opposition asserts that "[Plaintiffs] were unable to explain exactly what confidential materials they were seeking to designate AEO. Furthermore, [Defendants] suggested that a temporary injunction would obviate the need for AEO designations in this matter." *McGaughey Decl.* (Dkt # 59) ¶ 6:11-14. As detailed in Plaintiffs' opening brief, declarations and exhibits, Plaintiffs articulated their concerns during the Rule 26(c) conference about several <u>specific categories</u> of highly sensitive information called for by Defendants' broad discovery requests. Dkt # 50, at 5, Dkt # 51 ¶ 4, and Dkt # 52-10, Ex. 8 (p. 60 of 73), ¶¶ 2-3. While the Defendants' admitted that certain such categories can be trade secrets and appeared to be confidential, the parties were not able to agree on AEO protection. *Id.* (all).

As to the "temporary injunction" mentioned by Defendants, no such proposal has been sent to Plaintiffs yet. Without seeing the proposal, Plaintiffs cannot evaluate how it might alleviate Plaintiffs' concerns regarding the improper disclosure of highly sensitive information or obviate the need for a two-tiered protective order. Thus, the absence of the temporary injunction alternative does not diminish the good cause or concern over the protective order issues.

---

[4] Plaintiffs' counsel in this case was not closely involved in the *eTreppid* litigation as they withdrew (No. 3:06-cv-00056, Dkt # 607) on May 15, 2008, shortly after appearing in the action. And, of course, Plaintiffs and their counsel were not privy to the settlement discussions and agreement between Mr. Montgomery and his former company.

DATED this 28th day of March, 2014.

                        Respectfully Submitted,

                        STOEL RIVES LLP

*/s/ Brian C. Park*
Brian C. Park, WSBA No. 25,584
Maren R. Norton, WSBA No. 35,435
Hunter Ferguson, WSBA No. 41,485
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 386-7542
Facsimile: (206) 386-7500
BCPark@stoel.com
MRNorton@stoel.com
HOFerguson@stoel.com

Counsel for Plaintiff Atigeo LLC

BARON & BUDD, P.C.

*/s/ Roland K. Tellis*
Roland K. Tellis (*Pro Hac Vice*)
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
RTellis@baronbudd.com

Counsel for Plaintiffs
Atigeo LLC and Michael Sandoval

**CERTIFICATE OF SERVICE**

I hereby certify than on March 28 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in the above case.

STOEL RIVES LLP

*Melissa A Wood*
Melissa Wood, Practice Assistant
Dated at Seattle, WA on March 28, 2014

REPLY RE MOTION FOR PROTECTIVE ORDER (NO. 2:13-CV-1694-JLR) — 8

STOEL RIVES LLP
600 University Street, Ste. 3600
Seattle, Washington 98101
(206) 386-7542