The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

ATIGEO LLC, a Washington limited liability
company; and MICHAEL SANDOVAL, an
individual,

            Plaintiffs,

vs.

OFFSHORE LIMITED D, a California
business organization, form unknown;
OFFSHORE LMITED D, a California
partnership; DENNIS MONTGOMERY,
individually and as a partner of Offshore
Limited D; ISTVAN BURGYAN,
individually and as a partner of Offshore
Limited D; DEMARATECH, LLC, a
California limited liability company; and
DOES 1-10, inclusive,

            Defendant.

NO. 2:13-cv-01694

**DECLARATION OF DENNIS
MONTGOMERY IN SUPPORT OF
ISTVAN BURGYAN'S MOTION FOR
SUMMARY JUDGMENT**

I, Dennis Montgomery, declare:

1.     I am over the age of 18 years and I am a defendant in this lawsuit.  I am of legal

age and competent to testify to the matters herein, and do so of my own personal knowledge.  I

make this declaration in support of Istvan Burgyan's motion for summary judgment.

2.     I understand plaintiffs have attached to their response to Istvan Burgyan's

**DECLARATION OF DENNIS MONTGOMERY
IN SUPPORT OF ISTVAN BURGYAN'S MOTION
FOR SUMMARY JUDGMENT - 1 -**

McGaughey Bridges Dunlap pllc
325 – 118th Avenue Southeast, Suite 209
Bellevue, Washington 98005 – 3539
(425) 462 – 4000
(425) 637 – 9638 Facsimile

summary judgment several documents from Network Solutions relevant to account #27945118, which I have never before reviewed until now. I used this account to create the websites which are the subject of this litigation. To the best of my knowledge, Mr. Burgyan never personally used this Network Solutions account nor did he ever have the password.

3.     In early 2006, I entered into discussions with plaintiff Michael Sandoval and his business partner at the time, Edra Blixseth. We agreed I would begin working for their new company that was soon to be named Opspring LLC ("Opspring"). Opspring was not registered with the Secretary of State. On April 5, 2006, I officially became an employee of Opspring. Attached hereto as <u>Exhibit 1</u> is a true and correct copy of my Opspring Employment Agreement, dated April 5, 2006.

4.     On or around March 2, 2006, at Mr. Sandoval's request, an account was created with Network Solutions to register domain names for Opspring LLC. The intent was to ensure they would be available after the company was formed. While I cannot specifically recall, I believe I was the person who created that account. The account was either registered as account #27945118 or eventually was consolidated or morphed into that account.

5.     On March 24, 2006, Opspring LLC was registered with the Secretary of State of Washington. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of Opspring LLC's California Secretary of State Registration Information. At that time and over the years, many people had access to account #27945118. This included employees of Opspring and its successor entity, Blxware LLC ("Blxware"), certain employees of Atigeo, and later Demaratech LLC.

6.     On Exhibit 3 to the declaration of Roland Tellis at page 3 (Dkt. 56), chriss@blxware.com and cshock2003@hotmail.com is included in the user history. These are



the Blxware and private e-mail addresses for Christopher Shockey.  When I began working for Opspring LLC, Mr. Shockey was the Chief Technology Officer ("CTO") for Azimyth LLC ("Azimyth"), the predecessor to Atigeo.  Around that time, Mr. Shockey also became the CTO for Mr. Sandoval's other companies, which included Opspring and xPatterns LLC.  Further, when Azimyth became Atigeo, he became the CTO of that company.  Mr. Shockey inevitably became a Blxware employee after Mr. Sandoval assigned his ownership in Opspring over to Edra Blixseth.  However, it is my understanding that Mr. Shockey also continued working for Atigeo and xPatterns.

7.     When account #27945118 was created, I had only met Istvan Burgyan on one or two occasions.  He was dating my daughter.  These interactions were brief.  Eventually, Mr. Burgyan and my daughter married.  About a year after I began working for Opspring LLC, I assisted Mr. Burgyan in obtaining a position with the company.  Shortly thereafter, Opspring became Blxware.  Mr. Burgyan and I both worked for Blxware until its collapse in 2009.

8.     Subsequently, Mr. Burgyan created Demaratech LLC.  He hired me to manage information technology and software development.  After moving onto Demaratech, I continued using the same Network Solutions account that had been previously used by Opspring, Blxware and former Atigeo employee, Christopher Shockey.  I had no reason to create a new account.  I shared the password to this account with employees of Demaratech as we expected to create domain names for that company.  I have reviewed the Exhibits attached to the declaration of Mr. Tellis (Dkt. 56).  Exhibits 2 and 3 contain information regarding Demaratech LLC and Mr. Burgyan.   I have no knowledge as to who added Demaratech or Mr. Burgyan to account #27945118.  It is likely this information was added to the "user history" for the account by employees of Demaratech.  I similarly have no personal knowledge as to who added Offshore

McGAUGHEY BRIDGES DUNLAP PLLC
325 – 118TH AVENUE SOUTHEAST, SUITE 209
BELLEVUE, WASHINGTON 98005 – 3539
(425) 462 – 4000
(425) 637 – 9638 FACSIMILE

Limited D to this account. However, when updating account information on Network Solutions, a user can enter any arbitrary identifier they would like. Mr. Burgyan did not participate in this work as he has virtually no experience with domain registration or web development. As is reflected in Exhibit 4 to the declaration of Mr. Tellis (Dkt. 56), and to the best of my recollection, Demaratech never registered any domain names nor did Istvan Burgyan ask me to do so.

9.      I must emphasize the fact many individuals possessed the password to the subject Network Solutions account. I have reviewed Exhibit 4 to the declaration of Mr. Tellis (Dkt. 56) and it contains a list of domain names that were registered to that account. Three of these domain names were owned by Edra Blixseth's former boyfriend, Jack Scalia: (1) jackscalia.org, (2) operationamericanspirit.com, and (3) operationamericanspirit.net. I did not assist in creating these domain names. This means Ms. Blixseth and/or Mr. Scalia accessed this account independently of my assistance. There are also domain names on this list that I do not even recognize: (1) mustardgreenventures.co, .com, and .net; (2) muststardseedventures.co, .com and .net; and (3) wholeearth.net. Istvanburgyan.net appears on this list because at one point I was planning on creating domain names for all of my family members in order to protect their identities.

**I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.**

DATED this 28th day of March, 2014.



Dennis Montgomery


McGAUGHEY BRIDGES DUNLAP PLLC
325 – 118ᵗʰ Avenue Southeast, Suite 209
Bellevue, Washington 98005 – 3539
(425) 462 – 4000
(425) 637 – 9638 Facsimile

# Exhibit 1

**OPSPRING LLC**
600 - 106th Avenue NE, Suite 210
Bellevue, WA  98004-5043

April 5, 2006

Dennis Montgomery
12720 Buckthorn Lane
Reno, NV  89511

Dear Mr. Montgomery:

We are excited to offer you a position at Opspring LLC, a Washington limited liability company (the "Company"). This confirms our offer to you of the position of Chief Scientist. As we discussed, this is a full-time position located in Bellevue, Washington, with employment commencing on April 5, 2006, and continuing with the Company. You will report to the Company's Chief Executive Officer, Michael Sandoval, or such other person as directed by the CEO from time to time.

Compensation and Benefits

Your compensation will be $1,200,000 per year, less deductions and withholdings required or authorized by law, paid in accordance with the Company's regularly established policies. This is an exempt position and you will not receive overtime compensation. You will also be entitled to receive employment benefits as generally provided by the Company's policies and benefit plans in effect from time to time.

Loans to Montgomery

As discussed, the Company has agreed to provide you with a $1,000,000 loan (the "First Loan") on the date that your employment with the Company commences, which will be evidenced by the form of Promissory Note provided to you for your execution (the "Note"). Additionally, the Company has agreed to provide you with additional loans (collectively with the First Loan, the "Loans") in the following amounts at the following times, subject to you continuing to be an employee of the Company at the relevant time:

- $500,000 on the first day you begin working full time in the Company's offices in Bellevue, Washington;
- $500,000 within five (5) business days after you have developed for and delivered to the Company, as its employee, demonstrable new software source code that is reasonably acceptable to you and the Company;

**Montgomery's initials**

**Opspring LLC's initials**

1

**CONFIDENTIAL**

- $500,000 within five (5) business days after your family moves its permanent residence to the Puget Sound area of Washington state and ceases to maintain a residence in Nevada;
- $500,000 within five (5) business days after Opspring receives its first compensation from an independent third party (i.e., not an affiliate of the Company) for the sale or license of intellectual property developed by you as the Company's employee; and
- $300,000 upon the Company's receipt of at least $1,000,000 of compensation in the aggregate from one or more independent third parties (i.e., not affiliates of the Company).

Each Loan shall be evidenced by the form of Note, bear interest at 7%, and be due and payable upon the earlier of (i) three years from the time of the Loan and (ii) the date that you cease being employed by the Company for any reason, other than the Company terminating your employment without Cause (as defined below). Among other conditions precedent to the Company providing you with each Loan (including your signing and delivering to the Company the IP Agreement (as defined below), the Proprietary Information Agreement (as defined below) and the Common Interest Agreement (as defined below)), you will be required to sign and deliver the form of Note with respect to the applicable Loan prior to the Company making such Loan to you.

<u>Intellectual Property Assignment Agreement</u>

Based on your representations and warranties and our discussions, it is our understanding that you personally and exclusively own and control certain intellectual property and technology rights that will be crucial to the development of our business. Accordingly, as a condition precedent to your employment and the Company entering into this letter agreement with you and providing you with the compensation and benefits hereunder and the Loan, you and the Montgomery Family Trust will be required to sign and deliver the Intellectual Property Assignment Agreement provided to you (the "IP Agreement"), which relates to the assignment of this intellectual property and technology to the Company. You agree and acknowledge that without your entering into the IP Agreement, the Company would not employ you, enter into this letter agreement or the Common Interest Agreement with you, or provide you with the compensation or benefits hereunder or the Loan.

<u>Proprietary Information Agreement</u>

Due to the confidential nature of many aspects of our business, as a condition precedent to your employment and the Company entering into this letter agreement with you and providing you with the compensation and benefits hereunder and the Loan, you are also required to sign and deliver the Proprietary Information, Inventions and Noncompetition Agreement provided to you (the "Proprietary Information Agreement"). You agree and acknowledge that without your entering into the Proprietary Information Agreement, the

2

**Montgomery's initials**

**Opspring LLC's initials**

**CONFIDENTIAL**

Company would not employ you, enter into this letter agreement, the IP Agreement or the Common Interest Agreement with you, or provide you with the compensation or benefits hereunder or the Loan.

<u>Common Interest, Confidentiality and Cooperation Agreement</u>

Because of your pending litigation with eTreppid Technologies, LLC ("eTreppid") and various other parties, as a condition precedent to your employment and the Company entering into this letter agreement with you and providing you with the compensation and benefits hereunder and the Loan, you and the Montgomery Family Trust will be required to sign and deliver the Common Interest, Confidentiality and Cooperation Agreement provided to you (the "Common Interest Agreement"). You agree and acknowledge that without your entering into the Common Interest Agreement, the Company would not employ you, enter into this letter agreement or the IP Agreement with you, or provide you with the compensation or benefits hereunder or the Loan.

<u>Company Policies and Procedures</u>

You agree to comply with all of the terms and conditions contained in the Company's policies and procedures, as they may be implemented or amended by the Company from time to time, and any employee handbook of the Company that may be implemented or amended by the Company from time to time.

<u>At-will Employment Relationship</u>

Notwithstanding anything to the contrary in this letter agreement, this is an at-will employment relationship, and either you or the Company may terminate the relationship for any reason, with or without cause, and with or without advance notice.

<u>Potential Severance</u>

If the Company terminates your employment without Cause prior to the end of three years from the commencement of your employment (the "Severance Period"), the Company shall pay you a severance amount equal to your regular salary over the remainder of the Severance Period at the same payment intervals as you would be paid if the employment relationship had not terminated, less deductions and withholdings required or authorized by law. For example, if the Company terminates your employment without Cause after two years of employment, subject to the terms of this letter agreement, the Company shall pay you your regular salary for one year at the same payment intervals as you would be paid if your employment relationship had not terminated, less deductions and withholdings required or authorized by law.

You shall only be entitled to such severance pay if you and the Montgomery Family Trust first sign and deliver to the Company (and then you and the Montgomery Family Trust do

3

**Montgomery's initials**

**Opspring LLC's initials**

**CONFIDENTIAL**

not rescind, as may be permitted by law) a general release of claims in a form acceptable to the Company. Additionally, you shall not be entitled to any severance whatsoever if you terminate your employment for any reason or the Company terminates your employment for Cause.

For purposes of this letter agreement, "Cause" shall mean any of the following: (i) any material breach of any of the Agreements by you or the Montgomery Family Trust which are not remedied by you within 30 days after your receipt of written notice; (ii) any failure or refusal to perform assigned job responsibilities that continues unremedied for a period of ten (10) days after written notice to you by the Company; (iii) your failure to fully develop and deliver to the Company the new intellectual properties and/or technologies to be developed by you as an employee of the Company on the schedule reasonably set by the Company, as determined in the sole judgment of the Company, provided, however, that said schedule shall give you a 30 day grace period in which to develop and deliver said intellectual properties and/or technologies; (iv) your or the Montgomery Family Trust's intentional obstruction of the Company's utilization of the intellectual property transferred to the Company pursuant to the IP Agreement (the "IP"); (v) any judgment, decree, settlement, order or other restriction imposed on you, the Montgomery Family Trust or the Company that materially restricts or negatively affects or impacts your employment with the Company or your ability to fully perform your intellectual property and technology development services as the Chief Scientist of the Company, and that remains unremedied for a period of 60 days after your receipt of written notice; (vi) any judgment, decree, settlement, order or other restriction imposed on you, the Montgomery Family Trust or the Company that materially restricts or negatively affects or impacts the Company's ownership, use or commercialization of the IP, and that remains unremedied for a period of 60 days after you have received written notice; (vii) conviction of a felony or misdemeanor or failure to contest prosecution for a felony or misdemeanor; (viii) the Company's reasonable belief that you engaged in a violation of any statute, rule or regulation, any of which in the sole judgment of the Company is harmful to the business of the Company or to the Company's reputation and which remains unremedied for a period of 30 days after you have received written notice; (ix) the Company's reasonable belief that you engaged in unethical practices, dishonesty or disloyalty and which remains unremedied for a period of 30 days after you have received written notice; or (x) any reason that would constitute cause under the laws the State of Washington and which remains unremedied for a period of 30 days after you have received written notice.

<u>No Third Party Confidential Information or Intellectual Property</u>

Notwithstanding anything to the contrary whatsoever in this letter agreement or otherwise, as we have discussed on a number of occasions, it is absolutely critical that you continue to refrain from providing us with any confidential or proprietary information or intellectual property of eTreppid or any other third party. Accordingly, you and the Montgomery Family Trust represent and warrant to the Company that you (i) are not in possession of any technical or intellectual property information or any technology or

4

**Montgomery's initials**

**Opspring LLC's initials**

**CONFIDENTIAL**

intellectual property (including without limitation any software or source or object code) of eTreppid, and (ii) have not at any time provided the Company or any of its representatives or affiliates with any confidential or proprietary information or intellectual property of eTreppid or any other third party. Any business or technology that we build together must be built strictly based on our collective general knowledge and experiences and absolutely not on any confidential or proprietary information or intellectual property of eTreppid or any other third party.

Dispute Resolution

This letter agreement shall be governed and construed in accordance with the laws of the State of Washington (without regard to its choice of law rules). Except for the right of the Company and you to seek injunctive relief in court, in the event of any dispute arising from or related to your employment, including without limitation local, state, and federal statutory civil rights and discrimination claims, those disputes will be resolved exclusively by final and binding arbitration conducted by a neutral arbitrator appointed by Judicial Dispute Resolution LLC ("JDR") of Seattle, Washington. If JDR is unable or unwilling to so act, then it shall be substituted with the Seattle office of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). The only parties to the arbitration shall be you and the Company. Reasonable discovery will be permitted and the arbitrator may decide any issue as to discovery. The arbitrator shall prepare a written award stating the findings of fact and conclusions of law that form the basis for that award. Each party may be represented by counsel at the arbitration. The location of the arbitration shall be Seattle, Washington. Judgment upon the award may be entered by any court having jurisdiction of the matter. The arbitrator's fees will be paid in equal portions by the Company and you, unless the Company agrees to pay all such fees. The substantially prevailing party is entitled to recover its reasonable attorneys' fees and expenses in conjunction with the arbitration award.

This letter agreement, the Note, the IP Agreement, the Proprietary Information Agreement, the Common Interest Agreement, and any other agreements contemplated by this letter agreement (collectively, the "Agreements") constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings (whether written, oral or implied) between you and the Company. You and the Montgomery Family Trust acknowledge and agree that neither you nor the Montgomery Family Trust are members of the Company, have any right to become a member or acquire a membership interest of the Company or have been promised any equity or membership interest in the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company. Any such amendment shall be binding on you, the Montgomery Family Trust and the Company.

You and the Montgomery Family Trust consent to a deduction from any amounts the Company owes you and/or the Montgomery Family Trust from time to time (including

5

____ **Montgomery's initials**                                              **CONFIDENTIAL**

____ **Opspring LLC's initials**

without limitation amounts owed to you as wages or other compensation, fringe benefits, or severance, as well as any other amounts owed to you by the Company), to the extent of the amounts you and/or the Montgomery Family Trust owe to the Company under any of the Agreements or otherwise.

You and the Montgomery Family Trust shall indemnify and hold harmless the Company, and the Company's directors, officers, employees, members, contractors, agents and representatives from any claims, damages, liabilities, costs and expenses, including reasonable legal fees and expenses, arising from or related to any material breach by you or the Montgomery Family Trust of any of the Agreements; provided that the Company promptly notifies you in writing of any Claim (however, the failure by the Company to give such notice shall not relieve you of your obligations under this paragraph, except to the extent that the failure results in the failure of actual notice and you are damaged as a result of the failure to give notice).

As required by law, your employment with the Company is contingent upon your providing legal proof of your identity and authorization to work in the United States.

Please acknowledge your receipt and review of this letter agreement and acceptance of these terms by signing one copy below and returning it to me. Notwithstanding any signature or initials of the Company or its representative to this letter agreement, none of this letter agreement, the Agreements or any of the transactions set forth in this letter agreement or the Agreements shall be binding on the Company unless and until all of the relevant Agreements have been signed and delivered by you, the Montgomery Family Trust and the Company and all of the other conditions described in this letter agreement have been satisfied to the sole satisfaction of the Company.

Again, congratulations on your prospective employment. We all look forward to working with you.

Sincerely,

Opspring LLC

By: _____
Michael Sandoval, CEO

I understand and agree to the above terms.

Date: April 5, 2006

_____
Dennis Montgomery

6

**Montgomery's initials**

**Opspring LLC's initials**

**CONFIDENTIAL**

Accepted and agreed:

Montgomery Family Trust

By: _____

Dennis Montgomery, Co-Trustee

By: _____

Brenda Montgomery, Co-Trustee

**Montgomery's initials**

7

**CONFIDENTIAL**

**Opspring LLC's initials**

# Exhibit 2

# Corporations Division - Registration Data Search

OPSPRING LLC

Purchase Documents for this Corporation »

| | |
|---|---|
| UBI Number | 602597701 |
| Category | LLC |
| Active/Inactive | Inactive |
| State Of Incorporation | WA |
| WA Filing Date | 03/24/2006 |
| Expiration Date | 03/31/2009 |
| Inactive Date | 07/01/2009 |
| Duration | Perpetual |
| Registered Agent Information | |
| Agent Name | JORY RUSSELL |
| Address | 600 106TH AVE STE 210 |
| City | BELLEVUE |
| State | WA |
| ZIP | 98004 |
| Special Address Information | |
| Address | |
| City | |
| State | |
| Zip | |

**Governing Persons**

| Title | Name | Address |
|---|---|---|
| Member | BARVE , JULIE | 42765 DUNES VIEW ROAD RANCHO MIRAGE , CA 92270 |
| Member,Manager | BLIXSETH , EDRA | 650 BELLEVUE WAY NE BELLEVUE , WA 98004 |