THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ATIGEO LLC, a Washington limited liability company; and MICHAEL SANDOVAL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>OFFSHORE LIMITED D, a California partnership; DENNIS MONTGOMERY, individually and as a partner of Offshore Limited D; ISTVAN BURGYAN, individually and as a partner of Offshore Limited D; DEMARATECH, LLC, a California limited liability company; and DOES 1-25, inclusive,<br><br>Defendants. | Civil Action No. 2:13-CV-01694-JLR<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR VOLUNTARY DISMISSAL<br><br>NOTED ON MOTION CALENDAR:<br>July 18, 2014 |

## I. INTRODUCTION

Zealous advocacy requires candor. Unfortunately, Defendants[1] have distorted the record and withheld key information in their response. They attempt to create the impression that Plaintiffs decided to move for voluntary dismissal because of Defendants' counsel's June 26 letter asserting the merits of Defendants' case. In reality, Plaintiffs' decision preceded that letter (as communicated to Defendants on June 20) and was predicated on the undisputed facts cited in the motion for voluntary dismissal itself. Defendants have not shown they will suffer any legal prejudice from voluntary dismissal without prejudice, and Mr. Burgyan has not demonstrated that he is entitled to an award of fees or costs. Plaintiffs' motion should be granted.

## II. FACTUAL BACKGROUND

Defendants do not dispute the factual basis for Plaintiffs' motion – the Subject Websites have been dismantled and Defendants have endured recent hardship. But Defendants have inaccurately described recent discovery and evidence supporting Plaintiffs' allegations. Thus, it is necessary to clarify and correct numerous points so the law is applied to the correct facts.

### A. Mr. Burgyan's California Storage Locker and Deposition Scheduling

This Court struck Mr. Burgyan's motion for summary judgment because Mr. Burgyan had not fully responded to Atigeo's discovery requests, and gave the parties three additional months for discovery before Mr. Burgyan could refile a dispositive motion. *See* Dkt. 70 at 5, 8. Plaintiffs' counsel then attempted to "work together" with Defendants' counsel on the schedule for Mr. Burgyan to search his California storage unit and for Mr. Burgyan's deposition. Park Decl. ¶ 3 & Ex. 1 at 1 (4/30/2014 Ltr fr Pls' counsel to Dfs' counsel). Defendants never advised as to the timing of when Mr. Burgyan planned to inspect his storage facility. *Id.* ¶ 3.

During a May 14 conference with Defendants' counsel, Plaintiffs' counsel outlined the terms of a settlement proposal.[2] *Id.* ¶ 4. In a May 20 letter, Plaintiffs' counsel confirmed the

---

[1] "Defendants" refers collectively to the individual defendants (Messrs. Montgomery and Burgyan); "Plaintiffs' counsel" refers to Atigeo LLC's counsel and Mr. Sandoval's counsel, together and individually.

[2] Defendants characterize the proposed settlement being "one-sided" and "similar to the coercive non-disclosure and confidentiality agreements they have entered into with their prior litigation opponents." Dkt. 76 at 4 n.5. The basis for Defendants' portrayal of unnamed *negotiated* settlement agreements is unclear and unsupported.

1 settlement proposal, which provided for dismissal with prejudice with a mutual release, if
2 Defendants agreed to refrain from using the <atigeo.co> domain name and domain names
3 confusingly similar to the Atigeo mark or related marks, and refrain from making the false
4 statements about Plaintiffs at issue in this case. *Id.* ¶ 5 & Ex. 2 at 2 (5/20/2014 Ltr fr Pls's
5 counsel to Dfs' counsel). Plaintiffs made this offer so the parties could avoid additional
6 litigation costs. *Id.* Ex. 2 at 2. Defendants never responded to this offer, orally or in writing.

7 Defendants state that on May 30, a day after being advised of Mr. Montgomery's health
8 problems, Plaintiffs noted Mr. Burgyan's deposition for June 17. Dkt. 76 at 4, 5. They also
9 contend that Plaintiffs "pushed for inspection of [Mr. Burgyan's California storage unit] so that
10 Mr. Burgyan could be deposed." *Id.* at 5. Defendants' mischaracterization of the record, which implies that Plaintiffs pressured Defendants during a time of hardship, is offensive.

11 On May 28 (even before Defendants' May 29 illness notification letter), Plaintiffs
12 informed Defendants that they were planning to note Mr. Burgyan's deposition and serve
13 subpoenas. Park Decl. ¶ 6 & Ex. 3 (5/28/2014 Email fr Pls' counsel to Defs' counsel). Plaintiffs
14 made it clear that they sought to coordinate the timing of Mr. Burgyan's deposition: "Once we
15 have the process started, we'll coordinate dates with you." *Id.* Ex. 3. The next morning,
16 Plaintiffs' counsel shared drafts of the notices and subpoenas with Defendants' counsel. *See id.*
17 ¶ 7 & Ex. 4 at 3 (5/29/2014 Email fr Pls' counsel to Defs' counsel with attachments).

18 On the afternoon of May 29, Defendants' counsel sent Plaintiffs' counsel a letter advising
19 of Mr. Montgomery's medical condition. *See id.* ¶ 8 & Ex. 5 (5/29/2014 Ltr fr Dfs' counsel to
20 Pls' counsel). In the first sentence, Defendants acknowledged receiving notice of Plaintiffs' plan
21 regarding depositions. *Id.* Ex. 5 at 2 ("Thank you for your email yesterday regarding the
22 depositions of Istvan, Christopher Shockey and Edra Blixseth."). Defendants explained further
23 that Defendants already had plans to travel to California to retrieve the documents. *Id.* ("This
24 has affected our ability to travel to California to look for responsive documents concerning
25 Demaratech, LLC. While we had plans for Mr. Burgyan to visit California…."). But due to the
26 medical condition of Mr. Montgomery, Mr. Burgyan's plans were put on hold and he did not
know when he would be able to do so. *Id.*

Plaintiffs responded that same day, explaining that they had no desire to interfere with Mr. Burgyan's family obligations but also sought to avoid a situation in which Mr. Burgyan would refile his motion for summary judgment before Plaintiffs had an opportunity to review documents or take a deposition. Park Decl. ¶ 9 & Ex. 6 at 1 (5/29/2014 Email fr Pls' Counsel to Defs' Counsel). Plaintiffs suggested that the parties agree that Mr. Burgyan would not renew his motion for summary judgment until Plaintiffs had the opportunity to review all responsive documents, including documents in Mr. Burgyan's California storage unit, and take Mr. Burgyan's deposition. *Id.* Ex. 6 at 1. Sensitive to the pending issues, Plaintiffs further explained, "To get the ball rolling, we will plan to serve the notice of deposition of Mr. Burgyan tomorrow ... but it will be subject to the proviso that the deposition of Mr. Burgyan will <u>not</u> occur until the parties find a *mutually agreeable* day and time, which we had already agreed to before anyway." *Id.* (emphases in original). Counsel agreed to this approach in subsequent emails. *Id.* ¶ 10 & Ex. 7 at 1 (5/29/2014 Email exchange b/w counsel), and the following day Plaintiffs noted Mr. Burgyan's deposition subject to the terms of the parties' agreed upon approach. *Id.* ¶ 11 & Ex. 8 (5/30/2014 Notice of Deposition of Istvan Burgyan).

On June 10, Plaintiffs inquired about Mr. Burgyan's deposition and the search of his storage unit. *Id.* ¶ 12 & Ex. 9 (6/10/2014 Email fr Pls' counsel to Defs' counsel). On June 11 and 12, Plaintiffs' counsel notified Defendants' counsel of the need to postpone Mr. Burgyan's deposition because of a scheduling issue with Mr. Sandoval's counsel. *Id.* ¶ 13 & Ex. 10 (6/10 – 6/13/2014 Email exchange b/w counsel). On the afternoon of June 12, Plaintiffs received Mr. Burgyan's supplemental discovery responses, which indicated that Mr. Burgyan searched for documents in his California storage unit on June 9 and included the Demaratech documents he found. *Id.* ¶ 14 & Ex. 11. The parties later agreed to reschedule Mr. Burgyan's deposition for July 8. *Id.* ¶ 15 & Ex. 12 (6/13 – 6/16/2014 Email exchange b/w counsel).

### B.   Plaintiffs' Notice Of Their Plan To Seek Voluntary Dismissal Without Prejudice.

The next week, after reviewing Mr. Burgyan's documents, which indicated recent experiences of personal and financial hardship (*id.* ¶ 14 & Ex. 11 at 8, 12), Plaintiffs announced their intention to seek voluntary dismissal in view of the broader context of the litigation. *Id.* ¶

16. This fact is critically important because Defendants erroneously argue that Plaintiffs sought dismissal only after receiving information from Defendants about the supposed strength of their position.

Defendants assert that Plaintiffs gave no advance notice of their intent to move for voluntary dismissal. Dkt. 77 (McGaughey Decl.) ¶ 3 ("Prior to plaintiffs filing their Motion for Voluntary Dismissal they had made no mention of the fact they were considering non-suit of their claims against Mr. Montgomery and Mr. Burgyan.") This is a gross mischaracterization of the record. <u>Plaintiffs' plan and rationale were explained in detail in a June 20 email to counsel:</u>

> "Shellie:
>
> We were not able to connect on the phone today, so we thought we would send you an e-mail instead. Our clients have been thinking about the litigation in light of the larger context you shared with us recently. We understand Mr. Montgomery has suffered one or more brain aneurisms requiring multiple brain surgeries and that he has been in Swedish hospital trying to recover from blindness in one eye and partial paralysis. We have also reviewed the document production from Istvan Burgyan, which indicates that he and his family have been going through some additional hardships. In the big picture, it is not Plaintiffs' desire to "pile on" the issues the Montgomery/Burgyan family is dealing with, particularly when Defendants have voluntarily taken down the websites that are the subject of the action. Meanwhile, the litigation continues though it ultimately may not be necessary in light of the status quo and these bigger issues. For those reasons, Plaintiffs contemplate filing a voluntary dismissal without prejudice. We assume your clients have no objection. We wanted to give you a courtesy heads up and to see if you are available next week to review the proposed stipulation. Just let us know."

Park Decl. ¶ 16 & Ex. 13 at 1 (6/20/2014 Email from Plfs' counsel to Dfs' counsel).

This email was sent after repeated attempts to contact Ms. McGaughey by telephone. Even after the parties finally scheduled a discussion between counsel, Defendants' counsel was a no-show. *See id.* ¶ 16 & Ex. 13. That last straw prompted the above e-mail, where Plaintiffs unequivocally put Defendants on notice of their position.

After receiving the above email, Defendants' counsel indicated her clients' apparent non-opposition to Plaintiffs' motion for voluntary dismissal:

> I am pretty sure Mr. Montgomery will want you file the non-suit which will of course be granted as a matter of right. I will discuss with Mr. Montgomery though.

*Id.* ¶ 17 & Ex. 14 at 1 (6/20/2014 Email from Dfs' counsel to Pls.' counsel). Counsel for Demaratech/Offshore Limited D (Mr. Brain) subsequently indicated that his clients would consent to the motion for voluntary dismissal (*id.* ¶ 18 & Ex. 15 (6/25/2014 Email fr Mr. Tellis to Mr. Brain). Counsel for Montgomery/Burgyan gave no further response, and Plaintiffs proceeded with the preparation and filing of their motion for voluntary dismissal. *Id.* ¶ 19.

On Thursday, June 26 (filing day), as Plaintiffs were preparing to file their motion, Plaintiffs received a letter dated June 26 from Defendants' counsel stating opposition to a voluntary dismissal without prejudice and "touting" (to use Defendants' own term) the supposed merits of Defendants' position. *See* Park Decl. ¶ 20 & Exs. 16 &17 (6/26/2014 transmittal email and 6/26/2016 Ltr fr Dfs' counsel to Plfs' counsel) (*Plaintiffs' subsequently rebutted each of Defendants' points in a July 2, 2014 letter —a fact Defendants ignore. Id. ¶ 20 & Ex. 18.*) Later that same day, Plaintiffs received a second letter from Defendants' counsel (this one incorrectly dated "June 25") regarding discovery. *Id.* ¶ 21 & Exs. 19 & 20 (6/26/2014 transmittal email and 6/25/2014 Ltr (rec'd 6/26) fr Dfs' counsel to Plfs' counsel) (*Plaintiffs responded to this letter via another July 2 letter consistent with the parties' discovery agreements. Id. ¶ 21 & Ex. 21.*) On June 26, Plaintiffs filed their motion for voluntary dismissal. *Id.* ¶ 22.

Following Plaintiffs' filing, Defendants' counsel suggested that Mr. Burgyan's deposition was no longer necessary, and the parties reconfirmed their prior agreement that Mr. Burgyan would not renew his motion for summary judgment until after he had been deposed (if ever). *Id.* ¶ 23 & Exs. 22 and 23 (7/7/2014 Emails b/w counsel).

C.   **Evidence Supporting Plaintiffs' Claims**

In their response brief, Defendants assert that there is no evidence supporting Plaintiffs' claims against Mr. Burgyan and that dismissal of the claims against Mr. Burgyan is "inevitable." *See* Dkt. 76 at 2. In particular, Mr. Burgyan claims that the Network Solutions records (which the Court reviewed in connection with Mr. Burgyan's earlier summary judgment motion) are insufficient to connect him or his former company to the Subject Websites. *Id.* at 4. He also asserts that Plaintiffs failed to identify him "as being complicit in the alleged attempt to extort Mr. Sandoval." *Id.* at 6. The evidence uncovered in discovery tells a different story.

As the Court is already aware, Network Solutions' business records identify Mr. Burgyan and his company Demaratech, among others, as the Primary User for the account associated with the domain names of the Subject Websites.[3] *See* Dkt. 70, at 4 (discussing Network Solutions records); Dkt. 55, at 4-5 (same). One of the addresses and telephone numbers listed on these records (42829 Cook Street, Palm Desert, CA 92211; 760-341-3289) was the contact information for Demaratech, for which Mr. Burgyan was publicly listed as the point of contact. Dkt. 55 at 5; *see also* Ferguson Decl. ¶ 3 & Ex. 1 at 1 (highlighted excerpts of Network Solutions records). These facts are undisputed.[4]

Further investigation into the contact information listed in the Network Solutions records reveals another connection. The contact email for the Primary User of the Subject Websites domain names is "info@pcinx.com." Ferguson Decl. ¶ 3 & Ex. 1 at 1 (Network Solutions Records). This email address is the contact email for Pacific Coast Innovations, a Bellevue-based technology company, which is also known as PCI. *Id.* ¶ 6 & Ex. 4 at 1, 3, 6-9 (PCI Website Screenshots). The billing address for the Network Solutions account is the same as the address listed for PCI: 227 Bellevue Way NE. *Compare id.* Ex. 1 at 12 (Network Solutions Records) *with* Ex. 4 at 4 (PCI Website Screenshots). The business records for Pacific Coast Innovations, LLC on file with the California Secretary of State's Office identify Mr. Burgyan as the company's Registered Agent. *Id.* ¶ 7 & Ex. 5 (Business Entity Detail Report for Pacific Coast Innovations, LLC). Mr. Burgyan identifies himself as the CEO of PCI, and he uses a PCI email address. *See id.* ¶ 8 & Ex. 6 (Burgyan

---

[3] Defendants' prior objections to these records on authentication or hearsay grounds (Dkt. 61 at 3-4) are misplaced, as the law provides that the Federal Rules of Evidence are not applied strictly on summary judgment. *See Crawford v. JP Morgan Chase, NA*, 983 F. Supp. 2d 1264, 1268 (W.D. Wash. 2013); *Superwood Co. v. Slam Brands, Inc.*, No. C12-1109JLR, 2013 WL 4401830, at *7 (W.D. Wash. Aug. 15, 2013). Further, the parties had agreed to contact Network Solutions jointly to authenticate the records via declaration or deposition.

[4] Defendants repeat their objection that Plaintiffs did not include the Network Solutions records in their Initial Disclosures. *See* Dkt. 76 at 3 n.4. Had Plaintiffs known the position Defendants would take regarding their own documents, Plaintiffs would have provided these documents at the outset (and will do so as a matter of course in the future). Even so, Defendants objection is misplaced for several reasons. First, *both* sides took the same approach under Rule 26(a)(1), as Defendants identified several general categories of documents to support their defenses (including "Documents related to domain names started by Dennis Montgomery"), but provided none. *See* Ferguson Decl. ¶ 4 & Ex. 2 at 7 (Dfs' Initial Disclosures). Second, Defendants have not demonstrated – and cannot demonstrate – any prejudice from Plaintiffs' Initial Disclosures, as Plaintiffs voluntarily produced the documents on March 28 (even before any discovery response deadline). *See id.* ¶ 5 & Ex. 3. Third, as the users of the Network Solutions account at issue, Defendants had control of their own domain name records for the sites Montgomery admits he created.

LinkedIn Profile); Park Decl. Ex. 16 (6/26/2014 Email fr Dfs' counsel copying istvanb@pcinx.com).

In addition, discovery in this case reflects that Mr. Burgyan joined Mr. Montgomery in soliciting funds from Mr. Sandoval in 2012. In searching for documents responsive to discovery requests, Plaintiffs found emails that Mr. Montgomery sent to Mr. Sandoval in 2012 concerning "Lumavision," a business venture involving a computer graphics imagery program for changing images on gift bags. *See* Sandoval Decl. ¶¶ 2-4 & Ex. 1 at 1, 2 (Emails b/w Mr. Montgomery and Mr. Sandoval.) Mr. Montgomery contacted Mr. Sandoval seeking an investment in this company in early to mid-2012. *Id.* ¶ 2. Mr. Montgomery's emails to Mr. Sandoval also contained links to other ventures' websites, the domain names for which are registered to the same Network Solutions account tied to Mr. Burgyan and Demaratech and used to create the Subject Websites in this case. *Compare id.* Ex. 1 at 1-2 (Emails fr Mr. Montgomery) *with* Ferguson Decl. Ex. 1 at 3-5, 13 (Network Solutions Records). Also in early to mid-2012, Mr. Burgyan called Mr. Sandoval to solicit and encourage his investment. Sandoval Decl. ¶ 4. After Mr. Sandoval declined, Mr. Montgomery stepped in and warned, "If you're not with me, you're against me" and told Mr. Sandoval that he did not want to wind up like others who had not cooperated with Mr. Sandoval and "learned the hard way." *Id.* ¶¶ 5-6. Following these communications, disparaging statements about Mr. Sandoval and Atigeo appeared on the Subject Websites. *Id.* ¶ 7.

Plaintiffs produced the emails regarding Lumavision and explained the communications in narrative answers to interrogatories. Ferguson Decl. ¶ 9 & Exs. 7 & 8 (Interrogatory Answers). When confronted with this information, Mr. Burgyan backtracked from the declaration he filed with this Court (in support of summary judgment) in which he falsely testified "**I had no direct contact with Mr. Sandoval <u>since 2007</u>.**" *See* Dkt. 48 ¶ 5, at 2:12-13 (emphases added). Now, according to his attorney, "<u>Mr. Burgyan admits he spoke with Mr. Sandoval **in 2012**, but claims their conversation was strictly limited to him seeking advice regarding *investor procurement*.</u>" Park Decl. ¶ 21 & Ex. 20, at 2 (emphases added) (McGaughey Discovery Letter dated June 25).

Mr. Burgyan indicates in different social media outlets that he is the owner of LumaSkinz (another venture identified by Mr. Montgomery to Mr. Sandoval in their 2012 email discussions about investments). *See* Ferguson Decl. ¶¶ 10, 11 & Exs. 9, 10 (Mr. Burgyan's facebook Page

and the LumaSkinz LinkedIn Profile); Sandoval Decl. Ex. 1, at 1.

### III. <u>ARGUMENT</u>

**A.     Defendants Will Not Suffer Any Legal Prejudice From Voluntary Dismissal.**

Defendants make two principal arguments for dismissal with prejudice.[5] *First*, they argue that Plaintiffs' libel claims should be dismissed with prejudice because California's one-year statute of limitations would bar the refiling of these claims. Dkt. 76 at 1-2, 10. *Second*, they argue that dismissal without prejudice would be unfair to Mr. Burgyan because, they contend, he is likely to prevail on a dispositive motion on both the libel and cybersquatting claims, it is uncertain whether an insurer would tender a defense for him in a subsequent suit, and evidence might go stale. *Id.* at 2, 7. These arguments fail, both legally and factually.

The rule in the Ninth Circuit is that "[a] district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some legal prejudice as a result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001); *see also Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). Legal prejudice is "prejudice to some legal claim, some legal argument." *Westlands*, 100 F.3d at 97. A defendant does not suffer legal prejudice simply because a dispute remains unresolved or he might face a second lawsuit. *Id.*; *see also Hamilton v. Firestone Tire & rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982). And the inconvenience or expense of defending a second lawsuit does not constitute legal prejudice. *In re Lowenschuss*, 67 F.3d 1394, 1400-01 (9th Cir. 1995), *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994); *Hamilton*, 679 F.2d at 146.

Starting with Defendants' "cart before the horse" statute of limitations argument, no legal prejudice will result from dismissal without prejudice. Defendants would not lose this defense as a result of voluntary dismissal. They could assert it in any future lawsuit. To the extent Defendants might assert a limitations defense in a <u>future</u> case, that does *not* "clearly dictate" a result in their favor in <u>this</u> case. *See Cogent Solutions Grp., LLC v. Brown*, No. 2:12-CV-665, 2013 WL 6116052, at *8 (S.C. Ohio Nov. 20, 2013) (dismissing without prejudice).

Moreover, it would be improper for the Court to rule on the record before it that Plaintiffs

---

[5] Defendants do not seek dismissal with prejudice of the cybersquatting claim against Mr. Montgomery.

*would be* time barred from reasserting the libel claims brought in this action. Despite their promises to do so, Defendants have not established the date(s) when they published the statements at issue. In addition, it is unclear whether the limitations period has been subject to tolling. Any determination as to whether a claim is time barred should be made upon a proper record and motion in a future case (if one is brought).

Turning to Mr. Burgyan's unfairness arguments, *legally*, the prospect of having to participate in a second suit is not prejudice. *Westlands*, 100 F.3d at 96. That Mr. Burgyan's insurer might decline to tender a defense [6] or that Mr. Burgyan might have difficulty collecting evidence does not compromise any legal right of Mr. Burgyan's. Each of these reasons is also speculative.

As to Mr. Burgyan's assertion regarding summary judgment, dismissal without prejudice before refiling of a dispositive motion would not be unfair. There is no dispositive motion pending and thus no basis to address the sufficiency of Plaintiffs' claims against Mr. Burgyan. Further, if this suit were refiled, Mr. Burgyan would be free to move for summary judgment. Accordingly, dismissal before Mr. Burgyan refiles his summary judgment motion would "'not create the type of legal prejudice that the Ninth Circuit has found sufficient to prevent a plaintiff from voluntarily dismissing a case.'" *Mitchell-Jones v. Menzies Aviation, Inc.*, No. C10-1190-JLR, 2011 WL 3273221, at *3 (W.D. Wash. July 28, 2011) (quoting *Creative Labs, Inc. v. Orchid Tech.*, No. C93-4329TEH, 1997 WL 588923 at *2 (N.D. Cal. Sept. 12, 1997)).

None of the authorities cited by Mr. Burgyan is to the contrary, and each is easily distinguished. In *In re Exxon Valdez*, the district court denied the plaintiffs' motion for voluntary dismissal, which was an undisputed attempt to avoid discovery, and then dismissed the plaintiffs' claims under Rule 37 (<u>not</u> Rule 41(a)). 102 F.3d 429, 432-33 (9th Cir. 1996). In *InfaLab, Inc. v. KDS Nail Int'l*, the plaintiff, in response to the defendant's motion for summary judgment on all of plaintiffs' federal and state law claims, filed a statement of non-opposition on the federal claims and sought voluntary dismissal of its state law claims so it could refile them in state court. No. CIV. 07-01270 WBS EFB, 2009 WL 161197, at *1 (E.D. Cal. Jan. 22, 2009).

---

[6] The fact that State Farm Insurance Co. is already providing the defense for Montgomery/Burgyan and paying the cost of attorneys' fees and costs raises the question about why Burgyan seeks additional reimbursement through its opposition to Plaintiff's motion.

The court denied this request, reasoning that it was an improper attempt to avoid a near-certain adverse ruling, and then granted the pending summary judgment motion on the federal claims because they implicated the FDA's primary jurisdiction. *Id.* at *4.

In *AF Holdings LLC v. Navasca*, the court granted the plaintiff's motion for voluntary dismissal with prejudice after finding that the plaintiff sought to avoid seemingly likely adverse determinations on the merits of its copyright infringement action. No. C-12-2396 EMC, 2013 WL 1748011, at *4 (N.D. Cal. Apr. 23, 2013). The court so ruled because of a lack of evidence of *standing* and because the plaintiff voluntarily dismissed numerous similar suits after an investigation by a federal judge. The court viewed the latter as an admission of lack of merit.

None of Defendants' authorities applies to this case. There is no motion by Mr. Burgyan pending; there is no discrete question of law that would dispose of any of Plaintiffs' claims; there is no question about threshold Article III requirements; and nothing "clearly dictates" a result in Defendants' favor.

*Factually*, Plaintiffs have marshaled sufficient evidence to support their claims against Mr. Burgyan. The Network Solutions records list Mr. Burgyan and Demaratech as the Primary User for the account used to register the domain names for the Subject Websites. Further investigation establishes additional links between Mr. Burgyan and Network Solutions. The email address for the account is the same email address for Burgyan's new company, Pacific Coast Innovations. This evidence establishes Mr. Burgyan's involvement with this account.

The Network Solutions records list several domain names that are identical or confusingly similar to other marks (*e.g.*, "yellowstoneclub" and "mailboxesunlimited") and are integral to websites that disparage the business or reputations of other parties. *See* Ferguson Decl. ¶ 3 & Ex. 1 at 4-5 (List of domain names for NS accounts). Mr. Burgyan, in conjunction with Mr. Montgomery, solicited Mr. Sandoval to make an investment in the Lumavision venture. After Mr. Sandoval declined to invest and on the heels of Mr. Montgomery's threat, disparaging statements began appearing on websites tied to Mr. Burgyan. Given the evidence linking Mr. Burgyan to the Network Solutions' accounts and his attempt to solicit financial support from Mr. Sandoval, the facts are more than enough establish both libel and cybersquatting.

1  Defendants understand that Mr. Burgyan claims no involvement and ignorance. But these claims turn on Mr. Burgyan's credibility, which is in question in view of his own contradictions. First he told this Court that he had no contact with Mr. Sandoval since 2007 but now admits that he did in fact contact Mr. Sandoval in 2012 about "investor procurement." *Compare* Dkt. 48 ¶ 4 *with* Park Decl. Ex. 20, at 2 (McGaughey Discovery Letter dated June 25). He initially stated he never created a website but later admitted that he had in fact registered domain names through Network Solutions *and* created websites. *Compare* Dkt. 48 ¶ 4 *with* Dkt. 62 ¶ 5. As Mr. Burgyan's assertions turn on his credibility, they are not a basis for summary judgment.

Further, Defendant's characterizations of the motivation and merits of the instant motion are not accurate either. Defendants' Response states that Plaintiffs' motion was filed after receiving a letter dated "June 25" (the letter is clearly dated June 26 on its face) apparently to create the misimpression that Plaintiffs' motion was filed as a result of that letter. Dkt. 76 at 5-6 ("Not surprisingly, the next day, on June 26, plaintiffs filed the Motion for Voluntary Dismissal.").

This is highly misleading for several reasons. *First*, Defendants' self-described "touting" letter was dated and sent on Thursday, June 26 (*c.f.* Nierman Decl., Ex. 5 and ¶ 5.5), knowing Plaintiffs' motion was forthcoming. *Second*, nowhere do Defendants cite the earlier June 20 e-mail from Plaintiffs' counsel (block quoted above) where Plaintiffs provide Defendants with a "heads up" about their dismissal intentions. Because of that e-mail, Defendants *knew the week before* Plaintiffs filed the instant motion that Plaintiffs planned to do so. Rather than responding to Plaintiffs question about defense counsel's availability to review Plaintiffs' proposal, Defendants sent their June [26] letter -- presumably so they could argue now that that letter prompted Plaintiffs' motion. This disingenuous characterization is contradicted by the facts. *Third*, in response to Defendants' "touting" letter, counsel for Atigeo sent a rebuttal letter to Defendants' counsel on July 2, 2014, setting forth a *point-by-point* correction of the inaccurate record Defendants had created. *See* Park Decl. Ex. ¶ 18. It is telling that neither the McGaughey declaration, nor the Nierman declaration even mentions Plaintiffs' July 2 rebuttal letter. The only reason Plaintiff's filing of the motion for voluntary dismissal was "not surprising[ ]" was because Plaintiffs told Defendants about it beforehand.

REPLY ISO MOTION FOR VOLUNTARY DISMISSAL (2:13-CV-01694) — 11

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900

In sum, Defendants have failed to demonstrate legal prejudice. Voluntary dismissal would not compromise any statute of limitations defense that might be available in a second suit. Nor would it deprive them of a dispositive ruling. The Court should grant Plaintiffs' motion.

**B.      There Is No Basis To Condition Dismissal On The Payment Of Costs And Fees.**

In the alternative, Mr. Burgyan requests that the Court condition voluntary dismissal without prejudice on the payment of attorneys' fees and costs incurred to search his California storage unit. Courts may impose fees and costs as a condition of voluntary dismissal without prejudice, but the imposition of fees and costs is not a prerequisite. *Stevedoring Serv. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989). Further, "defendants should only be awarded attorney fees for work which cannot be used in any future litigation of these claims." *Westlands*, 100 F.3d at 97 (emphasis added). Mr. Burgyan has failed to show he is entitled to fees and costs.

As a threshold matter, as this Court observed, Mr. Burgyan should have searched his California storage unit at the outset of his discovery response obligations. Nevertheless, the work undertaken to search Mr. Burgyan's storage unit could be used in any future litigation of the same or substantially similar claims. If the Subject Websites and offending statements reappear, Plaintiffs would have a basis to assert libel and cybersquatting evidence against each of the Defendants named in this suit. Plaintiffs' discovery requests would likely be similar to those propounded in this action. Mr. Burgyan would have an obligation to respond to such requests and undertake a search for and production of responsive documents (including the Demaratech documents). That the Demaratech records found by Mr. Burgyan might have limited value does not mean that the work undertaken to find them would be for naught. Were Plaintiffs to bring a second suit against Mr. Burgyan, he would be able to apply this work to a motion for summary judgment or other aspects of his defense, and *vice versa*.

## IV. CONCLUSION

For all of the foregoing reasons, voluntary dismissal without prejudice should be granted.

1  DATED: July 18, 2014.

STOEL RIVES LLP

/s/ Brian C. Park
Brian C. Park, WSBA No. 25584
Maren R. Norton, WSBA No. 35435
Hunter Ferguson, WSBA No. 41485
600 University Street, Suite 3600
Seattle, WA 98101-4109
Telephone: (206) 386-7542
Facsimile: (206) 386-7500
bcpark@stoel.com
mrnorton@stoel.com
hoferguson@stoel.com

*Attorneys for Plaintiff Atigeo LLC*

BARON & BUDD, P.C.

/s/ Roland Tellis (via email authorization)
Roland Tellis (*pro hac vice*)
15910 Ventura Blvd., Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com

*Attorneys for Plaintiffs*
*Michael Sandoval and Atigeo LLC*

**CERTIFICATE OF SERVICE**

I hereby certify than on July 18, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in the above case.

STOEL RIVES LLP

_s/ Melissa Wood_
Melissa Wood, Legal Secretary
Dated at Seattle, WA on July 18, 2014

REPLY ISO MOTION FOR VOLUNTARY DISMISSAL (2:13-CV-01694) — 14

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone (206) 624-0900