

600 University Street, Suite 3600
Seattle, Washington 98101
main 206.624.0900
fax 206.386.7500
www.stoel.com

BRIAN C. PARK
BCPark@stoel.com
direct line (206) 386-7542

July 2, 2014

**VIA E-MAIL AND U.S. MAIL**

Shellie McGaughey, Esq.
McGaughey Bridges Dunlap, PLLC
3131 Western Ave., Suite 410
Seattle, WA  98121
*shellie@mcbdlaw.com*

RE:   *Atigeo, LLC v. Montgomery, et al.,* No. 2:13-cv-01694 (W.D. Wash. 2013)

Dear Shellie:

This responds to your June 26, 2014 letter, which you sent while I was out of the office and which, frankly, we were surprised to receive after you had previously advised us that you believed Mr. Montgomery would *want* Plaintiffs to file their motion for voluntary dismissal.

Under normal circumstances, we would not respond to the unsupported rhetoric in your letter, which mischaracterizes the evidence and appears to be an attempt to create a record of facts that do not exist. Many characterizations in your letter simply are not relevant, and we do not wish to belabor the point. Nevertheless, certain unfounded and gratuitous statements in your letter require a response to clear the record.

Your letter ignores the fact that Edra Blixseth and Michael Sandoval clearly agreed to the purchase of the Kirkland property and the corresponding xPatterns loan.  This is evidenced by the documents we have produced demonstrating Ms. Blixseth's willingness to have funds sent directly to escrow to close the transaction *and* her statements to Mr. Sandoval regarding the lack of urgency in repaying the xPatterns loan notwithstanding Mr. Sandoval's offers to find ways to do so quickly.  Further, it is clear that Ms. Blixseth and Mr. Sandoval, among others, entered into the March 31, 2007 Letter Agreement, which released and superseded all prior commitments and obligations between those parties.  The evidence also shows that it was the Blixseth Parties who breached that agreement (as admitted by Ms. Blixseth and her company, Opspring/Blxware) — not the other way around.  It is apparent you have not spoken to Ms. Blixseth or reviewed the contemporaneous evidence surrounding the parties' course of dealing, which confirms that Mr. Sandoval misappropriated nothing and always acted just as Ms. Blixseth had agreed.

You raise the issue of credibility determinations. With all due respect, Defendants' apparent new *character assassination of Michael Sandoval* defense strategy is unavailing.  There is little doubt that an objective finder of fact would give the testimony of Mr. Sandoval and other current and former Atigeo personnel more weight than the testimony of Mr. Montgomery, whose track history in litigation and other legal matters is well-developed.  The fact that other former company employees and partners (including those involved as co-defendants in the prior conspiracy with Edra Blixseth to commit breach of contract, tortious interference, and trade secret misappropriation against Atigeo and related entities, which is the subject of ongoing litigation) may have unfavorable things to say about Mr. Sandoval is irrelevant to the issues in this case.  It is ironic that your letter raises certain types of business practices and hoaxes, which



Shelley McGaughey, Esq.
June 2, 2014 | Page 2

*have been attributed to Mr. Montgomery in regard to his anti-terrorism software scams and eTreppid dealings* — not Mr. Sandoval.  Previously, you had indicated that you believed such "character assassination" matters to be irrelevant; if your strategy now is to open the door to such allegations, that door must swing both ways.  Certainly, you would agree that an equal number of witnesses could come forward and testify about Mr. Montgomery's credibility.

Respectfully, we suggest that Defendants focus on the merits of the case.  This case is about the falsity of the statements on Defendants' website postings.  The evidence produced to Defendants makes it clear that the statements posted on the websites at issue were patently false.  The fact that Defendants' allegations and factual theories to defend the veracity of the accused website postings have morphed as this litigation has progressed — not to mention Mr. Montgomery's attempt to withhold discovery based on an improper claim of "reporter's privilege" (after waiving his discovery objections) — is telling.  If Defendants have any actual evidence, other than innuendo and hearsay, to substantiate the accused website statements, please update Defendants' discovery responses and identify that evidence immediately.

Ultimately, the testimony of Ms. Blixseth herself (who, unlike your clients and unnamed sources, *has* personal knowledge of the dealings with Mr. Sandoval and the companies) confirms that Defendants' accused postings in this case are false and that Mr. Montgomery has never had any basis to believe otherwise.  Ms. Blixseth will also validate that Mr. Sandoval and Atigeo never acted in any way contrary to her rights or their agreements, notwithstanding any *post hac* mischaracterizations by her former creditors or the defendants in this action for purposes of litigation.  On the other hand, her testimony will speak legions about her dealings with Mr. Montgomery and his business practices.  We suggest the logical next step is to coordinate the deposition of Ms. Blixseth; please let us know if you would like to be involved in that process.

In terms of Mr. Burgyan's role in his father-in-law's (now) admitted postings, the objective evidence in the case lists him and his company name all over the documents used to set up the domain names and websites.  These are Defendants' documents (not Plaintiffs'), which Defendants appear to have attempted to shelter from the light of day.  Defendants' attempt to explain away the documentary evidence by arguing inconsistently — that Mr. Montgomery was responsible for the domain names and websites but certain mysterious unknown/unnamed others must have taken control of the website administration rights and inserted Mr. Burgyan's name and company into the account without either Mr. Montgomery or Mr. Burgyan knowing about it — defies credibility.  Other than Defendants' current allegations, is there any evidence to show that anyone else ever had access to the Network Solutions account such that they could have set up Mr. Burgyan in such a fashion?  If you have any such evidence, please provide it.

Your letter states that Plaintiffs have failed to articulate "why" Mr. Burgyan would be interested in participating in the acts that form the basis for the cybersquatting and libel claims, which Mr. Montgomery has now admitted to doing.  It does not matter that Plaintiffs have not ventured to guess "why" Mr. Burgyan would be interested in participating.  What is relevant is that he did so.  In addition to his connections to the Network Solutions account noted above, it was revealed to us for the first time on June 26 that Mr. Burgyan now admits to contacting Mr. Sandoval in 2012 about the same business venture that prompted the extortion scheme against Plaintiffs.  Mr. Burgyan's mental state (whether motivated by loyalty, debt to his father-in-law, or otherwise) is neither for Plaintiffs to speculate about, nor for Plaintiffs to prove.

Shelley McGaughey, Esq.
June 2, 2014 | Page 3



      Lastly, you again tout Atigeo's litigation history as if it somehow supports Defendants' website postings and defense theories — in fact, it is just the opposite. The court dockets in those cases, including the determinations on the merits exonerating Atigeo and Mr. Sandoval of any wrongdoing, speak for themselves. Similarly, your characterizations of Plaintiffs' tactics in prior litigations, while a convenient strawman for Defendants, is also unfounded. Again, the record speaks for itself. If that is not satisfactory to you, we recommend that you contact the Trustee of Ms. Blixseth's Bankruptcy Estate who, in connection with his official duties, has performed an exhaustive investigation into the business dealings of Ms. Blixseth, Mr. Sandoval, and their companies spanning many years. We think you will find his factual findings and legal conclusions illuminating, including that it was Ms. Blixseth (not Plaintiffs) who acted improperly and attempted to alter, then break, their deal after-the-fact. The statements in your June 26 letter are based on incorrect facts about, *inter alia*, Heather Sandoval's work at Atigeo, Mr. Sandoval's alleged "lies" (as reported by those without personal knowledge of the facts), and the involvement of those on whom you are apparently relying on as credible sources of information.

      Further, the litany of depositions of witnesses whose testimony you describe in detail is overkill and beyond the scope of this matter. Before proceeding down that path, which would only needlessly increase the cost of this litigation, we suggest that Defendants determine, after checking the facts, whether they have a good faith basis for putting the parties through that costly endeavor. We request that you keep us posted and involve us in the scheduling of any third party depositions as we have done for you.

      In the big picture, your letter appears to be self-serving posturing now that Plaintiffs have indicated their willingness not to push forward with a lawsuit that ultimately may not be necessary. We were surprised by your apparent change in heart and reaction to Plaintiffs' desire to be reasonable and not "pile on" all the other issues Defendants face. We had been previously advised that Mr. Montgomery's health condition was serious and grim — if we were misinformed, please let us know immediately.

      Thank you for your attention to this matter. Please contact us with any questions.

      Sincerely,

      Stoel Rives LLP

      Brian C. Park