

# McGaughey Bridges Dunlap PLLC

TRIAL ATTORNEYS

June 25, 2014

*Via E-mail Only*

Brian C. Park
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd, Suite 1600
Encino, CA 91436

Re:  *Atigeo, LLC & Michael Sandoval v. Dennis Montgomery and Istvan Burgyan*
     Western Washington District Court Cause # 2:13-cv-01694

Dear Brian and Roland:

Thank you for your recent supplementation of interrogatories 4 and 8 to Mr. Montgomery's first discovery. There are several issues we would like to clarify as it relates to your answers. We have also outlined our understanding of discovery yet to be produced in response to Mr. Montgomery's first discovery.

**Plaintiffs' Supplemental Answer to Interrogatory Number 4**

First, we would like to address plaintiffs' supplemental answer to interrogatory number 4, in which it is stated that Mr. Sandoval was contacted by Miriam Paramore, Executive Vice President of Strategy and Products for Emdeon, regarding a telephone call she allegedly received from "an unnamed person claiming to be a reporter, who made derogatory statements about Atigeo and its personnel and directed her to the websites accused in this action." We have contacted Emdeon and Ms. Paramore no longer is under their employ. Do you intend on naming her as a witness? If so, please provide us with her contact information. Further, it is still unclear whether plaintiffs are claiming that Emdeon terminated its business relationship with Atigeo as a result of this alleged telephone call.

We also have not received any sort of itemization of the damages plaintiffs are seeking let alone documents supporting allegations of damages (pursuant to request for production number 19). While it is understandable that plaintiffs do not yet have expert opinions on the issue of damages, any documentation that will be or has been given to experts on damages should, and must, be produced. I think we can both agree discovery cut off will approach quickly in light of a November trial date.

Brian Park
June 25, 2014
Page 2

### Plaintiffs' Supplemental Answer to Interrogatory Number 8

As to plaintiffs' supplemental answer, Mr. Burgyan expressly refutes Mr. Sandoval's characterization of their interactions during 2012. Per Mr. Sandoval, he was contacted by Mr. Burgyan in follow-up to Mr. Montgomery's investment solicitation regarding their company, Lumivision, and it was after this telephone call and several additional exchanges between himself and Mr. Montgomery that the alleged extortion attempt occurred.

==Mr. Burgyan admits he spoke with Mr. Sandoval in 2012, but claims their conversation was strictly limited to him seeking advice regarding investor procurement.== Mr. Sandoval's present mischaracterization of this conversation appears to be an attempt to inject Mr. Burgyan into plaintiffs' alleged extortion scheme. To date, there has been no allegation or reference otherwise indicating Mr. Burgyan's involvement as such. Frankly, if that is the intent of plaintiffs' supplemental answer to interrogatory number 8, it seems insincere given that this is the first we are hearing of it and are now a year into this lawsuit.

### Outstanding Discovery

We appreciate your recent agreement to clarify how plaintiffs' document productions correspond to Mr. Montgomery's requests. However, we are still waiting for certain requests to be answered. The following is intended to memorialize where we are in terms of plaintiffs responding to Mr. Montgomery's discovery following our CR 26 conference of April 24, 2014, and to keep us moving forward in that regard.

### To Atigeo

### RFP #1

With regard to Mr. Montgomery RFP #1, pertaining to Atigeo tax returns for the years 2007 through present, you indicated you would speak with Mr. Sandoval and see what these look like and then get back to us. We have not received an update regarding these documents. It is asserted plaintiffs' W-2s are entirely relevant and probative to the issue of plaintiffs' alleged damages.

We also have not received any W-2s for Mr. Sandoval. While we requested W-2s from 2007 through present, Mr. Sandoval's personal W-2s from 2005 through 2007 should suffice. Plaintiffs would be hard pressed to argue these are not relevant given that his ability to purchase the multimillion dollar lots on Lake Washington is a central issue in this litigation.

Please let us know immediately whether you object to producing W-2s for the years requested.

### RFP #17

As to our request for documents relating to Atigeo's advertising efforts since 2006, you stated you would "circle back" with us regarding scope. You also noted that 2006 was too far back, but agreed

Brian Park
June 25, 2014
Page 3

2011 to 2013 appeared to be relevant. This request also relates to plaintiffs' alleged damages and plaintiffs' efforts toward establishing the Atigeo brand, to which plaintiffs have alleged damage resulting from Mr. Montgomery's statements.

As an aside, we also need plaintiffs to articulate the relevant time period Atigeo used 206 Inc. so that we may send out a revised subpoena.

**RFP #20 & 21**

We also need documents relating to Atigeo's original formation and/or documents sufficient to show ownership. During our discovery conference, you stated your belief that these two requests were essentially interchangeable but that documents would be produced.

**RFP #22**

As for meeting minutes, you said you would get back to us after determining how numerous these are. We seemed to agree that minutes from 2006 to 2008 and 2012 to present were relevant.

**RFP #23**

We agreed to narrow the scope of Request #23, regarding documents reflecting the past and current clients of Atigeo, so that it only applied to Atigeo's clients from the date of Mr. Montgomery's subject statements up through present. We also agreed that a simple list would suffice for now in lieu of a document production.

**RFP #24**

As for documents concerning Atigeo partners, you agreed to look into the burden of providing us with documents from 2012 through 2014.

**RFP #25**

For request #25, relating to documents reflecting Atigeo's employees, we agreed to get back to you regarding time frame. We are willing to limit this request for now to a list of Atigeo employees from 2006 through 2007.

**RFP #27**

With regard to operating agreements, SIC believed there were probably just some amendments to produce and that he would look and see how many there were.

Please let us know immediately whether plaintiffs are objecting to producing this material or whether these documents will be supplemented.

Brian Park
June 25, 2014
Page 4

**To Sandoval**

**RFP #11**

As we have already subpoenaed documents from Windermere and Amy Dedoyard regarding the Sandovals' purchase of property on Lake Washington, we can agree to narrow this request for now. What we need in the meantime are documents relevant to any loan the Sandovals' took out in order to purchase these lots as well as documents related to the transfer of this property. In particular, if the Sandovals submitted financial information in connection with this purchase, we need it.

**RFP #14**

It should be clear what we are looking for in response to this request – documents related to the money Mr. Sandoval pulled out of his companies for the purchase of the lots of Lake Washington. To the extent these documents exist, we would like them produced.

**RFP #23**

We have not received any communications between Mr. Sandoval and Edra Blixseth's bankruptcy trustee, Richard Sampson.

Very truly yours,

McGAUGHEY BRIDGES DUNLAP, PLLC

*Sent without signature to avoid delay*

Shellie McGaughey
Peter Nierman